3 7

**UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| **DONALD LESLIE "SAM" GALBREATH** § | **CIVIL ACTION NO. B-00-048** |
| §<br>*versus*  §<br>§ | **ADMIRALTY / JURY DEMANDED** |
| **PROMAR INC.,** *Individually & d/b/a*  §<br>***COASTAL PRODUCTION SERVICES***  § | United States District Court<br>Southern District of Texas<br>FILED |

## JOINT PRETRIAL ORDER

JAN 2 4 2002

Michael N. Milby
Clerk of Court

TO THE HONORABLE JUDGE OF SAID DISTRICT COURT:

NOW COME DONALD LESLIE "SAM" GALBREATH ("Plaintiff") and PROMAR, INC.

("Defendant"), and, pursuant to the Honorable Court's Scheduling Order and the Local Rules of the

United States District Court for the Southern District of Texas, file this their Joint Pretrial Order,

wherein the Parties would show the Court as follows:

**1.      APPEARANCE OF COUNSEL:**

Plaintiff-DONALD LESLIE "SAM" GALBREATH is represented before the Court by R.

Blake Brunkenhoefer and Christopher H. Hall, BRUNKENHOEFER & HALL, P.C., 1770 Tower

II, 555 N. Carancahua, Corpus Christi, Texas 78478 (361) 888-6655.

Defendants-PROMAR, INC. is represented before the Court by Richard B. Waterhouse, Jr.

and Daniel D. Pipitone, PIPITONE, SEGER & WATERHOUSE, P.C., 615 Upper N. Broadway,

Suite 1770, Corpus Christi, Texas 78477 (361) 884-4200.

**2.      STATEMENT OF THE CASE:**

Plaintiff alleges that he was injured, by essentially the same mechanism of injury, on two

separate occasions while working as a deckhand aboard one or both of two crewboats owned and

1

operated by Defendant (i.e., the M/V LADY BECKY and the M/V F.M. BROWN). Plaintiff alleges that he suffered injuries to his neck and/or shoulder in approximately April 1997 and, on or about April 18, 1998, Plaintiff alleges that he suffered an inguinal hernia. Plaintiff alleges that all his injuries were caused by the Defendant's inadequate equipping, operation, maintenance, modification or repair of the vessels in question and/or by condition(s) of the vessels which rendered them unfit for their intended purpose. Plaintiff filed this lawsuit against Defendant alleging causes of action for employer negligence under the "Jones Act," and vessel unseaworthiness and maintenance and cure under the general maritime law.

Defendant contends that the Plaintiff has failed to prove that some or all of his alleged injuries are related to his employment with Defendant. To the extent that Plaintiff may show that he was injured in the course and scope of his maritime employment with the Defendant, Defendant denies any liability for any injuries which the Plaintiff may have sustained. Defendant contends that its vessels were in all respects seaworthy.

Defendant paid maintenance and cure to Plaintiff, but Plaintiff alleges that the maintenance paid was insufficient in amount and that Defendant has not satisfied its cure obligation to Plaintiff. Defendant contends that it has paid maintenance and cure above and beyond the amounts required under maritime law.

## 3.    JURISDICTION:

The Court has jurisdiction over this matter pursuant to:

(i)      Art. III, §2 of the United States Constitution (i.e., "all cases of admiralty and maritime jurisdiction");

(ii)     28 U.S.C. §1331 (i.e., "all civil actions arising under the Constitution, laws");

(iii)    28 U.S.C. §1333(1) (i.e., "any civil case of admiralty or maritime jurisdiction");

2

(iv)    28 U.S.C. §1916 (action by seaman, without pre-payment of costs, under the Judicial

Code);

(v)     46 U.S.C. §688, *et seq.* (a.k.a., the "Jones Act"); and,

(vi)    28 U.S.C. §1367 ("supplemental jurisdiction"). <u>See also</u>, *United Mine Workers v.*

*Gibbs*, 383 U.S. 715, 726 (1966); *Nolan v. Boeing Co.*, 919 F.2d 1058, 1063 (5th

Cir.1990).

4.    **MOTIONS:**

As of the filing of this Joint Pretrial Order, there are no pending motions in this cause.

However, Plaintiff anticipates soon filing a Motion to Compel.

5.    **CONTENTIONS OF THE PARTIES:**

**Plaintiff contends that:**

1)      This case involves the maritime personal injury of a seaman, DONALD LESLIE

"SAM" GALBREATH, who was and is a resident of Rockport, Texas.

2)      Defendant is based in Rockport, Texas.  Defendant owns and operates a fleet of

crewboats that support the offshore oil and gas industry.

3)      Plaintiff began working for Defendant on or about February 13, 1997.  At all times

material to this cause, Plaintiff was employed by Defendant as a deckhand aboard the Defendant's

vessels, including the M/V LADY BECKY and the M/V F.M. BROWN (hereinafter, the "vessels").

While so employed as a seaman by Defendant, Plaintiff earned $65.00 per day.

4)      The M/V LADY BECKY was and is a 73-foot crewboat.  This vessel was

approximately 20 years old at the time of the incidents in question.

5)      The M/V F.M. BROWN was and is a 61½ -foot crewboat.  This vessel was

approximately 25 years old at the time of the incidents in question.

3

6)      Both vessels in question employ two large, heavy, bulky, rectangular, aluminum "hatch covers" over the engine room access.  Each of the two hatch covers on the M/V LADY BECKY weighs approximately 189 pounds.  Each of the two hatch covers on the M/V F.M. BROWN weighs approximately 170 pounds.

7)      The engine room of each vessel is accessed by lifting one of the hatch covers, from its horizontal position at deck level, until the nearly vertical point at which the hatch cover latch "catches."  It takes approximately 80-90 pounds of lifting force to raise either hatch cover on the M/V LADY BECKY, and it takes approximately 80 pounds of lifting force to raise either hatch cover on the M/V F.M. BROWN.

8)      On or about April 1997, Plaintiff was employed as a deckhand aboard both the M/V LADY BECKY and the M/V F.M. BROWN.  During April 1997, both of the vessels were operating in the navigable waters of the United States.  On a date and at a time in April 1997, while in the course and scope of his employment for said vessels and their owner/operator, Plaintiff sustained a right shoulder/neck injury as a result of his pulling and/or lifting the heavy, awkward, inadequately equipped, and poorly functioning hatch covers leading to the engine room of one the vessels in question.

9)      The M/V LADY BECKY was operating in the navigable waters of the United States on or about April 18, 1998.  On such date, while in the course and scope of his employment for said vessel and its owner/operator, Plaintiff sustained an inguinal hernia as a result of his pulling and/or lifting the heavy, awkward, inadequately equipped, and poorly functioning hatch covers leading to the engine room of the vessel in question.

10)     Before, during and after Plaintiff's employment aboard the vessels, personnel assigned to the vessels have found it difficult to safely lift the engine room hatch covers, and some

4

have been injured due to the weight, bulk and/or operation of the vessels' hatch covers.

11)    Defendant has been, and continues to be, aware of the danger posed by the hatch covers in question.  In addition, Defendant has been, and continues to be, aware of several appropriate and reasonable remedies.  However, at all times material to this cause and, indeed, to this day, the hatch covers have been allowed to exist in a defective and unsafe condition (i.e., the hatch covers have not been "split," hydraulic lift assists have not been installed, and no other actions have been taken to reduce the weights lifted and forces generated in accessing the engine compartments of the vessels).

12)    Plaintiff was injured due to the negligence of Defendant in the way the vessels in question were manned, equipped, repaired, maintained and/or operated inasmuch as: (1) Defendant placed the vessels in service knowing that the engine room hatch covers were unnecessarily and unreasonably heavy, awkward, inadequately equipped, and poorly functioning; (2) Defendant kept the vessels in service knowing that the engine room hatch covers were unnecessarily and unreasonably heavy, awkward, inadequately equipped, and poorly functioning; (3) Defendant failed to remedy the known, dangerous condition of the unnecessarily and unreasonably heavy, awkward, inadequately equipped, and poorly functioning hatch covers; (4) Defendants created or allowed to exist a situation that required Plaintiff to place his body in harm's way in the performance of his duties as deckhand; (5) in general, Defendant failed to provide Plaintiff with a safe workplace; and, (6) in general, Defendant failed to adequately maintain, repair and/or equip the vessels.

12)    The existence and required use of engine room hatch covers that are unnecessarily and unreasonably heavy, awkward, inadequately equipped, and poorly functioning constitute unseaworthy conditions aboard the vessels.

13)    Supervisory personnel who fail to effect appropriate and timely maintenance and

5

repair of a vessel constitute an unseaworthy condition. In this case, the captains of the vessels (and/or those at the "home office" to whom the captains reported the prior incidents and injuries involving the hatch covers) should have taken the vessels out of service for modification of the hatch covers or taken other appropriate action to reduce or eliminate the risk of injury associated with lifting the hatch covers in their then-existing state.

14)     Plaintiff's injuries were proximately caused by the unseaworthiness of the vessels in question at the times of the incidents in question.

15)     Plaintiff's injuries did not result from any contributory negligence on his part.

16)     Plaintiff was not the sole cause of the incidents and injuries in question.

17)     The incidents and injuries in question did not result from the acts or omissions of third parties or others over whom Defendant has/had no control.

18)     The acts and omissions of Defendant, which caused the incidents and injuries in question, were not superceded by any intervening third party, event or condition.

19)     The incidents and injuries in question were not the result of an unavoidable accident and/or conditions of tide, wind, weather or other inevitable hazards or perils of the sea and/or of God and/or by inscrutable fault or Plaintiff's voluntary exposure to the normal hazards of his employment. The conditions were known, wholly avoidable, and subject to repair/modification, if and when Defendant saw fit to effect the necessary repairs/modifications, properly equip the vessels and properly train their crew.

20)     Plaintiff was not injured by open and obvious conditions, and Plaintiff did not assume the risk of injury.

21)     As the conditions of the vessels were within the privity and knowledge of Defendant, Defendant is not entitled to exoneration or limitation of liability.

6

* * *

22)     Prior to employing Plaintiff on or about February 13, 1997, Defendant obtained a pre-employment physical examination of Plaintiff on February 7, 1997. Defendant selected David G. Williams, M.D., SOUTH TEXAS OCCUPATIONAL HEALTH CLINIC to conduct this examination and Plaintiff willingly submitted himself to same. The examination by Defendant's chosen doctor revealed no pre-existing injury or condition which rendered Plaintiff unfit for service aboard the Defendant's vessels.

23)     Plaintiff suffered a hernia in 1995, the treatment of which required surgery, but same was fully resolved far in advance of February 7, 1997.

24)     Incident to the February 7, 1997 pre-employment physical conducted by the physician of Defendant's choice, Plaintiff was not asked any questions that would have disclosed the fact of his prior hernia.

25)     However, incident to the February 7, 1997 pre-employment physical conducted by the physician of Defendant's choice, Plaintiff was physically examined for a hernia and none was found.

26)     From the time Plaintiff first went to work for Defendant until the date of the second accident Plaintiff sustained while lifting the hatch covers of the vessels in question (i.e., approximately April 18, 1998), Plaintiff was not suffering from a hernia and, as a result, Plaintiff worked without complaint or indication of any hernia.

27)     There is no evidence that Plaintiff suffered pre-existing conditions or diseases to the areas of his body injured in the incident made the basis of this lawsuit.

* * *

28)     Following his injury to his neck and/or right shoulder in April 1997, Plaintiff

7

continued to work as he hoped the injury was minor and the pain was transient. However, when his pain did not subside, Plaintiff filed a written report with Defendant on June 10, 1997. The next day, Plaintiff began his medical treatment, but he also continued to work for Defendant until April 19, 1998.

29)     As indicated above, Plaintiff sustained an inguinal hernia on or about April 18, 1998. On April 20, 1998, Plaintiff saw his family physician (Dr. John Longacre) for assessment of his hernia and for further treatment of his continuing right shoulder/neck pain. Plaintiff was referred to Dr. P.J. Marshio for treatment of the hernia and Plaintiff was referred to Dr. Charles Breckenridge for treatment of the continuing right shoulder/neck pain.

30)     Dr. Marshio performed surgery to correct Plaintiff's right inguinal hernia on April 29, 1998 and a subsequent repair was conducted by Dr. Alberto Belalcazar on June 16, 2001 when the first procedure failed to fully remedy Plaintiff's complaints. However, Plaintiff continues to suffer pain in the area of these two surgeries and it is medically probable that Plaintiff will need an additional surgery to remedy his continuing complaints.

31)     With respect to his initial injury, when extensive conservative efforts did not remedy Plaintiff's right shoulder/neck complaints, Dr. Charles Breckenridge performed surgery upon Plaintiff's right shoulder on October 8, 1999. However, Plaintiff continues to suffer neck and right shoulder pain in connection with neck and/or right shoulder injuries he sustained in the incident of April 1997.

32)     Plaintiff received substantial medical treatment, both before and after the above-referenced surgeries, in connection with the injuries he sustained on or about April 1997 and April 18, 1998. The reasonable and necessary treatment of Plaintiff's injuries has cost, to date, in excess of $80,000.00.

8

33)     To the extent that any of Plaintiff's medical bills have not been paid, Defendants are responsible for payment of same incident to their "cure" obligation.

34)     Plaintiff has been diligent in attending to his medical treatment and following the directions of his healthcare providers. Nevertheless, Plaintiff's injuries were and are serious, painful and disabling.

35)     Plaintiff continues to suffer substantial pain and physical limitation in connection with his injuries, and he continues to take prescription medication as a result thereof. Plaintiff will incur future medical expenses in connection with the injuries made the basis of this lawsuit and these future medical expenses should be paid by Defendant.

36)     Plaintiff had to undergo surgery and other treatment for no reason(s) other than those relating to the incident in question. To the extent, if any, that Plaintiff suffered pre-existing conditions or disease to the areas of his body injured in the incident made the basis of this lawsuit, such was totally painless, but was aggravated to the point where surgery was required.

37)     Plaintiff was born on October 18, 1940, thus making Plaintiff approximately 56.5 years of age at time of his first, April 1997 injury. Plaintiff was approximately 57.5 years of age at the time of his second, April 18, 1998 injury. Plaintiff has a life expectancy of 78.86 years, which is approximately 22.36 years from the date of his first, April 1997 injury and 21.36 years from the date of his second, April 18, 1998 injury. As of the date of his second injury of April 18, 1998, Plaintiff had a worklife expectancy of 4.7 more years (i.e., to age 62.2).

38)     The work of a crewboat deckhand is very physically demanding. Plaintiff's post-accident physical condition does not permit him to return to his past relevant work as a deckhand, nor does it permit him to return to any other of his past relevant work.

39)     Plaintiff filed his tax returns. Plaintiff's earnings records indicate that he was

9

earning approximately $19,680.66 per year as a deckhand at the time of his second, April 18, 1998 injury.

40)     Plaintiff has sustained a provable loss of earning capacity as a result of the injuries in question. Notwithstanding Plaintiff's attempts to return to gainful employment, Plaintiff has been effectively disabled from all employment from the time he left the vessels on April 20, 1998 through the present.

41)     Plaintiff does not presently possess sufficient residual functional capacities, either physically or mentally, to allow him to secure and retain other substantial gainful employment. As a result, Plaintiff will sustain lost wages that have a present value in the approximate amount of $72,725.00 over the course of his anticipated work life.

42)     Plaintiff is married to Linda Galbreath. As a result of the injuries made the basis of this lawsuit, Plaintiff's marital relationship has suffered, both physically and emotionally.

43)     Also as a result of the injuries in question, Plaintiff can no longer perform many of the usual household services he was able to provide his family before his injury and he will incur the costs associated with having such services performed by others. Over the 21.36 years Plaintiff is expected to live from the date of his second injury on or about April 18, 1998, Plaintiff will incur additional expenses of approximately $49,673.00 for household services that he used to be able to provide.

44)     Plaintiff has suffered substantial economic and unliquidated damages for no reason(s) other than those relating to the incidents in question.

45)     Plaintiff is entitled to recover monetary compensation from Defendant for Plaintiff's lost wages in the past; loss of future wage-earning capacity; past & future medical expenses to the extent they are not covered by cure; past and future pain, suffering, mental anguish, physical

10

discomfort, physical impairment, and inconvenience and for the mental and physical effects of the injury on his ability to engage in those activities which normally contribute to the enjoyment of life; and any other compensatory damages to which he may be entitled.

46)     As there are no circumstances which make an award of pre-judgment interest inappropriate upon the facts of this case, Plaintiff is also entitled to recover pre-judgment interest in connection with the "unseaworthiness" of the vessels.

47)     Under the General Maritime Law of these United States, Plaintiff was and is entitled to receive adequate and timely "maintenance" and "cure" from Defendant.

48)     Although maintenance benefits have been provided to Plaintiff from April 20, 1998 to the present, "adequate" maintenance has not been paid to Plaintiff.  Upon the facts of this case, Plaintiff was entitled to maintenance in the amount of Thirty Dollars ($30.00) per day.  As a result of Defendant providing but one-half (½) of the maintenance to which Plaintiff was due, Plaintiff has incurred consequential damages to his credit and his person.

49)     This failure and refusal to provide adequate maintenance to Plaintiff was and is wilful, arbitrary and capricious in nature.  As a result, Plaintiff is entitled to receive $10,000.00 in attorney's fees and costs associated with his pursuing his right to receive adequate maintenance benefits.  In addition, Plaintiff is entitled to $10,000.00 in additional damages to his credit and his person which resulted from the Defendant's failure and refusal to provide adequate and timely maintenance and cure.

50)     Defendant is not entitled to any credit or offset for any such maintenance payments as have been made to date.  Maintenance is a quasi-contractual obligation of the vessel and, thus, cannot be used to offset an award for compensatory, tort damages, including but not limited to compensation for lost wages in the past or future.

**Defendant contends that:**

1) Defendant contends that it was not negligent on the occasion in question, and that it provided skilled and qualified Captains to operate the vessels in question and the actions of the Captains did not cause or contribute to any incident alleged by the Plaintiff.

2) Defendant contends it was not negligent on the occasions in question, in that it provided two seaworthy vessels, the M/V F.M. BROWN and the M/V LADY BECKY, and that the vessels in question did not cause or contribute in any way the injuries alleged by the Plaintiff.

3) Defendant contends that the Plaintiff committed one or more of the following acts which constitutes negligence on the occasions in question, which negligence was a proximate cause in whole or in part of the Plaintiff's alleged injuries:

   a.   The Plaintiff was physically unfit to perform the duties of a deckhand prior to and at the time of his employment with Defendant but failed to provide that information to Defendant;

   b.   The Plaintiff was aware of the size and weight of the engine hatch covers in question but elected to attempt to lift them without aid or assistance from other crew members;

   c.   The Plaintiff was aware that there were other means available to access the engine room on the vessels in question but chose to enter and exist the engine room using the engine hatch covers;

   d.   The Plaintiff failed to take general precautions for his own safety by his failure to inform his employer of his inability to lift the engine hatch covers prior to any incident or injury;

   e.   The Plaintiff failed to take general precautions for his own safety by failing to seek assistance from the Captains or other crew members in lifting the engine hatch covers in

question.

4)      Defendant contends prior to accepting employment with Defendant, Plaintiff was aware of the lifting requirements and physically demanding nature of a deckhand job which he knew or should have known he was physically unable to perform but nevertheless accepted the job and attempted to perform activities for which he was not physically capable.

5)      Plaintiff was aware of his generally poor physical condition including problems with chronic obstructive pulmonary disease or pulmonary insufficiency as well as prior hernia problems requiring surgical intervention but failed to notify Defendant or the physician performing his pre-employment physical of his true physical condition which resulted in Plaintiff being accepted for employment with Defendant when he was not in a sound physical condition.

6)      Defendant contends that if Plaintiff suffered injuries aboard one or more vessels for Defendant but failed to timely report those injuries to the Defendant and failed to timely fill out an accident report in violation of company policy.

7)      Defendant contends that Plaintiff is an inadequate historian and has provided inconsistent information about his medical condition to his medical care providers which has resulted in inconsistent treatments.

8)      Defendant contends that Plaintiff suffers from a non-physiological flapping tremor of unknown origin with no physical cause that is completely unrelated to any injury allegedly sustained by the Plaintiff while employed with Defendant.

9)      Because of Plaintiff's long standing problem with chronic obstructive pulmonary disease, as well as pulmonary insufficiency, Plaintiff is disabled and would not have been able to return to any type of gainful employment as a deckhand or within the marine industry as of December of 1999 and most probably an earlier date.

10)     Plaintiff suffers from cervical stenosis at the C4/5, C5/6 and C6/7 areas which pre-existed his employment with Defendant and may be a cause of the symptoms complained of in this case.

11)     Plaintiff suffers from arthritis which pre-existed his employment with Defendant and may be a cause of or contributing to the complaints alleged.

12)     Plaintiff's disability, which was caused by his chronic obstructive pulmonary disease and pulmonary insufficiency, renders the Plaintiff unfit for gainful employment in the maritime industry and therefore should preclude any award for loss of earning capacity after the date of his disability.

13)     There is no evidence in the case to support Plaintiff's contention that the amount of maintenance paid is in any way inadequate.

14)     Plaintiff has failed to show how any delay in the payment of either maintenance or cure have caused him to suffer the worsening of any physical condition and therefore Plaintiff is not entitled to any damages for the delay in payment of either maintenance or cure by Defendant.

15)     Defendant contends that it has paid maintenance beyond the date of maximum medical cure and is therefore entitled to a credit or offset for any amounts of maintenance paid above and beyond the amounts required by law.

16)     Defendant contends that Plaintiff was employed at the San Patricio Water District in 1996, 1997 and in 1998.

17)     Defendant contends that Plaintiff continued to work at the San Patricio Water District after having claimed to have suffered injuries during his employment with Defendant, but was able to perform physically demanding labor with the Water District.

18)     Defendant contends that records from the San Patricio Water District indicate that Plaintiff was performing heavy manual labor and physically rigorous work during 1996, 1997, 1998 which may have been a cause in fact for his alleged injuries.

14

19)     Defendant contends that Plaintiff knowingly and intentionally failed to disclose information about his employment with the San Patricio Water District.

20)     Defendant contends that the conduct of the Plaintiff is inconsistent with the complaints made in the instant lawsuit as well as the complaints made to his employer Defendant in 1997 and 1998.

21)     Defendant contends that Plaintiff suffers from a decreased earning capacity, not a result of his alleged injuries, but due to his long standing and unrelated physical problems including chronic obstructive pulmonary disease.

22)     Defendant contends that the Plaintiff has failed to mitigate his damages.

23)     Defendant contends that it has satisfied its obligations for maintenance and cure benefits to or on behalf of the Plaintiff.

24)     Defendant contends it is entitled to reimbursement and/or a credit or offset from Plaintiff for any amounts of maintenance and cure payments made to or on behalf of the Plaintiff above and beyond those required by law.

25)     Defendant contends it is entitled to exoneration from any liability to the Plaintiff in accordance with the value of the M/V F.M. BROWN and M/V LADY BECKY, including their pending freight, pursuant to 46 U.S.C. § 181 et seq.

## 6.     ADMISSIONS OF FACT:

(a)     This Honorable Court has jurisdiction and venue over this "Jones Act" (46 U.S.C. §688, *et seq.*) and general maritime law cause.

(b)     This case involves the personal injury of DONALD LESLIE "SAM" GALBREATH.

(c)     At all times material to this cause, Plaintiff was a resident of the Southern District of Texas.

(d)     Defendant is a Texas corporation whose principal office was and is located within

15

the Southern District of Texas.

      (e)     Following the April 1997 incident in question, Plaintiff continued to work.

      (f)     With respect to his April 1997 injury, Plaintiff filled out his first written report of his injury on June 10, 1997.

      (g)     In his first written report of his April 1997 injury, Plaintiff identified the repeated opening of the vessels' engine room hatch covers as the cause of his injury.

      (h)     At the time of the incidents in question, Plaintiff was earning $65.00 per day.

      (j)     Defendant has paid a $15.00 per day maintenance rate to Plaintiff from April 20, 1998 through the present.

      (k)     Plaintiff was born on October 18, 1940.

**7.    CONTESTED ISSUES OF FACT:**

The Parties believe that the contested issues of fact are as follows:

      (a)     Whether Plaintiff was injured on the Defendant's vessels;

      (b)     If Plaintiff sustained injuries on board the Defendants' vessels, the facts and circumstances surrounding each such injury;

      (c)     Whether there should have been a different way of accessing the vessels' engine compartments;

      (d)     Whether the vessels' engine compartment hatch covers should have been modified;

      (e)     Whether Defendant, its agents, servants, employees, or representatives was/were negligent in their operation, maintenance or repair of the vessels;

      (f)     Whether the Defendant used reasonable care under the circumstances;

      (g)     Whether any fault for any alleged injury may be attributed to Defendant;

16

(h)     The extent of any fault that may be attributed to Defendant;

(i)     Whether Plaintiff was negligent for failing to exercise proper care for his own safety;

(j)     Whether Plaintiff was comparatively at fault for any injury he sustained;

(k)     Whether the vessels were unseaworthy on the occasions in question;

(l)     Whether the negligence of Defendant caused, even in the slightest, the alleged incidents and injuries in question;

(m)     Whether the unseaworthiness of the vessels was a proximate cause of the alleged incidents and injuries in question;

(n)     Whether Plaintiff's alleged injuries were pre-existing conditions;

(o)     Plaintiff has a life expectancy of 78.86 years, which is approximately 22.36 years from the date of his first, April 1997 injury and 21.36 years from the date of his second, April 18, 1998 injury.   As of the date of his second injury of April 18, 1998, Plaintiff had a worklife expectancy of 4.7 more years (i.e., to age 62.2).

(p)     If Plaintiff sustained injuries on board the vessels, the nature, extent and duration of each such injury;

(q)     If Plaintiff sustained injuries on board the vessels, the nature, extent and duration of Plaintiff's disfigurement; physical pain and suffering; mental anguish; loss of physical capacity; loss of life's enjoyments; and, past, present and future loss of earnings and earning capacity;

(r)     If Plaintiff sustained injuries on board the vessels, whether his earning capacity was harmed;

(s)     The extent to which Plaintiff will be able to return to work, if at all;

(t)     The extent of damages, if any, to which Plaintiff may be entitled;

(u)     The amount of money, if any, that would fairly and reasonably compensate Plaintiff

for the injuries and damages he sustained in connection with the incidents in question;

(v)      Whether Plaintiff has reached maximum cure and, if not, the date on which Plaintiff is expected to reach maximum cure;

(w)      Whether Plaintiff is entitled to ongoing "maintenance" and "cure" benefits, and, if so, the daily rate of maintenance to which Plaintiff is entitled;

(x)      The period for which Plaintiff is entitled to maintenance benefits; and,

(y)      Whether Plaintiff has minimized his damages.

## 8.    AGREED PROPOSITIONS OF LAW:

This Honorable Court has jurisdiction and venue over this "Jones Act" (46 U.S.C. §688, *et seq.*) and general maritime law cause.

This case arises under the "Jones Act", i.e., 46 U.S.C. §688, *et seq.*, and the general maritime law of the United States.

The "Jones Act" is a federal statute that governs claims made by an injured seaman against his maritime employer.   In order to prevail upon his "Jones Act" cause against the Defendant-employer, Plaintiff must show: (i) the Defendant-employer was negligent in some fashion; and (ii) such negligence contributed to Plaintiff's injuries.

Under the Jones Act, the plaintiff must prove that his employer was negligent. "Negligence" is the doing of an act that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the same or similar circumstances.   The occurrence of an accident, standing alone, does not mean anyone's negligence caused the accident. *Fifth Circuit Pattern Jury Instructions, p. 38 (West 1999).*

In a Jones Act claim, the word "negligence" is given a liberal interpretation.   It includes any breach of duty that an employer owes to his employees who are seamen, including the duty of

18

providing for the safety of the crew. *Fifth Circuit Pattern Jury Instructions, p. 38 (West 1999).*

Under the Jones Act, if the employer's negligent act or omission played any part, no matter how small, in bringing about or actually causing the plaintiff's injury, then the employer is liable under the Jones Act. See, e.g., *Fifth Circuit Pattern Jury Instructions, p. 38 (West 1999); Ferguson vs. Moore-McCormack Lines, Inc.,* 352 U.S. 521, 1 L.Ed.2d 511, 77 S.Ct. 457 (1957); *Santana vs. United States*, 572 F.2d 331 (1st Cir.1977).

Negligence under the Jones Act may consist of a failure to comply with a duty required by law. Employers of seamen have a duty to provide their employees with a reasonably safe place to work and, therefore, the employer is negligent if the seaman's working conditions could have been made safe through the exercise of reasonable care. *Fifth Circuit Pattern Jury Instructions, p. 39 (West 1999).*

The fact that the Defendants operated the vessel in a manner similar to that of other companies is not conclusive as to whether the Defendant-employer was negligent or not. *Fifth Circuit Pattern Jury Instructions, p. 39 (West 1999).*

A seaman's employer is legally responsible for the negligence of one of its employees while that employee is acting within the course and scope of his job. *Fifth Circuit Pattern Jury Instructions, p. 39 (West 1999).*

"Unseaworthiness" is a claim that the owner of a vessel has not fulfilled its duty to members of the crew to provide a vessel reasonably fit for its intended purpose. See, e.g., *Fifth Circuit Pattern Jury Instructions, p. 40 (West 1999).*

In order for the M/V LADY BECKY or the M/V F.M. BROWN to be deemed "unseaworthy" by the finder of fact, Plaintiff must show that such vessel and/or its gear and appurtenances was/were not reasonably fit for their intended purpose(s). Under the general maritime

19

law of the United States, in order for Plaintiff to prevail on this cause of action against the vessel and its owner, Plaintiff must show that such unseaworthiness was a proximate cause of the injuries and damages made the basis of this lawsuit.

A shipowner owes to every member of the crew employed on its vessel the absolute duty to keep and maintain the ship, and all decks and passageways, appliances, gear, tools, parts and equipment of the vessel in a seaworthy condition at all times. *Fifth Circuit Pattern Jury Instructions, p. 40 (West 1999).*

The owner's duty to provide a seaworthy ship is absolute. The owner may not delegate the duty to anyone. Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. If an owner does not provide a seaworthy vessel, including equipment and a crew reasonably fit for their intended purpose, then no amount of care or prudence excuses the owner. *Fifth Circuit Pattern Jury Instructions, p. 40 (West 1999).*

The duty to provide a seaworthy ship extends not only to the vessel itself, but to all of its parts, equipment, and gear, and also includes the duty to supply an adequate and competent crew. *Fifth Circuit Pattern Jury Instructions, p. 40 (West 1999).*

The owner of a vessel is not required to furnish an accident free ship. He need only furnish a vessel and its appurtenances that are reasonably fit for their intended use and a crew that is reasonably adequate for their assigned tasks. *Fifth Circuit Pattern Jury Instructions, p. 40 (West 1999).*

"Maintenance" and "cure" are terms identifying a contractual form of compensation given by the general maritime law to a seaman who falls ill or injured while in the service of his vessel. The vessel owner's obligation is an incident or implied term of contract for maritime employment and is non-delegable.

"Maintenance" is a *per diem* living allowance while "cure" covers a seaman's medical, therapeutic, and hospital expenses.

The Plaintiff's right to "maintenance" and "cure" is not dependent upon a showing of Defendants' negligence or the absence of fault on the part of Plaintiff. Thus, Plaintiff's claims under the "Jones Act", i.e., 46 U.S.C. §688, *et seq.*, are not dispositive of Plaintiff's right to the provision of "maintenance" and "cure" benefits by the Defendants. The Defendants' obligation to pay maintenance and cure continues until the seaman reaches maximum cure. A seaman reaches maximum cure when it appears probable that further treatment will result in no betterment of the seaman's condition.

The maritime law permits the recovery of pre-judgment interest unless there are peculiar circumstances which make these damages inappropriate.

9.   **CONTESTED PROPOSITIONS OF LAW:**

   **Plaintiff contends that:**

The "ordinary risks" defense, as reflected in Defendants' pleadings, is an attempt to impermissibly inject "assumption of the risk" into the trial of this cause. The Defendants are entitled to show, if they can, that the injury in question was <u>not</u> caused by Defendants' negligence and, therefore, the Plaintiff has not sustained the burden of his affirmative proof under the Jones Act. <u>See</u>, *Keel vs. Greenville Mid-Stream Service, Inc.*, 321 F.2d 903 (5th Cir.1963).

Moreover, the seaman does not assume the risk inherent in carrying out the orders of his superior for there is an obligation on the part of the seaman to obey those orders. *The Arizona vs. Anelich*, 298 U.S. 110, 80 L.Ed. 1075, 56 S.Ct. 707 (1936); *Socony-Vacuum Oil Co. vs. Smith*, 305 U.S. 424, 83 L.Ed. 265, 59 S.Ct. 262 (1939). The seaman's calling is a hazardous one in which he faces on the one hand the dangers of the natural elements, and on the other, the requirements of

ship's discipline which may expose him to those elements by requiring him to obey orders against perhaps his better judgment.  Norris, Martin J. *The Law of Seamen,* §30.34 "Negligence," p. 454 (4th Ed. 2000).

The seaman's "continuing duty to maintain safe conditions aboard the vessel" is part and parcel of the Defendant's contributory negligence argument.  It is not a separate defense.

**10.   EXHIBITS:**

Pursuant to Local Rule 16.2 of the United States District Court, Southern District of Texas, and Paragraph 10(A) of "Exhibit B" to such Local Rules, the Parties have attached their respective "lists of all exhibits expected to be offered [at trial] and [have made] the exhibits available for examination by opposing counsel."  Two copies of these lists have been appended hereto and are identified as "Plaintiff's Exhibit 1" and "Defendant's Exhibit 1" of this Joint Pretrial Order.

**11.   WITNESSES:**

The Plaintiff's Witness List is appended hereto and identified as "Plaintiff's Exhibit 2."  The Defendant's Witness List is appended hereto and identified as "Defendant's Exhibit 2."

IN THE EVENT there are any other witnesses to be called at the time of trial, their names, addresses and the subject matter of their testimony shall be reported to opposing counsel as soon as they are known.  This restriction shall not apply to rebuttal or impeaching witnesses, the necessity of whose testimony cannot reasonably be anticipated before the time of trial.  The Parties agree that the mere listing of a witness hereinabove does not bind the Party listing the witness to call such witness at trial.

**12.   SETTLEMENT:**

All settlement efforts have been exhausted.  This case cannot be settled, and it will have to be tried.

13.  **TRIAL:**

The Parties estimate that it shall take five (5) days to complete jury selection and the trial of this cause.

At present, the Parties would apprise the Court of the following known logistical problems that may or might interfere with the efficient conduct of this trial:

(a)  Many of the witnesses are "out of state";

(b)  Some of the exhibits are "bulky"; and,

(c)  There may be a need for one or more "demonstrations" during the course of the trial.

14.  **ATTACHMENTS:**

Pursuant to Local Rule 16.2 of the United States District Court, Southern District of Texas, and Paragraph 14(B) of "Exhibit B" to such Local Rules, the Parties have attached:

1.  Plaintiff's proposed Voir Dire ("Plaintiff's Exhibit 3");

2.  Plaintiff's Motion in Limine ("Plaintiff's Exhibit 4");

3.  Plaintiff's proposed Charge of the Court, including instructions and definitions ("Plaintiff's Exhibit 5");

4.  Defendant's proposed Voir Dire ("Defendant's Exhibit 3");

5.  Defendant's Motion in Limine ("Defendant's Exhibit 4"); and,

6.  Defendant's proposed Charge of the Court, including instructions and definitions ("Defendant's Exhibit 5").

Date: _____     _____
                                   Hon. Hilda G. Tagle
                                   UNITED STATES DISTRICT JUDGE

23

Approved:

Date: 1/23/02

R. Blake Brunkenhoefer,
*Attorney-in-Charge for Plaintiff*

Date: 1/23/02

Richard B. Waterhouse, Jr.
*Attorney-in-Charge for Defendant*

24



# UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| DONALD LESLIE "SAM" GALBREATH, § | CIVIL ACTION NO. B-00-048 |
| § | ADMIRALTY / JURY |
| Plaintiff § | |
| § | |
| *vs.* § | HON. HILDA G. TAGLE |
| § | |
| **PROMAR, INC.,** *Individually and d/b/a COASTAL* § | TRIAL: 02/11/02 |
| ***PRODUCTION SERVICES,*** § | |
| § | |
| Defendant § | **PARTIES' JOINT PRETRIAL ORDER:** |
| § | **"PLAINTIFF'S EXHIBIT LIST"** |

| EX. # | DESCRIPTION | MARKED | OFFERED | OBJECT | ADMIT | DATE | DISPOSITION AFTER TRIAL |
|---|---|---|---|---|---|---|---|
| 1 | Photos of the M/V LADY BECKY and her equipment | | | | | | |
| 2 | Videotapes of the M/V LADY BECKY and her equipment | | | | | | |
| 3 | Diagrams/models of M/V LADY BECKY and her equipment | | | | | | |
| 4 | Photos of the M/V F.M. BROWN and her equipment | | | | | | |
| 5 | Videotapes of the M/V F.M. BROWN and her equipment | | | | | | |
| 6 | Diagrams/models of the M/V F.M. BROWN and her equipment | | | | | | |
| 7 | Vessel logs for M/V LADY BECKY | | | | | | |
| 8 | Vessel logs for M/V F.M. BROWN | | | | | | |
| 9 | Vessel specifications for M/V LADY BECKY | | | | | | |
| 10 | Vessel specifications for M/V F.M. BROWN | | | | | | |

1



EXHIBIT
π - 1

| 11 | Hatch cover weight calculations/schematics for M/V LADY BECKY | | | | | | |
|----|----|--|--|--|--|--|--|
| 12 | Hatch cover weight calculations/schematics for M/V F.M. BROWN | | | | | | |
| 13 | Transcript of 10/06/00 deposition of Sam Galbreath | | | | | | |
| 14 | Transcript of 10/06/00 deposition of Linda Galbreath | | | | | | |
| 15 | Transcript of 05/14/01 deposition of Billy Pearson | | | | | | |
| 16 | Transcript of 10/31/01 deposition of Capt. Ronnie Hale (with attachments) | | | | | | |
| 17 | Videotape of 10/31/01 deposition of Capt. Ronnie Hale | | | | | | |
| 18 | Transcript of deposition of Robert "Stash" Taylor (with attachments) | | | | | | |
| 19 | Videotape of deposition of Robert "Stash" Taylor | | | | | | |
| 20 | Transcript of deposition of J.R. Reeves (with attachments) | | | | | | |
| 21 | Videotape of deposition of J. R. Reeves | | | | | | |
| 22 | Transcript of deposition of Tommy Shields (with attachments) | | | | | | |
| 23 | Videotape of deposition of Tommy Shields | | | | | | |
| 24 | Transcript of deposition of Carl Stubbs (with attachments) | | | | | | |
| 25 | Videotape of deposition of Carl Stubbs | | | | | | |
| 26 | Transcript of deposition of Rick Pilgrim (with attachments) | | | | | | |
| 27 | Videotape of deposition of Rick Pilgrim | | | | | | |
| 28 | Transcript of deposition of David Pilgrim (with attachments) | | | | | | |
| 29 | Videotape of deposition of David Pilgrim | | | | | | |
| 30 | Sam Galbreath's personnel file(s) re: employment for PROMAR | | | | | | |
| 31 | First Report of Injury or Illness re: neck/shoulder injury (06/10/97) | | | | | | |

2

| 32 | Report of Dick Frenzel | | | | | | |
|---|---|---|---|---|---|---|---|
| 33 | CV of Dick Frenzel | | | | | | |
| 34 | All documentation and sources of information relied upon by Dick Frenzel in rendering his liability opinions in this case | | | | | | |
| 35 | Records/billing/x-rays of DR. JOHN LONGACRE | | | | | | |
| 36 | Records/billing of Dr. William Aaron Tucker (ATLAS ORTHOPEDICS & SPINE CENTER) | | | | | | |
| 37 | Records of AIM PHYSICAL THERAPY | | | | | | |
| 38 | Billing of AIM PHYSICAL THERAPY | | | | | | |
| 39 | Records of ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 40 | X-rays of ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 41 | Billing of ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 42 | Transcript of April 30, 2001 deposition of Dr. Charles Breckenridge, ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI (including attachments) | | | | | | |
| 43 | Videotape of April 30, 2001 deposition of Dr. Charles Breckenridge, ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 44 | CV of Dr. Charles Breckenridge | | | | | | |
| 45 | Transcript of deposition of Dr. John P. Masciale, ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI (with attachments) | | | | | | |
| 46 | Videotape of deposition of Dr. John P. Masciale, ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 47 | CV of Dr. John P. Masciale | | | | | | |
| 48 | Records of COLUMBIA DOCTORS REGIONAL MEDICAL CENTER | | | | | | |
| 49 | X-rays of COLUMBIA DOCTORS REGIONAL MEDICAL CENTER | | | | | | |

3

| 50 | Billing of COLUMBIA DOCTORS REGIONAL MEDICAL CENTER | | | | | | |
|----|----|---|---|---|---|---|---|
| 51 | Records/billing of Dr. Jose de Jesus Trevino | | | | | | |
| 52 | Records of Dr. David A. McFarling, NEUROLOGICAL CLINIC | | | | | | |
| 53 | Billing of Dr. David A. McFarling, THE NEUROLOGICAL CLINIC | | | | | | |
| 54 | Billing of RADIOLOGY ASSOCIATES | | | | | | |
| 55 | Billing of THE HEART CLINIC OF CORPUS CHRISTI | | | | | | |
| 56 | Billing of THE ANESTHESIA GROUP | | | | | | |
| 57 | Records of CORPUS CHRISTI OUTPATIENT SURGERY | | | | | | |
| 58 | Billing of CORPUS CHRISTI OUTPATIENT SURGERY | | | | | | |
| 59 | Records/x-rays/billing of CORPUS CHRISTI RADIOLOGY CENTER | | | | | | |
| 60 | Records/billing of THE MEDICINE SHOPPE | | | | | | |
| 61 | Records/billing of ECKERD'S PHARMACY | | | | | | |
| 63 | Records of CORPUS CHRISTI BAY AREA SURGERY | | | | | | |
| 64 | Billing of CORPUS CHRISTI BAY AREA SURGERY | | | | | | |
| 65 | Records of HUMPAL PHYSICAL THERAPY | | | | | | |
| 66 | Billing of HUMPAL PHYSICAL THERAPY | | | | | | |
| 67 | Records of COLUMBIA BAY AREA MEDICAL CENTER | | | | | | |
| 68 | Billing of COLUMBIA BAY AREA MEDICAL CENTER | | | | | | |
| 69 | Billing of Dr. Kwang Su Lee | | | | | | |
| 70 | Records of COLUMBIA NORTH BAY HOSPITAL | | | | | | |
| 71 | X-rays of COLUMBIA NORTH BAY HOSPITAL | | | | | | |
| 72 | Billing of COLUMBIA NORTH BAY HOSPITAL | | | | | | |
| 73 | Transcript of deposition of Dr. Pat J. Marshio (with attachments) | | | | | | |

4

| 74 | Videotape of deposition of Dr. Pat J. Marshio | | | | | | |
|----|-----------------------------------------------|--|--|--|--|--|--|
| 75 | CV of Dr. Pat J. Marshio | | | | | | |
| 76 | Records of Dr. Pat J. Marshio | | | | | | |
| 77 | Billing of Dr. Pat J. Marshio | | | | | | |
| 78 | Records of CHRISTUS SPOHN HOSPITAL-SHORELINE | | | | | | |
| 79 | Billing of CHRISTUS SPOHN HOSPITAL-SHORELINE | | | | | | |
| 80 | Transcript of deposition of Dr. Alberto Belalcazar (with attachments) | | | | | | |
| 81 | Videotape of deposition of Dr. Alberto Belalcazar | | | | | | |
| 82 | CV of Dr. Alberto Belalcazar | | | | | | |
| 83 | Records of Dr. Alberto Belalcazar | | | | | | |
| 84 | Billing of Dr. Alberto Belalcazar | | | | | | |
| 85 | Records of Dr. Frank Luckay, DISABILITY EVALUATING CENTER OF TEXAS | | | | | | |
| 86 | Transcript of 12/10/01 deposition of Dr. Jerome Lee Sang (and attachments) | | | | | | |
| 87 | CV of Dr. Jerome Lee Sang | | | | | | |
| 88 | Records of Dr. Jerome Lee Sang | | | | | | |
| 89 | Billing of Dr. Jerome Lee Sang | | | | | | |
| 90 | Medical Expenses Summary | | | | | | |
| 91 | Medical Diagrams/Animations/Videotapes (e.g., chronology; "positive" and/or reverse imaging of radiographic studies) | | | | | | |
| 92 | 1998 Vital Statistics of the United States "Life Tables" | | | | | | |
| 93 | Records of the Social Security Administration re: Sam Galbreath | | | | | | |
| 94 | Income tax records of Sam Galbreath | | | | | | |
| 95 | W-2's of Sam Galbreath | | | | | | |
| 96 | 1999 receipts from CAPT. TOM'S SEAFOOD | | | | | | |

5

| 97 | Records of the TEXAS REHABILITATION COMMISSION | | | | | |
|---|---|---|---|---|---|---|
| 98 | Transcript of deposition of Donna Johnson, M.Ed., C.R.C., L.P.C. | | | | | |
| 99 | Videotape of deposition of Donna Johnson, M.Ed., C.R.C., L.P.C. | | | | | |
| 100 | Report of Donna Johnson, M.Ed., C.R.C., L.P.C. | | | | | |
| 101 | CV of Donna Johnson, M.Ed., C.R.C., L.P.C. | | | | | |
| 102 | All documentation and sources of information relied upon by Donna Johnson, in rendering her vocational opinions re: Sam Galbreath | | | | | |
| 103 | Report of Stephen M. Horner, Ph.D. | | | | | |
| 104 | CV of Stephen M. Horner, Ph.D. | | | | | |
| 105 | All documentation and sources of information relied upon by Stephen M. Horner, Ph.D., in rendering his economic opinions re: Sam Galbreath | | | | | |
| 106 | Earnings Summary/Diagram | | | | | |
| 107 | Damages Summary/Diagram | | | | | |
| 108 | Correspondence reflecting demands for maintenance and cure | | | | | |
| 109 | PROMAR maintenance & cure spreadsheet re: Sam Galbreath | | | | | |
| reserved | Other medical/employment/wage records obtained by PROMAR via Plaintiff's authorization | | | | | |
| reserved | Documents/materials produced in supplementation of Plaintiff's written discovery | | | | | |
| reserved | Transcript/video/exhibits of all other depositions taken in this cause | | | | | |
| reserved | All documentation and sources of information relied upon by any witness who offers testimony in this cause | | | | | |

# UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **DONALD LESLIE "SAM" GALBREATH,** | § | **CIVIL ACTION NO. B-00-048** |
| | § | **ADMIRALTY / JURY** |
| Plaintiff | § | |
| | § | |
| *vs.* | § | **HON. HILDA G. TAGLE** |
| | § | |
| **PROMAR, INC.,** *Individually and d/b/a COASTAL* | § | **TRIAL: 02/11/02** |
| *PRODUCTION SERVICES,* | § | |
| | § | |
| Defendant | § | **PARTIES' JOINT PRETRIAL ORDER:** |
| | § | **"PLAINTIFF'S EXHIBIT LIST"** |

| EX. # | DESCRIPTION | MARKED | OFFERED | OBJECT | ADMIT | DATE | DISPOSITION AFTER TRIAL |
|---|---|---|---|---|---|---|---|
| 1 | Photos of the M/V LADY BECKY and her equipment | | | | | | |
| 2 | Videotapes of the M/V LADY BECKY and her equipment | | | | | | |
| 3 | Diagrams/models of M/V LADY BECKY and her equipment | | | | | | |
| 4 | Photos of the M/V F.M. BROWN and her equipment | | | | | | |
| 5 | Videotapes of the M/V F.M. BROWN and her equipment | | | | | | |
| 6 | Diagrams/models of the M/V F.M. BROWN and her equipment | | | | | | |
| 7 | Vessel logs for M/V LADY BECKY | | | | | | |
| 8 | Vessel logs for M/V F.M. BROWN | | | | | | |
| 9 | Vessel specifications for M/V LADY BECKY | | | | | | |
| 10 | Vessel specifications for M/V F.M. BROWN | | | | | | |

| 11 | Hatch cover weight calculations/schematics for M/V LADY BECKY | | | | | | |
|----|---------------------------------------------------------------|--|--|--|--|--|--|
| 12 | Hatch cover weight calculations/schematics for M/V F.M. BROWN | | | | | | |
| 13 | Transcript of 10/06/00 deposition of Sam Galbreath | | | | | | |
| 14 | Transcript of 10/06/00 deposition of Linda Galbreath | | | | | | |
| 15 | Transcript of 05/14/01 deposition of Billy Pearson | | | | | | |
| 16 | Transcript of 10/31/01 deposition of Capt. Ronnie Hale (with attachments) | | | | | | |
| 17 | Videotape of 10/31/01 deposition of Capt. Ronnie Hale | | | | | | |
| 18 | Transcript of deposition of Robert "Stash" Taylor (with attachments) | | | | | | |
| 19 | Videotape of deposition of Robert "Stash" Taylor | | | | | | |
| 20 | Transcript of deposition of J.R. Reeves (with attachments) | | | | | | |
| 21 | Videotape of deposition of J. R. Reeves | | | | | | |
| 22 | Transcript of deposition of Tommy Shields (with attachments) | | | | | | |
| 23 | Videotape of deposition of Tommy Shields | | | | | | |
| 24 | Transcript of deposition of Carl Stubbs (with attachments) | | | | | | |
| 25 | Videotape of deposition of Carl Stubbs | | | | | | |
| 26 | Transcript of deposition of Rick Pilgrim (with attachments) | | | | | | |
| 27 | Videotape of deposition of Rick Pilgrim | | | | | | |
| 28 | Transcript of deposition of David Pilgrim (with attachments) | | | | | | |
| 29 | Videotape of deposition of David Pilgrim | | | | | | |
| 30 | Sam Galbreath's personnel file(s) re: employment for PROMAR | | | | | | |
| 31 | First Report of Injury or Illness re: neck/shoulder injury (06/10/97) | | | | | | |

2

| 32 | Report of Dick Frenzel | | | | | | |
|---|---|---|---|---|---|---|---|
| 33 | CV of Dick Frenzel | | | | | | |
| 34 | All documentation and sources of information relied upon by Dick Frenzel in rendering his liability opinions in this case | | | | | | |
| 35 | Records/billing/x-rays of DR. JOHN LONGACRE | | | | | | |
| 36 | Records/billing of Dr. William Aaron Tucker (ATLAS ORTHOPEDICS & SPINE CENTER) | | | | | | |
| 37 | Records of AIM PHYSICAL THERAPY | | | | | | |
| 38 | Billing of AIM PHYSICAL THERAPY | | | | | | |
| 39 | Records of ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 40 | X-rays of ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 41 | Billing of ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 42 | Transcript of April 30, 2001 deposition of Dr. Charles Breckenridge, ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI (including attachments) | | | | | | |
| 43 | Videotape of April 30, 2001 deposition of Dr. Charles Breckenridge, ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 44 | CV of Dr. Charles Breckenridge | | | | | | |
| 45 | Transcript of deposition of Dr. John P. Masciale, ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI (with attachments) | | | | | | |
| 46 | Videotape of deposition of Dr. John P. Masciale, ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI | | | | | | |
| 47 | CV of Dr. John P. Masciale | | | | | | |
| 48 | Records of COLUMBIA DOCTORS REGIONAL MEDICAL CENTER | | | | | | |
| 49 | X-rays of COLUMBIA DOCTORS REGIONAL MEDICAL CENTER | | | | | | |

3

| 50 | Billing of COLUMBIA DOCTORS REGIONAL MEDICAL CENTER | | | | | | |
|---|---|---|---|---|---|---|---|
| 51 | Records/billing of Dr. Jose de Jesus Trevino | | | | | | |
| 52 | Records of Dr. David A. McFarling, NEUROLOGICAL CLINIC | | | | | | |
| 53 | Billing of Dr. David A. McFarling, THE NEUROLOGICAL CLINIC | | | | | | |
| 54 | Billing of RADIOLOGY ASSOCIATES | | | | | | |
| 55 | Billing of THE HEART CLINIC OF CORPUS CHRISTI | | | | | | |
| 56 | Billing of THE ANESTHESIA GROUP | | | | | | |
| 57 | Records of CORPUS CHRISTI OUTPATIENT SURGERY | | | | | | |
| 58 | Billing of CORPUS CHRISTI OUTPATIENT SURGERY | | | | | | |
| 59 | Records/x-rays/billing of CORPUS CHRISTI RADIOLOGY CENTER | | | | | | |
| 60 | Records/billing of THE MEDICINE SHOPPE | | | | | | |
| 61 | Records/billing of ECKERD'S PHARMACY | | | | | | |
| 63 | Records of CORPUS CHRISTI BAY AREA SURGERY | | | | | | |
| 64 | Billing of CORPUS CHRISTI BAY AREA SURGERY | | | | | | |
| 65 | Records of HUMPAL PHYSICAL THERAPY | | | | | | |
| 66 | Billing of HUMPAL PHYSICAL THERAPY | | | | | | |
| 67 | Records of COLUMBIA BAY AREA MEDICAL CENTER | | | | | | |
| 68 | Billing of COLUMBIA BAY AREA MEDICAL CENTER | | | | | | |
| 69 | Billing of Dr. Kwang Su Lee | | | | | | |
| 70 | Records of COLUMBIA NORTH BAY HOSPITAL | | | | | | |
| 71 | X-rays of COLUMBIA NORTH BAY HOSPITAL | | | | | | |
| 72 | Billing of COLUMBIA NORTH BAY HOSPITAL | | | | | | |
| 73 | Transcript of deposition of Dr. Pat J. Marshio (with attachments) | | | | | | |

4

| 74 | Videotape of deposition of Dr. Pat J. Marshio | | | | | | |
|----|-----------------------------------------------|--|--|--|--|--|--|
| 75 | CV of Dr. Pat J. Marshio | | | | | | |
| 76 | Records of Dr. Pat J. Marshio | | | | | | |
| 77 | Billing of Dr. Pat J. Marshio | | | | | | |
| 78 | Records of CHRISTUS SPOHN HOSPITAL-SHORELINE | | | | | | |
| 79 | Billing of CHRISTUS SPOHN HOSPITAL-SHORELINE | | | | | | |
| 80 | Transcript of deposition of Dr. Alberto Belalcazar (with attachments) | | | | | | |
| 81 | Videotape of deposition of Dr. Alberto Belalcazar | | | | | | |
| 82 | CV of Dr. Alberto Belalcazar | | | | | | |
| 83 | Records of Dr. Alberto Belalcazar | | | | | | |
| 84 | Billing of Dr. Alberto Belalcazar | | | | | | |
| 85 | Records of Dr. Frank Luckay, DISABILITY EVALUATING CENTER OF TEXAS | | | | | | |
| 86 | Transcript of 12/10/01 deposition of Dr. Jerome Lee Sang (and attachments) | | | | | | |
| 87 | CV of Dr. Jerome Lee Sang | | | | | | |
| 88 | Records of Dr. Jerome Lee Sang | | | | | | |
| 89 | Billing of Dr. Jerome Lee Sang | | | | | | |
| 90 | Medical Expenses Summary | | | | | | |
| 91 | Medical Diagrams/Animations/Videotapes (e.g., chronology; "positive" and/or reverse imaging of radiographic studies) | | | | | | |
| 92 | 1998 Vital Statistics of the United States "Life Tables" | | | | | | |
| 93 | Records of the Social Security Administration re: Sam Galbreath | | | | | | |
| 94 | Income tax records of Sam Galbreath | | | | | | |
| 95 | W-2's of Sam Galbreath | | | | | | |
| 96 | 1999 receipts from CAPT. TOM'S SEAFOOD | | | | | | |

5

| 97 | Records of the TEXAS REHABILITATION COMMISSION | | | | | | |
|---|---|---|---|---|---|---|---|
| 98 | Transcript of deposition of Donna Johnson, M.Ed., C.R.C., L.P.C. | | | | | | |
| 99 | Videotape of deposition of Donna Johnson, M.Ed., C.R.C., L.P.C. | | | | | | |
| 100 | Report of Donna Johnson, M.Ed., C.R.C., L.P.C. | | | | | | |
| 101 | CV of Donna Johnson, M.Ed., C.R.C., L.P.C. | | | | | | |
| 102 | All documentation and sources of information relied upon by Donna Johnson, in rendering her vocational opinions re: Sam Galbreath | | | | | | |
| 103 | Report of Stephen M. Horner, Ph.D. | | | | | | |
| 104 | CV of Stephen M. Horner, Ph.D. | | | | | | |
| 105 | All documentation and sources of information relied upon by Stephen M. Horner, Ph.D., in rendering his economic opinions re: Sam Galbreath | | | | | | |
| 106 | Earnings Summary/Diagram | | | | | | |
| 107 | Damages Summary/Diagram | | | | | | |
| 108 | Correspondence reflecting demands for maintenance and cure | | | | | | |
| 109 | PROMAR maintenance & cure spreadsheet re: Sam Galbreath | | | | | | |
| reserved | Other medical/employment/wage records obtained by PROMAR via Plaintiff's authorization | | | | | | |
| reserved | Documents/materials produced in supplementation of Plaintiff's written discovery | | | | | | |
| reserved | Transcript/video/exhibits of all other depositions taken in this cause | | | | | | |
| reserved | All documentation and sources of information relied upon by any witness who offers testimony in this cause | | | | | | |

6

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE  DIVISION

CIVIL ACTION NO. B-00-048
In Admiralty Under Fed. R. Civ. P. 9(h)

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | JUDGE HILDA TAGLE, PRESIDING |
| | § | |
| | § | |
| | § | |
| VS. | § | COURTROOM CLERK _____ |
| | § | |
| PROMAR INC. INDIVIDUALLY AND | § | |
| D/B/A COASTAL PRODUCTION | § | |
| SERVICES | § | COURT REPORTER _____ |
| | § | |
| | § | Jury Trial on February 11, 2002 |
| | § | |

DEFENDANT PROMAR INC. INDIVIDUALLY AND
D/B/A COASTAL PRODUCTION SERVICES
EXHIBIT LIST _____

PAGE 1 OF ___ PAGES

| Ex. No. | DESCRIPTION | MARKED | OFFERED | OBJECT | ADMIT | DATE |
|---|---|---|---|---|---|---|
| 1. | PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT | | | | | |
| 2. | PLAINTIFF'S ANSWERS AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES | | | | | |
| 3. | PLAINTIFF'S RESPONSES AND OBJECTIONS TO REQUESTS DEFENDANTS' FOR PRODUCTION | | | | | |
| 4. | PLAINTIFF'S SUPPLEMENTAL ANSWERS AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES | | | | | |
| 5. | PLAINTIFF'S SUPPLEMENTAL RESPONSES AND | | | | | |

EXHIBIT
Δ-1

PAGE 2 OF 5 PAGES

| | | | | | | |
|---|---|---|---|---|---|---|
| | OBJECTIONS TO REQUESTS DEFENDANTS' FOR PRODUCTION | | | | | |
| 6. | RECORDED STATEMENT TRANSCRIPT OF DONALD LESLIE "SAM" GALBREATH CONDUCTED ON MAY 19, 1998 | | | | | |
| 7. | ORAL DEPOSITION OF DONALD LESLIE "SAM" GALBREATH TAKEN ON OCTOBER 6, 2000 ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 8. | TAX RETURNS OF DONALD LESLIE GALBREATH FOR 1990-1999 | | | | | |
| 9. | EMPLOYMENT RECORDS OF SAN PATRICIO MUNICIPAL WATER DISTRICT | | | | | |
| 10. | MEDICAL RECORDS OF JOHN LONGACRE, D.O. | | | | | |
| 11. | MEDICAL RECORDS OF COLUMBIA NORTH BAY HOSPITAL | | | | | |
| 12. | X-RAYS FROM COLUMBIA NORTH BAY HOSPITAL | | | | | |
| 13. | PRE-EMPLOYMENT PHYSICAL FROM SOUTH TEXAS OCCUPATIONAL HEALTH CLINIC DATED 02/07/97 | | | | | |
| 14. | PERSONNEL AND PAYROLL RECORDS OF DONALD LESLIE "SAM" GALBREATH FROM COASTAL PRODUCTION SERVICES | | | | | |
| 15. | EMPLOYER'S FIRST REPORT OF INJURY OR ILLNESS DATED 06/10/97 | | | | | |
| 16. | MAINTENANCE AND CURE PAYMENTS TO/OR BEHALF OF DONALD LESLIE "SAM" GALBREATH BY COASTAL PRODUCTION SERVICES | | | | | |
| 17. | MEDICAL RECORDS OF ATLAS ORTHOPEDICS & SPINE CENTER/WILLIAM AARON TUCKER, D.O. | | | | | |
| 18. | MEDICAL RECORDS OF MEDICAL ARTS CLINIC | | | | | |
| 19. | MEDICAL RECORDS OF ORTHOPEDIC ASSOCIATES | | | | | |
| 20. | X-RAYS OF ORTHOPEDIC ASSOCIATES | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 21. | ORAL/VIDEO DEPOSITION OF CHARLES W. BRECKENRIDGE, M.D. CONDUCTED ON APRIL 30, 2001 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 22. | ORAL/VIDEO DEPOSITION OF JOHN P. MASCIALE, M.D. CONDUCTED ON JANUARY 22, 2002 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 23. | MEDICAL RECORDS OF COLUMBIA DOCTOR'S REGIONAL HOSPITAL | | | | |
| 24. | X-RAYS OF COLUMBIA DOCTOR'S REGIONAL HOSPITAL | | | | |
| 25. | MEDICAL RECORDS OF THE NEUROLOGICAL CLINIC | | | | |
| 26. | ORAL DEPOSITION OF DAVID A. McFARLING, M.D. CONDUCTED ON AUGUST 24, 2001 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 27. | MEDICAL RECORDS OF COLUMBIA BAY AREA HOSPITAL | | | | |
| 28. | MEDICAL RECORDS OF JOSE DE JESUS TREVINO, M.D. | | | | |
| 29. | MEDICAL RECORDS OF AIM PHYSICAL THERAPY | | | | |
| 30. | MEDICAL RECORDS OF BAY AREA SURGERY | | | | |
| 31. | MEDICAL RECORDS OF CORPUS CHRISTI OUTPATIENT SURGERY | | | | |
| 32. | MEDICAL RECORDS OF HUMPAL PHYSICAL THERAPY | | | | |
| 33. | MEDICAL RECORDS OF DISABILITY EVALUATING CENTER OF TEXAS/FRANK LUCKAY, M.D. | | | | |
| 34. | COUNSELING AND REHABILITATION RECORDS OF TEXAS REHABILITATION COMMISSION | | | | |
| 35. | MEDICAL RECORDS OF P.J. MARSHIO, D.O. | | | | |
| 36. | ORAL/VIDEO DEPOSITION OF P.J. MARSHIO, D.O. CONDUCTED ON JANUARY 24, 2002 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 37. | MEDICAL RECORDS OF JEROME LEE SANG, M.D. | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 38. | ORAL/VIDEO DEPOSITION OF JEROME LEE SANG, M.D. CONDUCTED ON DECEMBER 10, 2001 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 39. | MEDICAL RECORDS OF ALBERTO BELALCAZAR, M.D. | | | | |
| 40. | MEDICAL RECORDS OF CHRISTUS SPOHN HOSPITAL SHORELINE | | | | |
| 41. | ORAL/VIDEO DEPOSITION OF ALBERTO BELALCAZAR, M.D. CONDUCTED ON JANUARY 28, 2002 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 42. | ORAL DEPOSITION OF LINDA GALBREATH CONDUCTED ON OCTOBER 6, 2000 | | | | |
| 43. | RECORDS OF DONNA JOHNSON, M.E. | | | | |
| 44. | ORAL/VIDEO DEPOSITION OF DONNA JOHNSON, M.E. CONDUCTED ON JANUARY 30, 2002 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 45. | RECORDS OF STEPHPEN HORNER, PH.D. | | | | |
| 46. | ORAL/VIDEO DEPOSITION OF STEPHEN HORNER, PH.D. ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 47. | CERTIFICATE OF DOCUMENTATION REGARDING M/V F. M. BROWN | | | | |
| 48. | SPECIFICATIONS OF M/V F. M. BROWN | | | | |
| 49. | VESSEL LOGS OF M/V F. M. BROWN | | | | |
| 50. | PHOTOGRAPHS AND VIDEOTAPE OF M/V F. M. BROWN | | | | |
| 51. | CERTIFICATE OF DOCUMENTATION REGARDING M/V LADY BECKY | | | | |
| 52. | SPECIFICIATION OF M/V LADY BECKY | | | | |
| 53. | VESSEL LOGS OF M/V LADY BECKY | | | | |
| 54. | PHOTOGRAPHS AND VIDEOTAPE OF M/V LADY BECKY | | | | |

PAGE 5 OF 5  PAGES

| 55. | ORAL DEPOSITION OF BILLY PEARSON CONDUCTED ON MAY 14, 2001 ALONG WITH ANY AND ALL EXHIBITS | | | | | |
|---|---|---|---|---|---|---|
| 56. | ORAL/VIDEO DEPOSITION OF J. R. REEVES ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 57. | ORAL/VIDEO DEPOSITION OF TOM SHIELDS ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 58. | ORAL/VIDEO DEPOSITION OF CARL STUBBS ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 59. | ORAL/VIDEO DEPOSITION OF ROBERT TAYLOR ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 60. | ORAL/VIDEO DEPOSITION OF RONNIE HALE CONDUCTED ON | | | | | |
| 61. | ORAL/VIDEO DEPOSITION OF DAVID PILGRIM ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 62. | RECORDS AND REPORT OF JOHN L. KINGSTON | | | | | |
| 63. | ORAL/VIDEO DEPOSITION OF JOHN L. KINGSTON ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 64. | RECORDS AND REPORT OF DAVID B. WALLER | | | | | |
| 65. | ORAL/VIDEO DEPOSITION OF DAVID B. WALLER ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 66. | RECORDS OF RICHARD L. FRENZEL | | | | | |
| 67. | ORAL/VIDEO DEPOSITION OF RICHARD L. FRENZEL ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 68. | REPORT OF CHARLES S. CLARK, JR., M.D. | | | | | |
| 69. | ORAL/VIDEO DEPOSITION OF CHARLES S. CLARK, JR., M.D. ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 70. | RECORDS OF SOCIAL SECURITY ADMINISTRATION | | | | | |
| 71. | RECORDS OF ARANSAS COUNTY VEHICLE REGISTRATION | | | | | |

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CIVIL ACTION NO. B-00-048
In Admiralty Under Fed. R. Civ. P. 9(h)

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | JUDGE HILDA TAGLE, PRESIDING |
| | § | |
| | § | |
| | § | |
| VS. | § | COURTROOM CLERK _____ |
| | § | |
| PROMAR INC. INDIVIDUALLY AND | § | |
| D/B/A COASTAL PRODUCTION | § | |
| SERVICES | § | COURT REPORTER _____ |
| | § | |
| | § | Jury Trial on February 11, 2002 |
| | § | |

DEFENDANT PROMAR INC. INDIVIDUALLY AND
D/B/A COASTAL PRODUCTION SERVICES
EXHIBIT LIST _____

PAGE 1 OF ___ PAGES

| Ex. No. | DESCRIPTION | M A R K E D | O F F E R E D | O B J E C T | A D M I T | D A T E |
|---|---|---|---|---|---|---|
| 1. | PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT | | | | | |
| 2. | PLAINTIFF'S ANSWERS AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES | | | | | |
| 3. | PLAINTIFF'S RESPONSES AND OBJECTIONS TO REQUESTS DEFENDANTS' FOR PRODUCTION | | | | | |
| 4. | PLAINTIFF'S SUPPLEMENTAL ANSWERS AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES | | | | | |
| 5. | PLAINTIFF'S SUPPLEMENTAL RESPONSES AND | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | OBJECTIONS TO REQUESTS DEFENDANTS' FOR PRODUCTION | | | | | |
| 6. | RECORDED STATEMENT TRANSCRIPT OF DONALD LESLIE "SAM" GALBREATH CONDUCTED ON MAY 19, 1998 | | | | | |
| 7. | ORAL DEPOSITION OF DONALD LESLIE "SAM" GALBREATH TAKEN ON OCTOBER 6, 2000 ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 8. | TAX RETURNS OF DONALD LESLIE GALBREATH FOR 1990-1999 | | | | | |
| 9. | EMPLOYMENT RECORDS OF SAN PATRICIO MUNICIPAL WATER DISTRICT | | | | | |
| 10. | MEDICAL RECORDS OF JOHN LONGACRE, D.O. | | | | | |
| 11. | MEDICAL RECORDS OF COLUMBIA NORTH BAY HOSPITAL | | | | | |
| 12. | X-RAYS FROM COLUMBIA NORTH BAY HOSPITAL | | | | | |
| 13. | PRE-EMPLOYMENT PHYSICAL FROM  SOUTH TEXAS OCCUPATIONAL HEALTH CLINIC DATED 02/07/97 | | | | | |
| 14. | PERSONNEL AND PAYROLL RECORDS OF DONALD LESLIE "SAM" GALBREATH FROM COASTAL PRODUCTION SERVICES | | | | | |
| 15. | EMPLOYER'S FIRST REPORT OF INJURY OR ILLNESS DATED 06/10/97 | | | | | |
| 16. | MAINTENANCE AND CURE PAYMENTS TO/OR BEHALF OF DONALD LESLIE "SAM" GALBREATH BY COASTAL PRODUCTION SERVICES | | | | | |
| 17. | MEDICAL RECORDS OF ATLAS ORTHOPEDICS & SPINE CENTER/WILLIAM AARON TUCKER, D.O. | | | | | |
| 18. | MEDICAL RECORDS OF MEDICAL ARTS CLINIC | | | | | |
| 19. | MEDICAL RECORDS OF ORTHOPEDIC ASSOCIATES | | | | | |
| 20. | X-RAYS OF ORTHOPEDIC ASSOCIATES | | | | | |

PAGE 3 OF 5  PAGES

| 21. | ORAL/VIDEO DEPOSITION OF CHARLES W. BRECKENRIDGE, M.D. CONDUCTED ON APRIL 30, 2001 ALONG WITH ANY AND ALL EXHIBITS | | | | | |
|-----|----|--|--|--|--|--|
| 22. | ORAL/VIDEO DEPOSITION OF JOHN P. MASCIALE, M.D. CONDUCTED ON JANUARY 22, 2002 ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 23. | MEDICAL RECORDS OF COLUMBIA DOCTOR'S REGIONAL HOSPITAL | | | | | |
| 24. | X-RAYS OF COLUMBIA DOCTOR'S REGIONAL HOSPITAL | | | | | |
| 25. | MEDICAL RECORDS OF THE NEUROLOGICAL CLINIC | | | | | |
| 26. | ORAL DEPOSITION OF DAVID A. McFARLING, M.D. CONDUCTED ON AUGUST 24, 2001 ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 27. | MEDICAL RECORDS OF COLUMBIA BAY AREA HOSPITAL | | | | | |
| 28. | MEDICAL RECORDS OF JOSE DE JESUS TREVINO, M.D. | | | | | |
| 29. | MEDICAL RECORDS OF AIM PHYSICAL THERAPY | | | | | |
| 30. | MEDICAL RECORDS OF BAY AREA SURGERY | | | | | |
| 31. | MEDICAL RECORDS OF CORPUS CHRISTI OUTPATIENT SURGERY | | | | | |
| 32. | MEDICAL RECORDS OF HUMPAL PHYSICAL THERAPY | | | | | |
| 33. | MEDICAL RECORDS OF DISABILITY EVALUATING CENTER OF TEXAS/FRANK LUCKAY, M.D. | | | | | |
| 34. | COUNSELING AND REHABILITATION RECORDS OF TEXAS REHABILITATION COMMISSION | | | | | |
| 35. | MEDICAL RECORDS OF P.J. MARSHIO, D.O. | | | | | |
| 36. | ORAL/VIDEO DEPOSITION OF P.J. MARSHIO, D.O. CONDUCTED ON JANUARY 24, 2002 ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 37. | MEDICAL RECORDS OF JEROME LEE SANG, M.D. | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 38. | ORAL/VIDEO DEPOSITION OF JEROME LEE SANG, M.D. CONDUCTED ON DECEMBER 10, 2001 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 39. | MEDICAL RECORDS OF ALBERTO BELALCAZAR, M.D. | | | | |
| 40. | MEDICAL RECORDS OF CHRISTUS SPOHN HOSPITAL SHORELINE | | | | |
| 41. | ORAL/VIDEO DEPOSITION OF ALBERTO BELALCAZAR, M.D. CONDUCTED ON JANUARY 28, 2002 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 42. | ORAL DEPOSITION OF LINDA GALBREATH CONDUCTED ON OCTOBER 6, 2000 | | | | |
| 43. | RECORDS OF DONNA JOHNSON, M.E. | | | | |
| 44. | ORAL/VIDEO DEPOSITION OF DONNA JOHNSON, M.E. CONDUCTED ON JANUARY 30, 2002 ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 45. | RECORDS OF STEPHPEN HORNER, PH.D. | | | | |
| 46. | ORAL/VIDEO DEPOSITION OF STEPHEN HORNER, PH.D. ALONG WITH ANY AND ALL EXHIBITS | | | | |
| 47. | CERTIFICATE OF DOCUMENTATION REGARDING M/V F. M. BROWN | | | | |
| 48. | SPECIFICATIONS OF M/V F. M. BROWN | | | | |
| 49. | VESSEL LOGS OF M/V F. M. BROWN | | | | |
| 50. | PHOTOGRAPHS AND VIDEOTAPE OF M/V F. M. BROWN | | | | |
| 51. | CERTIFICATE OF DOCUMENTATION REGARDING M/V LADY BECKY | | | | |
| 52. | SPECIFICIATION OF M/V LADY BECKY | | | | |
| 53. | VESSEL LOGS OF M/V LADY BECKY | | | | |
| 54. | PHOTOGRAPHS AND VIDEOTAPE OF M/V LADY BECKY | | | | |

| 55. | ORAL DEPOSITION OF BILLY PEARSON CONDUCTED ON MAY 14, 2001 ALONG WITH ANY AND ALL EXHIBITS | | | | | |
|-----|---|---|---|---|---|---|
| 56. | ORAL/VIDEO DEPOSITION OF J. R. REEVES ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 57. | ORAL/VIDEO DEPOSITION OF TOM SHIELDS ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 58. | ORAL/VIDEO DEPOSITION OF CARL STUBBS ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 59. | ORAL/VIDEO DEPOSITION OF ROBERT TAYLOR ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 60. | ORAL/VIDEO DEPOSITION OF RONNIE HALE CONDUCTED ON | | | | | |
| 61. | ORAL/VIDEO DEPOSITION OF DAVID PILGRIM ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 62. | RECORDS AND REPORT OF JOHN L. KINGSTON | | | | | |
| 63. | ORAL/VIDEO DEPOSITION OF JOHN L. KINGSTON ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 64. | RECORDS AND REPORT OF DAVID B. WALLER | | | | | |
| 65. | ORAL/VIDEO DEPOSITION OF DAVID B. WALLER ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 66. | RECORDS OF RICHARD L. FRENZEL | | | | | |
| 67. | ORAL/VIDEO DEPOSITION OF RICHARD L. FRENZEL ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 68. | REPORT OF CHARLES S. CLARK, JR., M.D. | | | | | |
| 69. | ORAL/VIDEO DEPOSITION OF CHARLES S. CLARK, JR., M.D. ALONG WITH ANY AND ALL EXHIBITS | | | | | |
| 70. | RECORDS OF SOCIAL SECURITY ADMINISTRATION | | | | | |
| 71. | RECORDS OF ARANSAS COUNTY VEHICLE REGISTRATION | | | | | |

## UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **DONALD LESLIE "SAM" GALBREATH** | § | |
| | § | **CIVIL ACTION NO. B-00-048** |
| *versus* | § | |
| | § | **ADMIRALTY / JURY DEMANDED** |
| **PROMAR INC.,** *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

## PLAINTIFF'S WITNESS LIST

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

COMES NOW JOSE LUIS PEREZ, Plaintiff herein, and incident to his "pretrial disclosures" (Fed. R. Civ. P. 26(a)(3)(A-B)) and the creation of the Parties' "Joint Pretrial Order," makes and submits this his "Witness List."

### I.

Plaintiff-DONALD LESLIE "SAM" GALBREATH anticipates presenting each of the following witnesses, in the manner indicated, upon the trial of the above-referenced cause now pending before the Court:

1.    Linda Galbreath (live)
     *Plaintiff's spouse; injuries and damages to Plaintiff.*

2.    Donald Leslie "Sam" Galbreath (live)
     *Plaintiff*

3.    Rick Pilgrim (live or video)

4.    David Pilgrim (live or video)

5.    Carl Stubbs (live or video)

6.    Harold "J.R." Reeves (live or video)

1



**EXHIBIT π-2**

7.     Tommy Shields (live or video)

8.     Ronnie Hale (live or video)

9.     Robert "Stash" Taylor (live or video)

10.    Billy Dwayne Pearson (live or video)

#2-10 *Current or former employees of Defendant; knowledge of events/conditions in question; knowledge of the vessels' history; inspection, operation, maintenance and repair of vessels, in general; inspection, operation, maintenance and repair of the Defendant's vessels; Plaintiff's service by and for his employers and the vessels to which he was assigned, including the vessels in question; relevant in-house, governmental and other policies and procedures regarding the maintenance, operation and modification of vessels, the reporting of injuries, etc.; such other matters as may fall within their education, experience or training.*

11.    Charles W. Breckenridge, M.D. (video)

12.    Pat J. Marshio, D.O. (video)

13.    Dr. Alberto Belalcazar (video)

#11-13 *Plaintiff's treating physicians; knowledge of the diagnosis, causes, treatment, prognosis, effects, and results regarding the injuries suffered by Plaintiff made the basis of this lawsuit, as well as the necessity and reasonableness of the expenses incurred as a result of the injuries to Plaintiff, and the necessity and reasonableness of the treatment of such injuries resulting from the occurrence in question; knowledge of Plaintiff's past medical history.*

14.    All custodian(s) of records, x-rays and/or billing for each and every health care provider and/or treating physician who has provided medical goods or services to Plaintiff as a result of the incident in question, e.g., hospitals, emergency services, radiology services, pharmacies, etc., whether or not identified hereinabove (by DWQ).

15.    Richard L. Frenzel (live)
       *Plaintiff's liability expert*

16.    Joseph Catenazzo (live)
       *Vocational matters–general and specific*

17.    Donna Johnson, M.Ed., C.R.C., L.P.C. (live)
       *Plaintiff's vocational expert*

18.    Stephen M. Horner, Ph.D. (live)
       *Plaintiff's economist*

2

**II.**

If the need arises, Plaintiff-DONALD LESLIE "SAM" GALBREATH may call the following witnesses, in the manner indicated, upon the trial of the above-referenced cause now pending before the Court:

1.  Custodian of personnel and payroll records for PROMAR, INC., *Individually and d/b/a COASTAL PRODUCTION SERVICES and d/b/a PRODUCTION SERVICES GROUP* (live)

2.  C. A. "Dolph" Haynes (live)
    *PROMAR General Manager*

3.  All members of the crew(s) of the M/V F.M. BROWN and M/V LADY BECKY since January 1, 1997 (live)

4.  Walter Young (live)

5.  Jay Cotton (live)

6.  "Joe" [last name unknown] (live)

7.  All persons who have factual and/or expert knowledge concerning, in whole or in part, the events in question, the investigation(s) of the events in question, relevant governmental and/or industry standards/regulations, relevant governmental and/or industry practices, the policies and procedures of their respective employer(s)/agenc(ies) and/or the policies and procedures of others within, associated with or governing the relevant industry (live)

   *#1-7   Current or former employees of Defendant; knowledge of events/conditions in question; knowledge of the vessels' history; inspection, operation, maintenance and repair of vessels, in general; inspection, operation, maintenance and repair of the Defendant's vessels; Plaintiff's service by and for his employers and the vessels to which he was assigned, including the vessels in question; relevant in-house, governmental and other policies and procedures regarding the maintenance, operation and modification of vessels, the reporting of injuries, etc.; such other matters as may fall within their education, experience or training.*

8.  Ross A. Hirschfield (live)
9.  Randy Kidd (live)
    HUEY T. LITTLETON CLAIMS SERVICE OF TEXAS, INC.
    400 Mann Street, Suite 906
    Corpus Christi, Texas 78401
    (361) 888-8055
    *Claims representatives for Defendant*

10.  John C. Longacre, D.O. (live)

11.  William Aaron Tucker, D.O. (live)

12.  John P. Masciale, M.D. (video)

13.  David A. McFarling, M.D. (video)

14.  Jerome Lee Sang, M.D. (video)

#10-14 *Plaintiff's treating physicians; knowledge of the diagnosis, causes, treatment, prognosis, effects, and results regarding the injuries suffered by Plaintiff made the basis of this lawsuit, as well as the necessity and reasonableness of the expenses incurred as a result of the injuries to Plaintiff, and the necessity and reasonableness of the treatment of such injuries resulting from the occurrence in question; knowledge of Plaintiff's past medical history.*

15.  All custodian(s) of records, x-rays and/or billing for each and every health care provider and/or treating physician who has provided medical goods or services to Plaintiff as a result of the incident in question, e.g., hospitals, emergency services, radiology services, pharmacies, etc., whether or not identified hereinabove (by DWQ).

16.  All persons who have factual and/or expert knowledge concerning, in whole or in part, the events in question, the investigation(s) of the events in question, relevant governmental and/or industry standards/regulations, relevant governmental and/or industry practices, the policies and procedures of their respective employer(s)/agenc(ies) and/or the policies and procedures of others within, associated with or governing the relevant industry (live)

17.  Defendant's designated "liability expert(s)" (live or video)

18.  Any and all experts designated by any party hereto, whether addressing "liability" or "damages" (live or video)

19.  R. Blake Brunkenhoefer (live)
     *Attorney's fees*

20.  Any other person(s) whom subsequent discovery discloses as having knowledge of facts relevant to the proper disposition of this case (live)

## II.

Plaintiff reserves the right to elicit, by way of cross-examination, opinion testimony from experts designated and called by other parties to this suit. Plaintiff expresses his intention to possibly call, as witnesses associated with adverse parties, any of Defendant's experts.

4

## III.

Plaintiff reserves the right to call undesignated, rebuttal, expert witnesses, whose testimony cannot reasonably be foreseen until the presentation of the evidence against the Plaintiff and his case.

## IV.

Plaintiff reserves the right to withdraw the designation of any expert to aver positively that any such previously designated expert will not be called as a witness at trial, and to redesignate same as a consulting expert, who cannot be called by opposing counsel.

## V.

Plaintiff reserves the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not be violative of any existing Court Order, the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

## VI.

With respect to persons identified in the course of discovery as "persons with knowledge of relevant facts" (i.e., whether so identified by Plaintiffs or any other part(ies) herein), Plaintiff specifically reserves the right to elicit such "expert" testimony as may fall within these witnesses' education, training and/or experience, regardless of the fact that such witnesses are presently expected to testify regarding merely factual matters related to the incident in question and have not been formally retained by Plaintiff.

## VII.

Plaintiff hereby designates, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit and all experts designated by any party to this

suit, even if the designating party is not a party to this suit at the time of trial. In the event a present

or future party designates an expert but then is dismissed for any reason from the suit or fails to call

any designated expert, Plaintiff reserves the right to designate and/or call any such party or any such

experts previously designated by any party.

## VIII.

Plaintiff reserves the right to amend and/or supplement his Designation of Expert Witnesses

within the time limitations imposed by the Court and/or by any alterations of same by subsequent

Court Order and/or by agreement of the Parties pursuant to the Federal Rules of Civil Procedure

and/or the Federal Rules of Evidence.

Respectfully submitted,

BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
Tel: (361) 888-6655
Fax: (361) 888-5858

R. Blake Brunkenhoefer
State Bar No. 00783739
Southern District of Texas I.D. #15559
Christopher H. Hall
State Bar No. 00793881
Southern District of Texas I.D. #19536

# THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | |
| | § | |
| VS. | § | C.A. NO. B-00-048 |
| | § | |
| PROMAR INC. INDIVIDUALLY & d/b/a | § | |
| COASTAL PRODUCTION SERVICES | § | |

## DEFENDANT PROMAR INC., INDIVIDUALLY AND
## D/B/A COASTAL PRODUCTION SERVICES'
## WITNESS LIST

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Promar Inc., Individually and d/b/a Coastal Production Services, the Defendant with respect to the above-referenced and numbered cause, and respectfully files and submits this its Witness List and states that the following witnesses may appear personally or by video or oral deposition and offer testimony at trial:

> Donald Leslie "Sam" Galbreath
> 102 Vernice
> Rockport, Texas

Mr. Galbreath is the Plaintiff in this matter and may offer testimony regarding liability and damage issues.

> Linda Galbreath
> 102 Vernice
> Rockport, Texas

Mrs. Galbreath is the wife of the Plaintiff in this matter and may offer testimony regarding liability and damage issues.



**EXHIBIT**
Δ-2

-1-

Billy Pearson
c/o Donald Leslie "Sam" Galbreath
102 Vernice
Rockport, Texas

Mr. Pearson is a former employee of the Defendant and is the step-son of Mr. Galbreath. He
may offer testimony regarding liability, damage and credibility issues.

J. R. "Harold" Reeves
c/o Coastal Production Services
P.O. Box 1927
Rockport, Texas 78381
(800) 333-9246

Tommy Shields
c/o Coastal Production Services
P.O. Box 1927
Rockport, Texas 78381
(800) 333-9246

Ronnie Hale
c/o Coastal Production Services
P.O. Box 1927
Rockport, Texas 78381
(800) 333-9246

Robert Taylor
c/o Coastal Production Services
P.O. Box 1927
Rockport, Texas 78381
(800) 333-9246

Carl Stubbs
c/o Coastal Production Services
P.O. Box 1927
Rockport, Texas 78381
(800) 333-9246

These individuals are employees and/or former employees of the Defendant. They may
offer testimony regarding liability, damage and/or credibility issues.

David B. Waller, B. Sc., C. Eng.
14410 W. Sylvanfield
Houston, Texas 77014
(281) 444-9650

Mr. Waller is a naval architect who may offer expert testimony regarding liability issues.

     John L. Kingston
     John L. Kingston & Associates, Inc.
     7514 Moreton Ct.
     Spring, Texas 77397
     (281) 251-7177

Mr. Kingston is a marine surveyor who may offer expert testimony regarding liability issues.

     Charles S. Clark, M.D.
     1333 Third Street
     Corpus Christi, Texas 78404
     (361) 883-2000

Dr. Clark is an orthopedic surgeon who performed independent medical examination of the Plaintiff on February 6, 2001. Dr. Clark may offer expert testimony regarding damage issues.

     Captain Richard L. Frenzel
     Dixieland Marine, Inc.
     165 Thunderbird Drive
     Conroe, Texas 77304
     (409) 419-8855

Captain Frenzel is a marine surveyor retained by the Plaintiff who may offer expert testimony regarding liability issues. The Defendant does not stipulate to the qualifications or expertise of this witness.

     Donna Johnson, M.Ed., C.R.C., L.P.C.
     801 Lipan
     P.O. Box 270790
     Corpus Christi, Texas 78427-0790
     (361) 883-7384

Ms. Johnson is a vocational rehabilitation expert retained by the Plaintiff who may offer expert testimony regarding damage issues.

     Stephen M. Horner, Ph.D.
     Economic, Business & Statistical Consulting
     P.O. Box 2685
     Corpus Christi, Texas 78403
     (361) 883-1686

Dr. Horner is a economic expert retained by the Plaintiff who may offer expert testimony regarding damage issues.

> Charles W. Breckenridge, M.D.
> Orthopedic Associates of Corpus Christi
> 601 Texas Trail, Suite 300
> Corpus Christi, Texas 78411
> (361) 854-0811
>
> John P. Masciale, M.D.
> Orthopedic Associates of Corpus Christi
> 601 Texas Trail, Suite 300
> Corpus Christi, Texas 78411
> (361) 854-0811
>
> David McFarling, M.D.
> The Neurological Clinic
> 3006 South Alameda
> Corpus Christi, Texas 78404
> (361) 883-1731
>
> P. J. Marshio, D.O.
> General, Thoracic and Vascular Surgery
> 423 W. Cleveland
> Suite 3
> P.O. Box 1569
> Aransas Pass, Texas 78335
> (361) 758-1585
>
> Alberto Belalcazar, M.D.
> 3242 S. Alameda St.
> Corpus Christi, Texas
> (361) 888-6255
>
> Jerome A. Lee Sang, M.D.
> Gulf Coast Medical Clinic
> 1700 Wildcat Drive, Suite A
> Portland, Texas 78374
> (361) 643-850

These individuals are some of the Plaintiff's treating physicians and health-care providers. They may offer expert testimony regarding damage and credibility issues.

Additionally, the Defendant anticipates calling the treating physicians and health-care providers of Donald Leslie "Sam" Galbreath to testify in this lawsuit through records offered at trial. Absent an agreement among counsel, the Custodians of Records may appear as

witnesses to offer expert testimony regarding the cure issues and the authenticity and admissibility of records.

Any and all treating physicians and health-care providers at Medical Arts Clinic, 1751 Wheeler, Aransas Pass, Texas, (361) 758-5326, including but not limited to the following:

Delbert L. Edwardson, M.D.

Custodian of Records for
Medical Arts Clinic
1751 Wheeler
Aransas Pass, Texas
(361) 758-5326

John C. Longacre, D.O.
1401 W. Wheeler Avenue
Aransas Pass, Texas 78336
(361) 758-1939

Custodian of Records for
John C. Longacre, D.O.
1401 W. Wheeler Avenue
Aransas Pass, Texas 78336
(361) 758-1939

Any and all treating physicians and health-care providers at Atlas Orthopedics & Spine Center, 619 Railroad Avenue, P.O. Box 848, Portland, Texas 78374, (361) 643-2287, including but not limited to the following:

William A. Tucker, D.O.

Custodian of Records for
Atlas Orthopedics & Spine Center and
William A. Tucker, D.O.
619 Railroad Avenue
P.O. Box 848
Portland, Texas 78374
(361) 643-2287

Any and all treating physicians and health-care providers at Orthopedic Associates of Corpus Christi, 601 Texas Trail, Suite 300, Corpus Christi, Texas 78411, (361) 854-0811, including but not limited to the following:

John P. Masciale, M.D.
Charles W. Breckenridge, M.D.

Edwin Melendez, M.D.

Custodian of Records for
Orthopedic Associates of Corpus Christi
601 Texas Trail
Suite 300
Corpus Christi, Texas 78411
(361) 854-0811

Any and all treating physicians and health-care providers at Doctors Regional Medical Center, 3315 South Alameda, Corpus Christi, Texas 78411, (361) 857-1400, including but not limited to the following:

Harvey Greenberg, M.D.
Richard Chepey, M.D.
Jose Corona
Christopher Martinez, R.T.R.

Custodian of Records for
Doctors Regional Medical Center
3315 South Alameda
Corpus Christi, Texas 78411
(361) 857-1400

Any and all treating physicians and health-care providers at The Neurological Clinic, 3006 South Alameda, Corpus Christi, Texas 78404, (361) 883-1731, including but not limited to the following:

David McFarling, M.D.
Martin W. Flores (technician)

Custodian of Records for
The Neurological Clinic
3006 South Alameda
Corpus Christi, Texas 78404
(361) 883-1731

Any and all treating physicians and health-care providers at Neurology, P.A., 1415 Third Street, Suite 101, Corpus Christi, Texas 78404, including but not limited to the following:

David McFarling, M.D.

Custodian of Records for
Neurology, P.A.
1415 Third Street

Suite 101
Corpus Christi, Texas 78404

Any and all treating physicians and health-care providers at Bay Area Surgery, 7101 South Padre Island Drive, Corpus Christi, Texas 78412, (361) 985-3500.

Custodian of Records for
Bay Area Surgery
7101 South Padre Island Drive
Corpus Christi, Texas 78412
(361) 985-3500

Any and all treating physicians and health-care providers at AIM Physical Therapy Center, Inc., 105 N. Magnolia, P.O. Box 1777, Rockport, Texas 78381, (361) 729-1916, including but not limited to the following:

David A. McCool, L.P.T.

Custodian of Records for
AIM Physical Therapy Center, Inc.
105 N. Magnolia
P.O. Box 1777
Rockport, Texas 78381
(361) 729-1916

Any and all treating physicians and health-care providers at Corpus Christi Bay Area Surgery, 7101 South Padre Island Drive, Corpus Christi, Texas 78412, including but not limited to the following:

Jose de Jesus Trevino, M.D.

Custodian of Records for
Corpus Christi Bay Area Surgery
7101 South Padre Island Drive
Corpus Christi, Texas 78412

Jose de Jesus Trevino, M.D.
Pain Management and Anesthesiology
1521 South Staples
Suite 804
Corpus Christi, Texas 78404
(361) 883-1744

Custodian of Records for
Jose de Jesus Trevino, M.D. and
Pain Management and Anesthesiology
1521 South Staples
Suite 804
Corpus Christi, Texas 78404
(361) 883-1744

Any and all treating physicians and health-care providers at Humpal Physical Therapy & Sports Medicine Center, 2150 W. Wheeler Avenue, Aransas Pass, Texas 78332, (361) 758-5199, including but not limited to the following:

> Russell Hanks, P.T.
> Brian Baker, P.T.

Any and all treating physicians and health-care providers at Columbia Bay Area Medical Center, 7101 South Padre Island Drive, Corpus Christi, Texas 78412, (361), 985-3391, including but not limited to the following:

> Edwin Melendez, M.D.
> Kwang Lee, M.D.

Custodian of Records for
Columbia Bay Area Medical Center
7101 South Padre Island Drive
Corpus Christi, Texas 78412
(361) 985-3391

Custodian of Records for
Kwang Lee, M.D.
2741 Swanter
Corpus Christi, Texas 78404
(361) 854-9637

Any and all treating physicians and health-care providers at Corpus Christi Outpatient Surgery, 3636 South Alameda, Suite A, Corpus Christi, Texas 78411, (361) 853-2200, including but not limited to the following:

> Charles W. Breckenridge, M.D.

Custodian of Records for
Corpus Christi Outpatient Surgery
3636 South Alameda
Suite A
Corpus Christi, Texas 78411
(361) 853-2200

Any and all treating physicians and health-care providers at The Anesthesia Group, 2606 Hospital Boulevard, Corpus Christi, Texas 78405, including but not limited to the following:

Christopher Ryan, M.D.

Custodian of Records for
The Anesthesia Group
2606 Hospital Boulevard
Corpus Christi, Texas 78405

Any and all treating physicians and health-care providers at Corpus Christi Radiology, P.O. Box 6309, 3554 South Alameda, Corpus Christi, Texas 78466-6309, (361) 855-5382, including but not limited to the following:

A.J. Ramos, M.D.

Custodian of Records for
Corpus Christi Radiology
P.O. Box 6309
3554 South Alameda
Corpus Christi, Texas 78466-6309
(361) 855-5382

Any and all treating physicians and health-care providers at Radiology Associates, L.L.P., 2481 Morgan Avenue, P.O. Box 5608, Corpus Christi, Texas 78465, (361) 882-9291, including but not limited to the following:

Kevin M. McDonnell, M.D.
Harvey M. Greenberg, M.D.

Custodian of Records for
Radiology Associates, L.L.P.
2481 Morgan Avenue
P.O. Box 5608
Corpus Christi, Texas 78465
(361) 882-9291

P. J. Marshio, D.O.
General, Thoracic and Vascular Surgery
423 W. Cleveland
Suite 3
P.O. Box 1569
Aransas Pass, Texas 78335
(361) 758-1585

Custodian of Records for
P. J. Marshio, D.O.
General, Thoracic and Vascular Surgery
423 W. Cleveland
Suite 3
P.O. Box 1569
Aransas Pass, Texas 78335
(361) 758-1585

Alberto Belalcazar, M.D.
3242 S. Alameda St.
Corpus Christi, Texas
(361) 888-6255

Custodian of Records for
Alberto Belalcazar, M.D.
3242 S. Alameda St.
Corpus Christi, Texas
(361) 888-6255

Any and all treating physicians and health-care providers at New Millennium Anesthesia, L.L.P., P.O. Box 643, Portland, Texas 78374, (361) 643-9001, including but not limited to the following:

Frank L. Petrola, D.O.

Custodian of Records for
New Millennium Anesthesia, L.L.P.
P.O. Box 643
Portland, Texas 78374
(361) 643-9001

Any and all treating physicians and health-care providers at Columbia North Bay Hospital, 1711 West Wheeler, Aransas Pass, Texas 78336, (361) 758-1414, including but not limited to the following:

Syed Mustafa, M.D.
Isabel C. Menendez, M.D.
James Lively, D.O.
Paul Loeffler, M.D.
Byron Marr, D.O.

Custodian of Records for
Columbia North Bay Hospital
1711 West Wheeler
Aransas Pass, Texas 78336
(361) 758-1414

Any and all treating physicians and health-care providers at Gulf Coast Medical Clinic, 1700 Wildcat Drive, Suite A, Portland, Texas 78374, (361) 643-850, including but not limited to the following:

Jerome A. Lee Sang, M.D.

Custodian of Records for
Gulf Coast Medical Clinic
1700 Wildcat Drive, Suite A
Portland, Texas 78374
(361) 643-850

Any and all treating physicians and health-care providers at The Heart Clinic of Corpus Christi, 613 Elizabeth, Suite 502, Corpus Christi, Texas 78404, (361) 883-3962, including but not limited to the following:

Lawrence D. Brenner, M.D., F.A.C.C.

Custodian of Records for
The Heart Clinic of Corpus Christi
613 Elizabeth, Suite 502
Corpus Christi, Texas 78404
(361) 883-3962

Any and all treating physicians and health-care providers at Abdominal Specialists of South Texas, 1301 Ocean Drive, Corpus Christi, Texas 78404, (361) 884-2858, including but not limited to the following:

Raghujit Singh, M.D.

Custodian of Records for
Abdominal Specialists of South Texas
1301 Ocean Drive
Corpus Christi, Texas
(361) 884-2858

Any and all treating physicians and health-care providers at CHRISTUS Spohn Health System, CHRISTUS Spohn Hospital Shoreline, 600 Elizabeth Street, Corpus Christi, Texas 78404, (361) 881-3912, including but not limited to the following:

James Mullins, M.D.
James H. Heslep
Marisol Pedraza, CRT
Luis F. Rivera, RRT

Custodian of Records for
CHRISTUS Spohn Health System
CHRISTUS Spohn Hospital Shoreline
600 Elizabeth Street
Corpus Christi, Texas 78404
(361) 881-3912

Custodian of Records for
Medical Imaging Diagnostic Associates
615 Upper North Broadway
MT9
Corpus Christi, Texas 78477-0301
(361) 883-2991

Any and all treating physicians and health-care providers at the Disability Evaluating
Center of Texas, Inc., 3302 South Alameda, Corpus Christi, Texas 78411, (361) 857-
6157, including but not limited to the following:

Frank A. Luckay, M.D.

Custodian of Records for
Disability Evaluating Center of Texas, Inc.
3302 South Alameda
Corpus Christi, Texas 78411
(361) 857-6157

Any and all disability examiners for the Texas Rehabilitation Commission,
Disability Determination Services, P.O. Box 149198, Austin, Texas 78714-9198,
(800) 252-9627, including but not limited to the following:

Blanche Gletzer

Custodian of Records for
Texas Rehabilitation Commission
Disability Determination Services
P.O. Box 149198
Austin, Texas 78714-9198
(800) 252-9627

The disability examiners may have knowledge regarding damage issues.  The Custodian of
Records may have knowledge regarding the authenticity and admissibility of records.

-12-

Any and all counselors and/or case workers at the Texas Rehabilitation Commission, 4410 Dillon Lane, Suite 844, Corpus Christi, Texas 78415, (361) 854-1475 and/or the Texas Rehabilitation Commission, Rockport, Texas (361) 729-6844, including but not limited to the following:

       Joseph Catenazzo
       Linda Ballou

Custodian of Records for
Texas Rehabilitation Commission
4410 Dillon Lane
Suite 844
Corpus Christi, Texas 78415
(361) 854-1475
 and/or
Texas Rehabilitation Commission
Rockport, Texas
(361) 729-6844

The counselors may have knowledge regarding damage issues. The Custodians of Records may appear as witnesses to offer expert testimony regarding the authenticity and admissibility of records.

Custodian of Records for
Social Security Administration

Custodian of Records for
The Medicine Shoppe #1144
541 W. Cleveland Boulevard
Aransas Pass, Texas

Custodian of Records for
Eckerd Drugs #2117
1627 Wildcat Drive
Portland, Texas 78374

Any and all commissioners, employers, supervisors, and/or employees of San Patricio Municipal Water District, P.O. Drawer S, Ingleside, Texas 78362, (361) 643-6521, including but not limited to the following:

       Rebecca Brees Krumnow
       Linda Galbreath
       Anatoli Medvedev
       Todd Mark House
       Don Roach

Chris Klaevemann
John D. Herrera
Ryan Quigley
L. R. Reiley
Don Foley
David Burkhardt
Barney (last name unknown at this time)
Pete (last name unknown at this time)
Charles (last name unknown at this time)

Custodian of Records for
San Patricio Municipal Water District
P.O. Drawer S
Ingleside, Texas 78362

Any and all owners, employers, supervisors, and/or employees of Tuan Thanh Vu, Captain Tom's Seafood, P.O. Box 852, Palacios, Texas 77465, identities unknown at this time.

Custodian of Records for
Tuan Thanh Vu
Captain Tom's Seafood
P.O. Box 852
Palacios, Texas 77465

The employers of Donald Leslie "Sam" Galbreath may have knowledge regarding damage issues. The Custodians of Records may have knowledge regarding damage issues and may appear as witnesses to offer expert testimony regarding the authenticity and admissibility of records.

Any and all owners, supervisors, administrators and/or members of the crew and/or passengers on board the M/V F.M. BROWN and M/V LADY BECKY, c/o Coastal Production Services, P.O. Box 1927, Rockport, Texas 78381, (800) 333-9246, including but not limited to the following:

David Pilgrim
Dolph Haynes
Cathy Prince
J. R. "Harold" Reeves
Tommy Shields
Ronnie Hale
Robert Taylor
Carl Stubbs

These individuals are owners, supervisors, administrators and/or members of the crew and/or passengers on board the M/V F.M. BROWN and/or the M/V LADY BECKY. They

may offer expert testimony regarding liability, damage, credibility and maintenance and cure issues.

> Custodian of Records for
> Promar Inc. d/b/a Coastal Production Services
> P.O. Box 1927
> Rockport, Texas 78381
> (800) 333-9246

"If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses."

**UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | |
| | § | CIVIL ACTION NO. B-00-048 |
| *versus* | § | |
| | § | ADMIRALTY / JURY DEMANDED |
| PROMAR INC., *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

## PLAINTIFF'S PROPOSED QUESTIONS FOR VOIR DIRE

TO THE HONORABLE JUDGE OF SAID DISTRICT COURT:

COMES NOW DONALD LESLIE "SAM" GALBREATH, Plaintiff herein, and respectfully requests that the Court ask the following questions of the jury panel, which questions assume that the Court has completed its qualification of the panel, introduced the Parties and their representatives, and apprised the panel of the nature of the pending claims:

1.    Sam Galbreath, the Plaintiff in this case, is and has been a resident of Rockport, Texas.  Do any of you know Sam or his wife, Linda Galbreath?

2.    Have you, anyone close to you, or any member of your family (including your spouse, children, stepchildren, parents, brothers, sisters, children-in-law, sisters-in-law, or parents-in law) ever worked for or been employed by PROMAR, INC., COASTAL PRODUCTION SERVICES, PRODUCTION SERVICES GROUP, PRODUCTION SYSTEMS, INC., PROSAFE, INC., R.M.C. TECHNOLOGY CORPORATION or any other related parent or subsidiary company?

3.    Has any close friend or relative ever been involved as a plaintiff, defendant, or witness in a civil case, or ever attended court for any reason?  If yes, is that civil case still pending?

1



EXHIBIT
π -3

Based upon what you have heard about the facts of this case, was the civil action in which your friend or relative was involved similar in any way to this case?  Was there anything about the civil case in which your friend or relative was involved that could have an impact on your ability to be a fair and impartial juror of the facts in this case?

4.    Have any of you ever been a defendant in a suit brought for damages?  If yes, is the case still pending?  Based upon what you have heard about the facts of this case, was the civil action in which you are or were a defendant similar in any way to this case?  Is there anything about the civil case in which you are or were a defendant that you believe could have an impact on your ability to be fair an impartial juror of the facts in this case?

5.    Have any of you been a plaintiff in a suit?  If yes, is that case still pending?  Based upon what you have heard about the facts of this case, is the civil action in which you are or were a plaintiff similar in any way to the case?  Is there anything about the civil case in which your are or were a plaintiff that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

6.    Have any of you or any of your family or close friends ever worked in the oil, gas or petrochemical industries, including, but not limited to, the production, transportation, servicing, or refining aspects of these industries?  Have any of you or any of your family or close friends ever worked in the offshore drilling industry?

7.    "Commercial vessels" refers to all boats other than pleasure boats.  Commercial vessels include shrimp boats, crew boats, supply boats, tugs, tankships, etc..  Have any of you or your family or close friends ever worked on or for tankships, crew boats, supply boats, tugboats, fishing vessels, or any other type of commercial vessel?  What was the nature of the work performed?

2

8.  Have any of you or any of your family or close friends ever worked as a captain or a deckhand on a commercial vessel?

9.  Have any of you or any of your family or close friends ever worked as a repairman, port captain, yard supervisor, or some similar job for a company that owned or operated commercial vessels?

10. Have any of you or your family or close friends ever worked in the United States Navy or the United States Coast Guard?

11. Have any of you or your family or close friends ever worked in any military or corporate hierarchy?  Do you understand what it means to follow a "chain of command?"

12. Have you, a relative, or anyone close to you ever been employed as a claims investigator or adjuster of claims or claims handler?

13. Have any of you or your family or close friends ever worked for any company that performs marine surveys of vessels and equipment?

14. Have any of you or your family or close friends ever worked for a government agency, such as the Occupational Health & Safety Administration (OSHA) performing independent inspections of jobsites and equipment?

15. Have any of you or your family or close friends ever worked for any company that is usually hired to inspect or survey a jobsite or equipment for insurance or any other purposes other than government certification?

16. Have any of you or your family or close friends ever been hired as or testified as an expert witness?

17. At the time of the events upon which this lawsuit is based, Sam Galbreath was working as deckhand aboard crewboats owned and operated by the Defendant. Some of the Defendant's

3

past or current employees may be called to testify in this case.  Does any member of the panel know the following people who were, on the relevant occasions, performing the following jobs aboard Defendant's vessels:

1. Robert "Stash" Taylor, *Captain . . . also performed some welding at the yard*

2. Harold "J. R." Reeves, *Captain*

3. Ronnie Hale, *Captain*

4. Tommy Shields, *Captain*

18. It is expected that some of the Defendant's "home office" or "corporate" employees or representatives may be called to testify in this case.  Therefore, do any of you know the following PROMAR employees or representatives, who were or are presently working out of or in conjunction with the Defendant's headquarters in Rockport, Texas:

1. David Pilgrim, *Owner/President*

2. Rick Pilgrim, *Former Maintenance Manager/Supervisor*

3. Dolph Haynes, *General Manager*

4. Carl Stubbs, *vessel maintenance*

5. Billy Dwayne Pearson, *vessel maintenance*

19. Other individuals who may appear in this case are as follows:

1. Richard L. "Dick" Frenzel (Friendswood, TX)
   *Plaintiff's liability expert*

2. Donna Johnson (Corpus Christi, Texas)
   *Plaintiff's vocational expert*

3. Stephen M. Horner (Corpus Christi, TX)
   *Plaintiff's economist*

4. John Kingston (Spring, TX)
   *Defendants' liability expert*

4

5.     David Waller (Houston, TX)
       *Defendant's other liability expert*

6.     William Quintanilla (Houston, TX)
       *Defendants' vocational expert*

Do any of you know any of these people?

20.    Before Sam Galbreath went to work for Defendant, he received a complete pre-employment

       physical examination from a doctor chosen by the Defendant.  Has any member of the jury

       panel heard of or do any of you know about Dr. David G. Williams (SOUTH TEXAS

       OCCUPATIONAL HEALTH CLINIC, Corpus Christi, Texas)?  For those of you who know

       about or have heard of Dr. Williams, what do you know or what have you heard about him?

21.    Following the events of April 1997 and April 18, 1998, Sam Galbreath was treated by his

       family doctor in Aransas Pass and some other physicians in the Corpus Christi area.  Has any

       member of the jury panel heard of or do any of you know about the following doctors?

       1.     Dr. John Longacre (Aransas Pass, Texas)

       2.     Dr. William Aaron Tucker (ATLAS ORTHOPEDICS & SPINE CENTER, Portland,
              Texas)

       3.     Dr. Charles Breckenridge (ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI)

       4.     Dr. John P. Masciale (ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI)

       5.     Dr. David A. McFarling (THE NEUROLOGICAL CLINIC, Corpus Christi, Texas)

       6.     Dr. P. J. Marshio (Aransas Pass, Texas)

       7.     Dr. Alberto Belalcazar (Corpus Christi, Texas)

       8.     Dr. Jerome Leesang (Portland, Texas)

       For those of you who know about or have heard of any of these doctors, what do you know

       or what have you heard about them?

5

22.   To assist in the defense of this lawsuit, the Defendant has retained a medical expert to discuss Sam Galbreath's injuries from the Defendant's perspective. Has any member of the jury panel heard of or do any of you know about Dr. Charles S. Clark, Jr. (ORTHOPEDIC SURGERY & SPORTS MEDICINE ASSOCIATES, Corpus Christi, Texas)? For those of you who know about or have heard of Dr. Clark, what do you know or what have you heard about him?

23.   Have any of you or your family or close friends ever sustained an "on-the-job" injury? Have any of you, who have been hurt on the job, been asked or ordered by your employer to see a company doctor or a doctor chosen by the employer? For those of you who have seen a company doctor or a company-chosen doctor, which of you believe the doctor had the company's best interests at heart, instead of yours? Which of you believe the company doctor had your best interests at heart, regardless of how your injury impacted the company?

24.   Have any of you or your family or close friends ever sustained a neck injury or suffered a condition causing pain or discomfort in the neck, regardless of the cause of the back pain or injury? For those of you who have just answered "yes," have any of you or your family or close friends ever had surgery prescribed to treat the injury or condition?

24.   Have any of you or your family or close friends ever sustained a shoulder injury or suffered a condition causing pain or discomfort in the shoulder, regardless of the cause of the shoulder pain or injury? For those of you who have just answered "yes," have any of you or your family or close friends ever had surgery prescribed to treat the injury or condition?

24.   Have any of you or your family or close friends ever sustained a hernia, regardless of the cause of the hernia? For those of you who have just answered "yes," have any of you or your family or close friends ever had surgery prescribed to treat the hernia? For those of you

6

who have had surgery to repair a hernia, did the surgery completely resolve the hernia or did you have to undergo additional treatment or surgery?

26.   Have any of you or your family of close friends ever had to continue working, either because the employer insisted on it or because economic necessity required you to, after suffering an "on-the-injury" or some other injury or condition that affected your physical capacity to work or your ability to work without pain?  Have any of you or your family or close friends ever continued to do your job or perform your usual activities when you were injured or otherwise suffering pain due to a condition of the body?  Do any of you believe that trying to do some work or perform some of your usual activities means you are not hurting?

27.   Do any of you have friends or family members that have jobs which you consider to be dangerous or potentially dangerous?  For example, do any of you have friends or family members that work as firefighters?  Do you believe that these individuals should be provided with as safe working conditions as possible?  For example, which of you believe that firefighters should be provided with fireproof clothing before entering a burning building?  Now, for those of you who know a firefighter, have any of you known a firefighter who decided, because of the circumstances at the time, to enter a burning building without fireproof clothing?  If a firefighter is injured entering a burning building without fireproof clothing, and the reason he does not have fireproof clothing is because his employer has failed to provide him with fireproof clothing, do any of you believe that the injured firefighter is at fault for any injury he sustains while carrying out his duty under conditions that could have been made safer by the employer?

28.   How many of you believe that working at sea is much more dangerous than working as a firefighter?

7

29.    Does anyone believe that an employer is not obliged to provide a safe working environment for its employees? Does anyone believe that an employer should not be held responsible or made to pay for the acts of its employees, even if the law says the employer is liable for the acts of its employees?

30.    How many of you believe that a vessel, as well as its crew, are subject to the control of the captain of the vessel? Do any of you believe that the crew of a vessel has the "power," in any real sense of the word, to refuse the orders of the captain? Do any of you believe that, even if the situation poses a risk of injury to a crewmember, that crewmember will be inclined to refuse the orders of his captain?

31.    The law provides that a person is entitled to be fairly and reasonably compensated for injuries caused by the negligence of others. Is there any member of the jury panel who has any quarrel with the law that provides for monetary damages as compensation for personal injuries caused by the negligence of another party? Since this case involves a vessel, is there any member of the jury panel who has any quarrel with the law that provides for monetary damages as compensation for personal injuries caused by the unseaworthiness of a vessel or its equipment or crew? Is there anyone on the jury panel who would not or could not award damages in a substantial sum, even if the evidence supported such an award?

32.    Does any member of the jury panel not understand or have any quarrel with any of the following personal injury damage elements: physical pain and suffering, mental anguish, physical impairment, loss of earnings and earning capacity, past and future medical expenses, loss of enjoyment of life, or physical disfigurement?

33.    How many of you *cannot* award monetary damages, in any amount, in a case involving personal injury? Is there anyone on the jury panel who would not or could not award

8

damages in a substantial sum, even if the evidence supported such an award?

34.   Do you understand that the burden of proof in a civil case is different from that in a criminal case? This is a civil case, and thus, the Plaintiff must prove his case by a preponderance of the evidence, not beyond a reasonable doubt. In deciding the case by a preponderance of the evidence, do you all understand that it is okay to have doubts and still find in favor of the Plaintiff, as long as he produces the greater weight or degree of credible evidence? Do you all understand that the number of witnesses or the amount of evidence produced by one side or the other does not determine who wins, but rather, you must find for the side that produces the greater weight or degree of *credible* testimony and evidence? Can you all follow the law and decide this case by "a preponderance of the evidence," and without imposing any greater burden on the Plaintiff?

35.   Have you read any advertisements, articles, or editorials concerning lawsuits or jury awards? Are any of you or your family or close friends a member of any organization which pertains to the justice system or reform or modification of the justice system? How many have heard about "lawsuit abuse," a "litigation crisis," or "frivolous lawsuits?" How many of you know that there are procedures in place and motions that can be filed to weed out frivolous lawsuits before they get to trial?

36.   Is there anything about what you have heard during the jury-selection process that concerns you about your ability to be a fair and impartial juror of the particular facts of this case?

37.   Is there any matter that anyone would like to discuss privately that bears on their ability to serve as a juror on this case?

9

Respectfully submitted,

BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
Tel: (361) 888-6655
Fax: (361) 888-5855


R. Blake Brunkenhoefer
State Bar No. 00783739
Southern District of Texas I.D. #15559
Christopher H. Hall
State Bar No. 00793881
Southern District of Texas I.D. #19536

10

## CERTIFICATE OF SERVICE

I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the above

and foregoing PLAINTIFF'S PROPOSED QUESTIONS FOR VOIR DIRE, has been served, in

the manner indicated below, upon:

Richard B. Waterhouse, Jr.                    **VIA HAND DELIVERY**
PIPITONE, SEGER & WATERHOUSE
615 Upper N. Broadway, Suite 1770
Corpus Christi, Texas 78477

in accordance with all applicable provisions of the Texas Rules of Civil Procedure on this the

23rd day of January, 2002.

R. Blake Brunkenhoefer

11

UNITED STATES DISTRICT COURT       SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | |
| | § | CIVIL ACTION NO. B-00-048 |
| *versus* | § | |
| | § | ADMIRALTY / JURY DEMANDED |
| PROMAR INC., *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |



### DEFENDANT PROMAR INC., INDIVIDUALLY AND D/B/A COASTAL PRODUCTION SERVICES' PROPOSED VOIR DIRE QUESTION AREAS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Promar Inc., Individually and d/b/a Coastal Production Services, the Defendant with respect to the above-referenced and numbered cause, and respectfully files and submits this its Proposed Voir Dire Question Areas as follows:

1. Familiarity with or knowledge of the parties;

2. Familiarity with or knowledge of counsel;

3. Familiarity with or knowledge of witnesses;

4. Familiarity with or knowledge of the alleged incident made the basis of the litigation;

5. Familiarity with or knowledge of the drilling or offshore drilling industry, supply and/or crewboats procedures;

6. Union or employee group affiliations;

7. Familiarity with and knowledge of physical ailments or disabilities related to hernias, carpal tunnel syndrome, rotator cuff conditions, shoulder problems or neck complaints.

8. Acceptance of the use of recorded statement and deposition transcripts, deposition videos

1



EXHIBIT
A-3

and exhibits;

9.    Consideration of an individual as a prosecuting party;

10.    Consideration of a corporate entity as a defending party;

11.    Assumption that the initiation of litigation and the assertion of allegations by a prosecuting party indicate culpability of the defending party;

12.    The provision of maintenance and cure benefits in complete accordance with requirements does not suggest liability;

13.    Consideration of wrongful acts affecting credibility;

14.    The responsibility of individuals to bear responsibility for their own actions and for their own safety;

15.    The mere fact that an incident has occurred should not suggests liability in the absence of evidence of negligence or unseaworthiness;

16.    Obligations to assess physical capabilities and restrictions determinative of possible occupations;

17.    Responsibility of persons to be honest with a prospective employer;

18.    Responsibility to mitigate damages by pursuing rehabilitation and vocational training;

19.    Obligation to pursue and obtain gainful employment;

20.    Responsibility of an employee not to engage in an activity which the employee knows or should know is beyond his capability; and

21.    It is the responsibility of an employee to get help if he is unable to lift an object or perform his duties unaided.

2

Respectfully submitted,

PIPITONE, SEGER & WATERHOUSE, P.C.
615 Upper North Broadway
Suite 1770, MT/89
Corpus Christi, Texas 78477
(361) 884-4200
(361) 884-7444 (FAX)

By:_____
    RICHARD B. WATERHOUSE, JR.
    Federal Bar No. 17995
    State Bar No. 00788624

ATTORNEYS FOR THE DEFENDANT
PROMAR INC., INDIVIDUALLY AND D/B/A
COASTAL PRODUCTION SERVICES

3

## CERTIFICATE OF SERVICE

The undersigned attorney, as attorney of record for the Defendant, certifies that a true and correct copy of the attached document has been served upon the following by the method of service indicated on this the **23** day of January, 2002.

Richard B. Waterhouse, Jr.

**VIA HAND DELIVERY**

Mr. R. Blake Brunkenhoefer
BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas  78478

4

# UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

DONALD LESLIE "SAM" GALBREATH § 
§ 
*versus* § 
§ 
PROMAR INC., *Individually & d/b/a* § 
*COASTAL PRODUCTION SERVICES* §

**CIVIL ACTION NO. B-00-048**

**ADMIRALTY / JURY DEMANDED**

## PLAINTIFF'S MOTION IN LIMINE

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

NOW COMES DONALD LESLIE "SAM" GALBREATH, Plaintiff in the above-entitled and -numbered cause, before the commencement of the Voir Dire examination of the jury panel, and respectfully moves that Defendant, and any and all of Defendant's witnesses, be instructed by this Honorable Court to refrain from making any mention or interrogation, directly or indirectly, in any manner whatsoever, concerning any of the matters hereinafter set forth without first approaching the Bench and obtaining a ruling from the Court outside the presence and outside the hearing of all prospective jurors and jurors ultimately selected in this case, in regard to any alleged theory of admissibility of such matters, because the injection of such matters in the trial of this cause would result in irreparable prejudice and harm to the Plaintiff's case, which no instruction by the Court to the Jury could cure, to-wit:

I.

Any evidence Defendant did not produce in discovery.  Defendant should not be permitted to present any witness Defendant did not name in its disclosures or answers to interrogatories or any



EXHIBIT
π-4

evidence it failed to produce in response to any discovery conducted in this case.

AGREED _____        ORDERED _____        DENIED _____

II.

Any testimony or argument suggesting that Plaintiff, through his attorney, asserted claims of privilege or objections during discovery.  Claims of privilege and objections are not admissible as evidence. *Fed. R. Evid. 501.*

AGREED _____        ORDERED _____        DENIED _____

III.

Any comment regarding the legitimate actions taken by counsel for Plaintiff in the prosecution of Plaintiff's suit.

AGREED _____        ORDERED _____        DENIED _____

IV.

Any testimony or argument that Plaintiff's attorney has a contingency fee in this suit.

AGREED _____        ORDERED _____        DENIED _____

V.

Any reference or comment about the date Plaintiff employed an attorney, or how such representation may be chronologically related to Plaintiff's medical treatment and/or Plaintiff's prosecution of the claims contained in this lawsuit.

AGREED _____        ORDERED _____        DENIED _____

VI.

Any attempt to elicit testimony from Plaintiff or his wife about communications with any of Plaintiff's current or former attorneys.

AGREED _____        ORDERED _____        DENIED _____

2

## VII.

Any mention of prior claims, administrative proceedings or litigation in which Plaintiff has been in any way involved, or any pending claims, administrative proceedings or litigation other than the instant lawsuit, because there is no evidence which could make relevant such claims, proceedings, or litigation to this proceeding and would be elicited only to inflame or play upon the emotions of the jury. The prejudicial effect of such evidence would substantially exceed its probative value and may properly be excluded. *Fed. R. Evid. 403.*

AGREED _____          ORDERED _____          DENIED _____

## VIII.

That Plaintiff or his wife were protected by or have benefitted or will benefit from insurance coverage of any kind, including but not limited to workers' compensation benefits.

AGREED _____          ORDERED _____          DENIED _____

## IX.

That Plaintiff has received, has been entitled to receive, will receive or will become entitled to receive, benefits of any kind or character from a collateral source, including but not limited to the following collateral source benefits:

A.     Benefits under insurance;

B.     Benefits from voluntary contribution by the employers of Plaintiff or his wife;

C.     Contributions from friends or family;

D.     Unemployment benefits;

E.     Benefits from sick leave and/or vacation;

F.     Social Security disability benefits;

G.     Veteran's Administration benefits; and/or,

3

H.    Services furnished without charge.

Further, that no mention be made of the fact that the Plaintiff or his wife, or their children, by reason of Plaintiff's age, infirmity, unemployment or otherwise, have received, are now receiving or may be entitled to receive in the future any compensation or benefits by reason of the Social Security Law of the United States or from any local, state or federal governmental agencies such as the Veteran's Administration, Medicare, State Employment Board or any other sources of this nature.

AGREED _____        ORDERED _____        DENIED _____

X.

That any recovery by Plaintiff, other than that pertaining to his wage loss claims, either would or would not be subject to federal income taxation or any other form of taxation.

AGREED _____        ORDERED _____        DENIED _____

XI.

Any mention that Plaintiff and/or his wife have not filed income tax returns if, indeed, they have not.

AGREED _____        ORDERED _____        DENIED _____

XII.

That no mention be made of any medical treatment Plaintiff received for injuries and/or illnesses, either physical or emotional, not directly related to the injuries and/or illnesses he sustained as a result of the events in question because there is no evidence which could make relevant such unrelated medical treatment to this incident and would be elicited only to inflame or play upon the emotions of the jury.

AGREED _____        ORDERED _____        DENIED _____

4

## XIV.

That Plaintiff has been involved in any other accidents, or has suffered any unrelated injury or illness or the effects thereof.

AGREED _____        ORDERED _____        DENIED _____

## XV.

That any of Plaintiff's recreational or occupational activities, or any other discrete event, other than the incident made the basis of this lawsuit, caused or contributed to the injuries made the basis of this lawsuit or affected Plaintiff's recovery therefrom. There is no evidence to support these or any similar contentions and, thus, such speculation would be elicited only to confuse or play upon the emotions of the jury.

AGREED _____        ORDERED _____        DENIED _____

## XVI.

That any of Plaintiff's post-accident activities have caused or contributed to the injuries made the basis of this lawsuit or affected Plaintiff's recovery therefrom. There is no evidence to support these or any similar contentions and, thus, such speculation would be elicited only to confuse or play upon the emotions of the jury.

AGREED _____        ORDERED _____        DENIED _____

## XVII.

That Plaintiff (or any witness called by or for Plaintiff) has been convicted of any crime, whether punishable by death or imprisonment in excess of one year, or involving dishonesty or false statement, regardless of the punishment. Said conviction(s) is/are not relevant to any issue to be tried in this case and should be excluded because its/their probative value is outweighed by its/their prejudicial effect. In addition, any such conviction(s)is/are inadmissible as the witness(es) has/have

5

successfully completed the terms of any parole, probation, or other certificate of release. *Fed. R. Evid. 609(a & c)*.

AGREED _____        ORDERED _____        DENIED _____

## XVIII.

Any evidence of any arrests and/or convictions of Plaintiff (or any witness called by or for Plaintiff) which have been concluded based on the finding of the rehabilitation of the person convicted, the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year. *Fed. R. Evid. 609(a & c)*.

AGREED _____        ORDERED _____        DENIED _____

## XIX.

Any evidence of any conviction of Plaintiff (or any witness called by or for Plaintiff) where more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date. *Fed. R. Evid. 609(b)*.

AGREED _____        ORDERED _____        DENIED _____

## XX.

Any reference, by Defendant, its witnesses and/or attorneys, to the anticipated testimony of any witness who is absent, unavailable, or otherwise not called or allowed to testify at the trial of this cause.

AGREED _____        ORDERED _____        DENIED _____

## XXI.

Any direct or indirect reference, by Defendant, its witnesses and/or attorneys, to the conduct of potentially "responsible third parties" who are not now part(ies) to this case. As any additional

6

"responsible third parties" have not been properly joined in this cause, either by Defendant's choice or by operation of law, the liability of such additional "responsible third parties" would not be submitted to the jury. Thus, reference to the conduct of "responsible third parties" not included in this action would only serve to confuse the jury.

AGREED _____   ORDERED _____   DENIED _____

## XXII.

Any evidence or speculation about the conduct of nonparties, unless it can be demonstrated outside the presence of the jury, that such conduct is relevant to the resolution of the instant litigation.

AGREED _____   ORDERED _____   DENIED _____

## XXIII.

Any attempt to discuss the failure of Plaintiff to call a specific witness.

AGREED _____   ORDERED _____   DENIED _____

## XXIV.

Any reference to specific instances of Plaintiff's conduct (or the conduct of any witness called by or for Plaintiff) for the purpose of attacking his credibility and/or character. *Fed. R. Evid. 404.*

AGREED _____   ORDERED _____   DENIED _____

## XXV.

Any reference to the effect that the Defendant, or any former party to this cause, has paid or provided Plaintiff benefits, including, but not limited to maintenance and cure benefits or settlement proceeds. Such commentary would have the effect of instructing the jury as to the effect of its answers to some of the damages issues which are properly considered by and submitted to the jury.

7

For example, advising the jury that Defendant paid maintenance benefits to Plaintiff during his period of recovery would improperly suggest that Plaintiff's provable lost wages should be offset or diminished by any maintenance paid.

AGREED _____    ORDERED _____    DENIED _____

## XXVI.

Any attempt to portray, describe or otherwise discuss Defendant or any of its parents, subsidiaries, or employees in terms of their being a "good company," or being a "careful" or "accident-free" company, or having a good "track record for safety," or that this incident was the "first of its kind," or any similarly self-serving comment or argument. This is a negligence case, wherein a discreet incident is at issue. Any attempt by Defendant or its attorneys to bolster the jury's opinion of the Defendant, where such comments or arguments are not directed to Plaintiff's specific allegations of negligence in the case before the Court, would only serve to confuse the jury, i.e., the facts may show that the Defendant was negligent on the occasion at issue, but the jury may improperly disregard the facts of the case after Defendant generates support for the company itself, or its agents, servants, employees or representatives. In other words, such self-serving commentary is irrelevant to this proceeding and would be elicited only to inflame or play upon the emotions of the jury. The prejudicial effect of such evidence would substantially exceed its probative value and may properly be excluded. *Fed. R. Evid. 403.*

AGREED _____    ORDERED _____    DENIED _____

## XXVII.

Any reference to the effect or results of a claim, suit, or judgment upon the insurance rates, premiums, or charges, either generally or as particularly applied to the parties in question, as a result of this or any other matter. Further, that no mention be made of the possible increase in doing

8

business or prices of any particular product or service, or products or services generally, as a result of a claim, suit, or judgment on this Defendant or others.

AGREED _____     ORDERED _____     DENIED _____

## XXVIII.

Any suggestion or insinuation to the jury that their verdict could result in an increase in insurance premiums or contribute to an insurance crisis, or in any way suggest that their verdict should take into account such irrelevant and prejudicial matters.

AGREED _____     ORDERED _____     DENIED _____

## XXIX.

Any mention of Defendant's financial adversity or Plaintiff's financial prosperity.

AGREED _____     ORDERED _____     DENIED _____

## XXX.

Any reference or insinuation to the effect that any of the medical or other experts called by or for Plaintiff is "plaintiff-oriented," "a hired gun," or some similar comment, or a voir dire inquiry or an opening statement regarding "Plaintiff's expert(s)," without Defendant first laying the proper foundation for such inflammatory remarks and without Defendant first establishing that any such witness is, in reality, "Plaintiff's expert."

AGREED _____     ORDERED _____     DENIED _____

## XXXI.

Any attempt to offer expert testimony, of any kind or character, without first establishing the qualifications of the witness, the relevance of the proposed testimony, and the reliability of the data and methodology underlying the opinions to be offered by such "expert" witness. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). <u>See</u>

9

also, *Bartley v. Euclid, Inc.*, 158 F.3d 261 (5th Cir.1998).

AGREED _____          ORDERED _____          DENIED _____

### XXXII.

Any evidence in the form of computer animated video or other media that portrays the events or conditions at issue in a manner not substantially similar to the actual events.

AGREED _____          ORDERED _____          DENIED _____

### XXXIII.

Any direct or indirect comment, concerning excluded evidence, which suggests that the facts could have been proved but for the objection of counsel for Plaintiff.

AGREED _____          ORDERED _____          DENIED _____

### XXXIV.

Any attempt to seek or request Plaintiff's attorney to produce documents, to stipulate to any fact, or to make any agreement in the presence of the jury.

AGREED _____          ORDERED _____          DENIED _____

### XXXV.

Any comment by Defendant or its attorneys that informs the jury of the effect of its answers to the questions in the charge.

AGREED _____          ORDERED _____          DENIED _____

### XXXVI.

Any reference to the substance of any conduct or statements made in compromise negotiations between Plaintiff, Plaintiff's present or former attorneys, and Defendant, its present or former attorneys.

AGREED _____          ORDERED _____          DENIED _____

## XXXVII.

Before the Court rules on the law applicable to this case, any statement of the law other than that regarding the burden of proof and the basic legal definitions counsel believe to be applicable.

AGREED _____          ORDERED _____          DENIED _____

## XXXVIII.

That this Motion has been filed or any ruling by the Court in response to this Motion, suggesting or implying to the jury that the Plaintiff has moved to prohibit proof or that the Court has excluded proof of any particular matter.

AGREED _____          ORDERED _____          DENIED _____

Respectfully submitted,

BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
Tel: (361) 888-6655
Fax: (361) 888-5855

R. Blake Brunkenhoefer
State Bar No. 00783739
Southern District of Texas I.D. #15559
Christopher H. Hall
State Bar No. 00793881
Southern District of Texas I.D. #19536

11



# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

DONALD LESLIE "SAM" GALBREATH,    §

      Plaintiff,

                                        **CIVIL ACTION**

v.    §    **NO. B-00-048**

PROMAR INC., INDIVIDUALLY AND d/b/a
COASTAL PRODUCTION SERVICES,

      Defendant.    §

## DEFENDANT PROMAR INC., INDIVIDUALLY AND
## D/B/A COASTAL PRODUCTION SERVICES'
## MOTIONS IN LIMINE

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW, Promar Inc., Individually and d/b/a Coastal Production Services, the

Defendant in the above-referenced and numbered cause, and before commencement of the voir dire

examination of the Jury panel, respectfully requests that this Honorable Court enter an Order by

which counsel for the Plaintiff and, through such counsel, the Plaintiff and all witnesses for the

Plaintiff be instructed to refrain from mentioning, discussing, alluding to or offering any evidence,

oral or demonstrative, during any stage of the trial proceedings, including the voir dire examination

of the Jury, reading of the pleadings, making of opening and closing statements, interrogation of all

witnesses, in making objections or arguments to objections, incite by remarks or in argument to the

Jury or any motions made during the trial of this cause in the presence of the Jury, or in any way

informing the Jury, without first approaching the bench and obtaining a ruling of this Honorable

Court outside the presence and hearing of all of the prospective Jurors or Jurors ultimately selected



**EXHIBIT**

**A-4**

in this cause.  The Defendant would show this Honorable Court that the matters set forth would be inadmissible for any purpose on proper and timely objection in that they have no bearing on the issues in this case or the rights of the parties to this suit.  Permitting the foregoing would prejudice the Jury and sustaining objections to the foregoing comments or offers would not cure such prejudice but rather would reinforce the impact of prejudicial matters to the Jurors.  The following matters would not be admissible for any purpose in this cause:

## I.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the Defendant is covered by some form of liability insurance with respect to the incident made the basis of this litigation for the reason that such action would be harmful and prejudicial to the Defendant.

## II.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff to refrain from inquiring of any juror concerning any connection he or she may have with the insurance industry during the conduct of the voir dire examination and, in this regard, would emphasize to this Honorable Court that if the Plaintiff's counsel is sincerely interested in determining whether there is any such connection for the purpose of exercising his strikes that he may do so by asking each individual juror his occupation or past occupations as well as the occupations and past occupations of those persons living in his household which will provide the relevant information to the Plaintiff's counsel while at the same time avoiding the harmful and prejudicial effect of injecting insurance into this trial.

## III.

2

The Defendant respectfully requests that this Honorable Court instruct the Plaintiff's counsel to refrain from inquiring of any juror concerning damages in accordance with the evidence regardless who pays the damages or when they will be paid as well as whether they will ever be paid or any similar version of such inquiry during the conduct of voir dire examination for the reason that such inquiry improperly injects the implication of insurance into the suit.

IV.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the Jury is the "conscience of the community" or any other similar language for the reason that such action would be harmful and prejudicial to the Defendant.

V.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to any statement of any venire person after the termination of voir dire for the reason that such action would be harmful and prejudicial to the Defendant.

VI.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to any facts in variance from the allegations contained in the Plaintiff's Second Amended Complaint for the reason that such action would be harmful and prejudicial to the Defendant.

VII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning, divulging, directly or indirectly, arguing or referring to any person not previously identified in the Plaintiff's responses to the Defendant's Interrogatories and supplements thereto for the reason that such action would be harmful and prejudicial to the Defendant.

## VIII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning, divulging, directly or indirectly, arguing or referring to any document not produced in response to the Defendant's Requests for Production of Documents and supplements thereto for the reason that such action would be harmful and prejudicial to the Defendant.

## IX.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging directly or indirectly, arguing or referring to any photograph allegedly representing injuries sustained by the Plaintiff until such time as a determination may be made by this Honorable Court that such photographs are admissible for the reason that the failure to so require would be harmful and prejudicial to the Defendant.

## X.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to any expert witness not properly and timely disclosed for the reason that such action would be harmful and prejudicial to the Defendant.

## XI.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the deposition testimony or records or any portion thereof of any expert witness unless such expert witness's qualifications to render an expert opinion has been first established for the reason that such action would be harmful and prejudicial to the Defendant.

## XII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to any opinion by any of the Plaintiff's expert witnesses who have been properly and timely designated which is in any way contrary or not a part of previous testimony by such expert for the reason that such action would be harmful and prejudicial to the Defendant.

## XIII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to any ex parte statement or report of any person not then and

there present to offer testimony with respect to the ex parte statement or report for the reason that such action would be harmful and prejudicial to the Defendant.

<div align="center">XIV.</div>

The Defendant respectfully request that this Honorable Court require the presence of the Plaintiff during the course of the trial proceedings unless his absence is otherwise agreed to by counsel for the Defendant for the reason that the failure to impose such a requirement would be harmful and prejudicial to the Defendant.

<div align="center">XV.</div>

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff to advise this Honorable Court in the event that portions of deposition transcripts pertaining to this litigation are going to be made part of the record in order to allow the imposition of objections and to allow for the consideration of the Rule of Optional Completeness for the reason that the failure to so proceed would be harmful and prejudicial to the Defendant.

<div align="center">XVI.</div>

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging directly or indirectly, arguing or referring to any exhibits until such time as a determination may be made by this Honorable Court that such exhibits fairly and accurately represent what they purport to depict for the reason that the failure to require such a determination would be harmful and prejudicial to the Defendant.

<div align="center">XVII.</div>

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly

<div align="center">6</div>

or indirectly, arguing or referring to a comparison or contrast of the relative wealth of the parties, for the reason that such action would be irrelevant and immaterial to any issue to be decided by the Jury and would be harmful and prejudicial to the Defendant.

## XVIII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the Defendant and any other entity or person partially share the same ownership, corporate offices and supervisory staff for the reason that such action would be harmful and prejudicial to the Defendant.

## XIX.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the Defendant has failed to call any particular witness that would be available equally to either the Plaintiff or the Defendant through the subpoena process for the reason that such action would be harmful and prejudicial to the Defendant.

## XX.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to hearsay statements through the Plaintiff or the Plaintiff's witnesses regarding statements made by an agent or employee of the Defendant or others believed to be in some way associated with the Defendant unless and until the Plaintiff obtains an affirmative ruling from this Honorable Court that a proper predicate has first been laid showing that such person or persons are or were agents or employees of the Defendant, that such statements were made

7

concerning a matter within the course and scope of such agency or employment and that such statements were made during the existence of the relationship for the reason that such action would be harmful and prejudicial to the Defendant.

## XXI.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to demands or request before the Jury for matters found or believed to be contained in the Defendant's file for the reason that such action would be harmful and prejudicial to the Defendant.

## XXII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the Defendant has objected to any discovery request or have advised any witness not to answer any particular question or line of questions at any deposition for the reason that such action would be harmful and prejudicial to the Defendant.

## XXIII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the Defendant or any of its officers or employees have been involved in lawsuits or claims as a result of prior or subsequent unrelated incidents, including but not limited to those pursued by or on behalf of the Plaintiff, for the reason that such action would be harmful and prejudicial to the Defendant.

## XXIV.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to any conduct or statements made by the Defendant or any of its representatives during any compromise negotiations that have taken place following the incident in question unless and until it has first been established outside the presence of the Jury that any such conduct, statements offers are being tendered for some legitimate purpose other than to attempt to prove the Defendant's negligence, bad faith or other culpable conduct or the amount of the Plaintiff's claim for the reason that such action would be harmful and prejudicial to the Defendant.

## XXV.

The Defendant respectfully requests that this Honorable Court inquire of counsel for the Plaintiff, the Plaintiff, and the Plaintiff's witnesses whether any agreements, either oral or written, have been contemplated, negotiated, executed or consummated with respect to the provision of testimony or records, for the reason that the failure of disclosure of the foregoing information would be harmful and prejudicial to the Defendant.

## XXVI.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the Defendant or the Defendant's employees have been sued, reprimanded, disciplined, terminated or punished as a result of the incident in question or any evidence of unrelated acts that might be argued to have constituted negligence, bad faith or

other culpable conduct on other occasions for the reason that such action would be harmful and prejudicial to the Defendant.

## XXVII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to any type of side bar remarks during the course of trial for the reason that such action would be harmful and prejudicial to the Defendant.

## XXVIII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the Defendant has or had at the time of the incident in question a standard of care greater than ordinary care for the reason that such action would be harmful and prejudicial to the Defendant.

## XXIX.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the Plaintiff's burden of proof with respect to proximate cause is slight or very slight for the reason that such action would be harmful and prejudicial to the Defendant.

## XXX.

The Defendant respectfully requests that this Honorable Court to instruct counsel for the Plaintiff, the Plaintiff and Plaintiff's witnesses to refrain from interrogating, mentioning, arguing or referring to Defendant's payment of maintenance and cure as an admission by the employer that the

employee was injured aboard the vessel or during the Plaintiff's employment of Defendant for the reason that any such action in this regarding would be harmful and prejudicial to the Defendant.

## XXXI.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to any allegations against Rick Pilgrim for the reason that such action is not relevant to the pending matter and would be harmful and prejudicial to the Defendant.

## XXXII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from interrogating, arguing, or referring to the fact that the Jury is or should be required to follow the "golden rule" or similar language for the reason that such action would be harmful and prejudicial to the Defendant.

## XXXIII.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from interrogating, arguing, or referring to the fact that counsel for the Defendant is or has been amoral, immoral, unethical, untruthful or improprietas for the reason that such action would be harmful and prejudicial to the Defendant.

## XXXIV.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the fact that the foregoing Motions in Limine have been made by counsel for the Defendant for the reason that such action would be harmful and prejudicial to the Defendant.

12

## XXXV.

The Defendant respectfully requests that this Honorable Court instruct counsel for the Plaintiff, the Plaintiff and the Plaintiff's witnesses to refrain from mentioning or divulging, directly or indirectly, arguing or referring to the doctrine of res ipsa loquitur with respect to the Defendant because the doctrine is inappropriate unless Plaintiff can make the prima facie showing that the character of the accident is such that it would not ordinarily occur in the absence of negligence and the instrumentality causing the injury is shown to have been under the management and control of the Defendant. As a matter of law the evidence in this case is that the instrumentality causing the injury was not under the exclusive management and control of the Defendant.

Respectfully submitted,

PIPITONE, SEGER & WATERHOUSE, P.C.
615 Upper North Broadway
Suite 1770, MT/89
Corpus Christi, Texas 78477
(361) 884-4200
(361) 884-7444 (FAX)

By:_____
    RICHARD B. WATERHOUSE, JR.
    Federal Bar No. 17995
    State Bar No. 00788624

ATTORNEYS FOR THE DEFENDANT
PROMAR INC., INDIVIDUALLY AND D/B/A
COASTAL PRODUCTION SERVICES

## CERTIFICATE OF CONSULTATION

Counsel for the parties have discussed the Defendant's Motions in Limine but were not able to reach an agreement. Therefore, Defendant has filed this Motion and requests a hearing.

<div style="text-align:center">

_____
Richard B. Waterhouse, Jr.

</div>

## CERTIFICATE OF SERVICE

The undersigned attorney, as attorney of record for the Defendant, certifies that a true and correct copy of the attached document has been served upon the following by the method of service indicated on this the ___ day of January, 2002.

<div style="text-align:center">

_____
Richard B. Waterhouse, Jr.

</div>

**VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED:**

Mr. R. Blake Brunkenhoefer
BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas  78478
**CMRRR # 7000 0520 0023 3178 3179**

# THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

DONALD LESLIE "SAM" GALBREATH,   §

    Plaintiff,

                                    **CIVIL ACTION**

v.                             §        **NO. B-00-048**

PROMAR INC., INDIVIDUALLY AND d/b/a
COASTAL PRODUCTION SERVICES,

    Defendant.                  §

## ORDER

AND NOW, this ___ day of _____, 2002, IT IS ORDERED that the

Defendant's Motions in Limine are in all respects GRANTED.

_____

_____

JUDGE PRESIDING

15

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DONALD LESLIE "SAM" GALBREATH,   §

    Plaintiff,

                                    CIVIL ACTION

v.   §   NO. B-00-048

PROMAR INC., INDIVIDUALLY AND d/b/a
COASTAL PRODUCTION SERVICES,

    Defendant.   §

ORDER

AND NOW, this _____ day of _____, 2002, IT IS ORDERED that the

Defendant's Motions in Limine are GRANTED, in part, and DENIED, in part, as follows:

(1) _____

(2) _____

(3) _____

(4) _____

(5) _____

(6) _____

(7) _____

(8) _____

(9) _____

(10) _____

16

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DONALD LESLIE "SAM" GALBREATH,    §

    Plaintiff,

                                      CIVIL ACTION
v.    §    NO. B-00-048

PROMAR INC., INDIVIDUALLY AND d/b/a
COASTAL PRODUCTION SERVICES,

    Defendant.    §

(11) _____

(12) _____

(13) _____

(14) _____

(15) _____

(16) _____

(17) _____

(18) _____

(19) _____

(20) _____

(21) _____

(22) _____

17

# THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

DONALD LESLIE "SAM" GALBREATH,    §

    Plaintiff,

                                           CIVIL ACTION

v.                                            §    NO. B-00-048

PROMAR INC., INDIVIDUALLY AND d/b/a
COASTAL PRODUCTION SERVICES,

    Defendant.                              §

(23) _____

(24) _____

(25) _____

(26) _____

(27) _____

(28) _____

(29) _____

(30) _____

(31) _____

(32) _____

(33) _____

(34) _____

(35) _____

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

DONALD LESLIE "SAM" GALBREATH,   §

    Plaintiff,

                                                        **CIVIL ACTION**

v.   §   **NO. B-00-048**

PROMAR INC., INDIVIDUALLY AND d/b/a
COASTAL PRODUCTION SERVICES,

    Defendant.   §

(36) _____

(37)_____

(38)_____


_____

Judge Presiding

19

UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | |
| | § | CIVIL ACTION NO. B-00-048 |
| *versus* | § | |
| | § | ADMIRALTY / JURY DEMANDED |
| PROMAR INC., *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

## <u>PLAINTIFF'S PROPOSED CHARGE OF THE COURT</u>

### GENERAL INSTRUCTIONS

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that the plaintiff's claim is more likely true than not true. In determining whether any fact has been proved by a preponderance of

1


EXHIBIT
π-5

the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence--such as testimony of an eyewitness. The other is indirect or circumstantial evidence--the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You should carefully scrutinize all the testimony given, and in weighing the testimony of each witness, consider such witness' relationship to the parties in the case, his or her manner of testifying, candor, fairness and intelligence, and the extent to which the witness has been confirmed or contradicted, if at all, by other credible evidence. You will rely upon your own good judgment, your own common sense and the experience you have gained as you have gone about your everyday affairs in weighing the evidence and determining the weight to be given to it.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence

2

you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field--he is called an expert witness--is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

During the trial of this case, certain testimony has been read or shown to you by way of deposition, such depositions consisting of sworn answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason, cannot be present to testify from the witness stand, may be presented in writing, under oath, in the form of a deposition or summary of a deposition. Such testimony is entitled to the same consideration as if the witness had been present and testified from the witness stand.

Any notes you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

## "JONES ACT" and "UNSEAWORTHINESS"

The Plaintiff, SAM GALBREATH, a seaman, is asserting two separate claims against the Defendant in this case.

The Plaintiff's first claim, under a federal law known as the Jones Act, is that his employer, Defendant herein, was negligent, and that the Defendant's negligence was a cause of his injuries. The Plaintiff's second claim is that unseaworthiness of a vessel or the equipment or crew of the

3

vessel caused his injury.

You must consider each of these claims separately. The plaintiff is not required to prove all of these claims. He may recover if he proves any one of them. However, he may only recover those damages or benefits that the law provides for the claims that he proves; he may not recover the same damages or benefits more than once.

## "JONES ACT"--NEGLIGENCE

I instruct you that, at time of the occurrence in question, Plaintiff was in the course and scope of his employment for Defendant.

Under the Jones Act, the plaintiff, SAM GALBREATH, must prove that his employer was negligent. Negligence is the doing of an act that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the same or similar circumstances. The occurrence of an accident, standing alone, does not mean that anyone's negligence caused the accident.

In a Jones Act claim, the word "negligence" is given a liberal interpretation. It includes any breach of duty that an employer owes to his employees who are seamen, including the duty of providing for the safety of the crew.

Under the Jones Act, if the employer's negligent act or omission played any part, no matter how small, in bringing about or actually causing the plaintiff's injury, then you must find that the employer is liable under the Jones Act.

Negligence under the Jones Act may consist of a failure to comply with a duty required by law. Employers of seamen have a duty to provide their employees with a reasonably safe place to work. If you find that the Plaintiff was injured because the Defendant failed to provide him with a reasonably safe place to work, and that the Plaintiff's working conditions could have been made

4

safe through the exercise of reasonable care, then you must find that the Defendant was negligent.

The fact that the Defendant conducted its operations in a manner similar to that of other companies is not conclusive as to whether the Defendant was negligent or not.

You must determine if the operation in question was reasonably safe under the circumstances. The fact that a certain practice has been continued for a long period of time does not necessarily mean that it is reasonably safe under all circumstances. A long accepted practice may be an unsafe practice. However, a practice is not necessarily unsafe or unreasonable merely because it injures someone.

A seaman's employer is legally responsible for the negligence of one of its employees while that employee is acting within the course and scope of his job. A seaman is considered to be in the course of his employment if he is in the service of the ship or subject to being called to the service of the ship.

I instruct you that Captain Harold "J.R." Reeves, Captain Tommy Shields, Captain Ronnie Hale and Captain Robert Taylor were acting within the course and scope of their employment for Defendant each and every time they served as master of the M/V LADY BECKY and/or the M/V F.M. BROWN.

If you find from a preponderance of the evidence that Plaintiff was injured while acting under orders or directions of one or more of his supervisors, you may not find the Plaintiff negligent.

<center>**"UNSEAWORTHINESS"**</center>

I instruct you that, at the time of the occurrence in question, the Defendant was the legal owner and operator of the crewboats in question, the vessels M/V LADY BECKY and/or the M/V F.M. BROWN.

The Plaintiff seeks damages for personal injury that he claims was caused by the

<center>5</center>

unseaworthiness of Defendant's vessels, the M/V LADY BECKY and/or the M/V F.M. BROWN. and their equipment and crew.

"Unseaworthiness" is a claim that the owner of a vessel has not fulfilled its duty to members of the crew to provide a vessel reasonably fit for its intended purpose.

A shipowner owes to every member of the crew employed on its vessel the absolute duty to keep and maintain the ship, and all decks and passageways, appliances, gear, tools, parts and equipment of the vessel in a seaworthy condition at all times.

The owner's duty to provide a seaworthy ship is absolute. The owner may not delegate the duty to anyone. Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. If an owner does not provide a seaworthy vessel, including equipment and a crew reasonably fit for their intended purpose, then no amount of care or prudence excuses the owner.

The duty to provide a seaworthy ship extends not only to the vessel itself, but to all of its parts, equipment, and gear, and also includes the duty to supply an adequate and competent crew.

The owner of a vessel is not required to furnish an accident free ship. He need only furnish a vessel and its appurtenances that are reasonably fit for their intended use and a crew that is reasonably adequate for their assigned tasks.

In summary, if you find that the vessels or their equipment or crew were in any manner unfit in accordance with the law as I have just explained it to you, and this was a proximate cause of the injury, a term I will explain to you, then you must find that the vessels were unseaworthy and the shipowner liable, without considering any negligence on the part of the Defendant or any of its employees.

However, if you find that the owner had a capable crew and appliances and gear that were safe and suitable for their intended use, then the vessels was not unseaworthy and the Defendant is

6

not liable to Plaintiff on the claim of unseaworthiness.

## CAUSATION

You will be required to determine whether and to what extent the negligence of the Defendant, the Plaintiff or the unseaworthiness of the vessels or its equipment or its crew caused Plaintiff's injuries and damages.

In determining "causation," different rules apply to the Jones Act claim and to the unseaworthiness claim.

Under the Jones Act, for both the employer's negligence and the plaintiff's contributory negligence, an injury or damage is considered caused by an act or failure to act if the act or omission played any part, no matter how small, in bringing about or actually causing the injury or damage.

In an unseaworthiness claim, the plaintiff must show, not merely that the unseaworthy condition was a cause of the injury, but that such condition was a proximate cause of it. This means that the plaintiff must show that the condition played a substantial part in bringing about or actually causing his injury, and that the injury was either a direct result or reasonably probable consequence of the condition.

Likewise, with respect to the unseaworthiness claim, the defendant must show not merely that the plaintiff's negligence was a cause of the injury, but that any such negligence was a proximate cause of it. This means that the defendant must show that the condition in question played a substantial part in bringing about or actually causing his injury, and that the injury was either a direct result or a reasonably probable consequence of the condition.

However, if you find from a preponderance of the evidence that, at the time of the incident in question, Plaintiff was acting under the orders of one or more of his supervisors, you may not find Plaintiff contributorily negligent for his injuries and damages.

7

## DAMAGES

If you find that the Defendant is liable to the Plaintiff, you must award the amount you find by a preponderance of the evidence as full and just compensation for all of Plaintiff's damages. Compensatory damages are not allowed as a punishment against a party. Such damages cannot be based on speculation, for it is only actual damages--what the law calls compensatory damages--that are recoverable. However, compensatory damages are not restricted to actual loss of time or money; they include both the mental and physical aspects of injury, tangible and intangible. The purpose of compensatory damages is to make the plaintiff whole, or to restore him to the position he would have been in if the accident had not happened.

You should consider the following elements of damage, to the extent you find that the plaintiff has established such damages by a preponderance of the evidence:

1.      The reasonable value of the lost wages, if any, necessarily lost by plaintiff from the date of accident until the date of this trial, because of being unable to pursue his occupation as a result of his injury. In determining this amount, you should consider evidence of plaintiff's earning capacity, his earnings, and the manner in which he ordinarily occupied his time before the injury, and find what he would have earned during the time so lost, had he not been disabled from his usual occupation; and

2.      Also, such sum as will compensate the plaintiff for any loss of future earning capacity sustained by him caused by the injury in question, and which he in reasonable probability will sustain in the future, including impairment in the normal progress in the plaintiff's earning capacity. In determining this amount, you may consider what plaintiff's health, physical ability and earning power were before the accident and what they are now; the nature and extent of his injuries; whether or not they are in reasonable medical probability to be permanent; or if not permanent, the

8

extent of their duration; all for the purpose of determining, first, the effect, if any, of his injury upon his future earning capacity, and, second, the present value of any loss so sustained;

3.      The reasonable value of the physical impairment he has sustained in the past from the date of the accident to trial.  In determining this amount, you may consider what plaintiff's health and physical ability were before the accident and what they are now, and the nature and extent of his injuries; and

4.      Also, such sums as will compensate the plaintiff for any physical impairment which he in reasonable probability will suffer in the future.  In fixing this amount, you may consider what plaintiff's health and physical ability were before the accident and what they are now, and the nature and extent of his injuries; whether or not they are in reasonable medical probability to be permanent; or, if not permanent, the extent of their duration; all to the end of determining those things apart from earning wages that in reasonable probability plaintiff will be unable to do in the future as a result of his injury;

5.      Such sum as will reasonably and fairly compensate plaintiff for the pain, suffering, disfigurement and inconvenience, and the effect of plaintiff's pain, suffering, disfigurement and inconvenience on the normal pursuits and pleasures of life, sustained by plaintiff from the date of accident until the date of trial and proximately resulting from the injury in question; and

6.      Also, such sums as will reasonably and fairly compensate plaintiff for such pain, suffering, disfigurement and inconvenience, and the effect of plaintiff's pain, suffering, disfigurement and inconvenience on the normal pursuits and pleasures of life, if any, that he in reasonable probability will suffer in the future from the injury in question;

7.      Such sums as will compensate plaintiff for mental anguish and feelings of economic insecurity already suffered by plaintiff and proximately resulting from the injury in question; and

9

8.    Also, such sums as will compensate plaintiff for the mental anguish and feelings of economic insecurity, if any, that he in reasonable probability will suffer in the future from the injury in question;

9.    Such sums as the plaintiff has shown as reasonable and necessary medical, doctor, and hospital expenses incurred from the date of the trial and for the rest of his life--that is the reasonable value, not exceeding actual cost to the plaintiff, of medical care that, based upon reasonable medical probability, will be required in the future as a proximate result of the injury in question.

Some of these damages, such as mental or physical pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate the plaintiff for his injuries.

## LOSS OF FUTURE EARNINGS

If you find that the plaintiff is entitled to an award of damages for loss of future earnings, there are two particular factors you must consider:

1.    You should determine the actual or net income that plaintiff has lost or will lose, taking into consideration that any past or future earnings would be subject to income taxes. Therefore, since any award you make here is not subject to income tax, you must award the plaintiff only his net earnings after tax; and

2.    An amount to cover future loss of earnings is more valuable to the plaintiff if he received the amount today than if he received the same amount in the future. Therefore, if you decide to award plaintiff an amount for lost future earnings, you must discount it to present value by considering what return would be realized on a relatively risk-free investment.

## FUTURE MEDICAL

10

If you make any award of future medical expenses, you should adjust or discount the award to present value in the same manner as with loss of future earnings.

## FUTURE PAIN, SUFFERING, MENTAL ANGUISH, ETC.

However, you must not make any adjustment to present value for any damages you may award for future pain, suffering, mental anguish, physical impairment, disfigurement, inconvenience or loss of life's normal pleasures and pursuits.

* * *

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. You will also take a verdict form that has been prepared for you to answer.

[Explain Questions]

You may now retire to the jury room. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

11

This concludes the Court's instructions to the Jury.

DONE at Brownsville, Texas, this the _____ day of _____, 2002.


_____
HILDA G. TAGLE
United States District Court,
Southern District of Texas,
Brownsville Division

# <u>QUESTION NO. 1</u>

Do you find from a preponderance of the credible evidence that Defendant was negligent on or about April 1997 and that such negligence played any part, no matter how small, in causing Plaintiff's injury or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

13

## <u>QUESTION NO. 2</u>

Do you find from a preponderance of the credible evidence that Plaintiff was negligent on or about April 1997 and that such negligence played any part, no matter how small, in causing his injury or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

If you have answered "Yes" to both Questions Nos. 1 & 2 above, then answer Question No. 3. If you answered "No" to either Question No. 1 or 2 above, do not answer Question No. 3 and proceed directly to Question No. 4.

## **QUESTION NO. 3**

Indicate below the percentage by which each of the following contributed to cause Plaintiff's injuries or damages on or about April 1997. Your answer must total 100%.

Negligence of Defendant          _____

Negligence of Plaintiff          _____

**TOTAL**          **100%**

## <u>QUESTION NO. 4</u>

Do you find from a preponderance of the credible evidence that Defendant was negligent on or about April 18, 1998 and that such negligence played any part, no matter how small, in causing Plaintiff's injury or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

16

## QUESTION NO. 5

Do you find from a preponderance of the credible evidence that Plaintiff was negligent on or about April 18, 1998 and that such negligence played any part, no matter how small, in causing his injury or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

If you have answered "Yes" to both Questions Nos. 4 & 5 above, then answer Question No. 6.  If you answered "No" to either Question No. 4 or 5 above, do not answer Question No. 6 and proceed directly to Question No. 7.

## QUESTION NO. 6

Indicate below the percentage by which each of the following contributed to cause Plaintiff's injuries or damages on or about April 18, 1998.  Your answer must total 100%.

Negligence of Defendant                    _____

Negligence of Plaintiff                     _____

**TOTAL**                                   **100%**

18

## QUESTION NO. 7

Do you find from a preponderance of the credible evidence that the vessel M/V LADY BECKY or its equipment or crew were unseaworthy on or about April 1997 and that such unseaworthiness was a proximate cause of Plaintiff's injuries or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

## QUESTION NO. 8

Do you find from a preponderance of the credible evidence that the vessel M/V F.M. BROWN or its equipment or crew were unseaworthy on or about April 1997 and that such unseaworthiness was a proximate cause of Plaintiff's injuries or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

## <u>QUESTION NO. 9</u>

Do you find from a preponderance of the credible evidence that the vessel M/V LADY BECKY or its equipment or crew were unseaworthy on or about April 18, 1998 and that such unseaworthiness was a proximate cause of Plaintiff's injuries or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

If you have answered "Yes" to Question No. 1, Question No. 4, Question No. 7, Question No. 8 or Question No. 9 above, then answer Question No. 10. If you answered "No" to all of Question No. 1, Question No. 4, Question No. 7, Question No. 8 and Question No. 9 above, do not answer Question No. 10.

## QUESTION NO. 10

What sum of money, if paid now in cash, do you find from a preponderance of the credible evidence would fairly and reasonably compensate Plaintiff, Sam Galbreath, for his injuries and damages which resulted from the occurrence(s) in question?

> Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you may find.
>
> Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Sam Galbreath.

Answer separately and in dollars and cents, if any, with respect to each of the following elements:

1. Lost wages in the past.

   Answer: $_____

2. Loss of wage-earning capacity in the future.

   Answer: $_____

3. Physical pain and suffering in the past.

   Answer: $_____

4. Physical pain and suffering in the future.

   Answer: $_____

5. Mental anguish in the past.

   Answer: $_____

6. Mental anguish in the future.

   Answer: $_____

22

7.      Physical impairment in the past.

        Answer: $_____

8.      Physical impairment in the future.

        Answer: $_____

9.      Loss of enjoyment of life in the past.

        Answer: $_____

10.     Loss of enjoyment of life in the future.

        Answer: $_____

11.     Reasonable medical expenses in the past.

        Answer: $_____

12.     Reasonable medical expenses in the future.

        Answer: $_____

13.     Physical disfigurement in the past.

        Answer: $_____

14.     Physical disfigurement in the future.

        Answer: $_____

# QUESTION NO. 11

Do you find from a preponderance of the credible evidence that the Plaintiff suffered a medical condition caused by or aggravated during his service for the Defendant, or which manifested itself while in the service of the M/V LADY BECKY and/or the M/V F.M. BROWN?

Please answer "Yes" or "No" in the space below.

Answer: _____

## QUESTION NO. 12

State the date on which the Plaintiff suffered a medical condition caused by or aggravated during his service for the Defendant, or which manifested itself while in the service of the M/V LADY BECKY and/or the M/V F.M. BROWN?

Please answer in the space below.

Answer: _____

## QUESTION NO. 13

State the number of days Plaintiff is entitled to receive "maintenance" and "cure," from the date on which the Plaintiff suffered a medical condition caused by or aggravated during his service for the Defendant, or which manifested itself while in the service of the M/V LADY BECKY and/or the M/V F.M. BROWN, through the date of trial.

Please answer in the space below.

Answer: _____

## <u>QUESTION NO. 14</u>

State the number of days Plaintiff is entitled to receive "maintenance" and "cure" in the future.

Please answer in the space below.

Answer: _____

## <u>QUESTION NO. 15</u>

Do you find from a preponderance of the credible evidence that the Defendant willfully and/or arbitrarily failed to pay Plaintiff maintenance and cure?

Answer "Yes" or "No" in the space below.

Answer: _____

28

If you have answered "Yes" to Question No. 15, then answer Question No. 16.  If you have answered "No" to Question No. 15, do not answer Question No. 16.

## QUESTION NO. 16

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff for the attorney's fees and litigation costs incurred in prosecuting his claim for maintenance and cure?

Please answer in dollars and cents.

Answer: _____

Respectfully submitted,

BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
Tel: (361) 888-6655
Fax: (361) 888-5855

K. Blake Brunkenhoefer
State Bar No. 00783739
Southern District of Texas I.D. #15559
Christopher H. Hall
State Bar No. 00793881
Southern District of Texas I.D. #19536

## CERTIFICATE OF SERVICE

I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the above and

foregoing PLAINTIFF'S PROPOSED CHARGE OF THE COURT, has been served, in the manner

indicated below, upon:

Richard B. Waterhouse, Jr.                **VIA HAND DELIVERY**
PIPITONE, SEGER & WATERHOUSE
615 Upper N. Broadway, Suite 1770
Corpus Christi, Texas 78477

in accordance with all applicable provisions of the Texas Rules of Civil Procedure on this the 23rd

day of January, 2002.

R. Blake Brunkenhoefer

31

UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | |
| | § | CIVIL ACTION NO. B-00-048 |
| *versus* | § | |
| | § | ADMIRALTY / JURY DEMANDED |
| PROMAR INC., *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

## DEFENDANT PROMAR INC., INDIVIDUALLY AND D/B/A COASTAL PRODUCTION SERVICES' PROPOSED CHARGE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Promar Inc., Individually and d/b/a Coastal Production Services, the Defendant with respect to the above-referenced and numbered cause, and respectfully files and submits this its proposed Charge attached hereto as Exhibit "A".

Respectfully submitted,

PIPITONE, SEGER & WATERHOUSE, P.C.
615 Upper North Broadway
Suite 1770, MT/89
Corpus Christi, Texas 78477
(361) 884-4200
(361) 884-7444 (FAX)

By: Rick Waterhouse Jr.

RICHARD B. WATERHOUSE, JR.
Federal Bar No. 17995
State Bar No. 00788624

ATTORNEYS FOR THE DEFENDANT
PROMAR INC., INDIVIDUALLY AND D/B/A
COASTAL PRODUCTION SERVICES


EXHIBIT
Δ-5

UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | |
| | § | CIVIL ACTION NO. B-00-048 |
| *versus* | § | |
| | § | ADMIRALTY / JURY DEMANDED |
| PROMAR INC., *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

## CHARGE

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have an opinion about the facts of this case.

Statements and arguments for the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of

-1-

who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence -- such as testimony of an eyewitness.  The other is indirect

or circumstantial evidence -- the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field -- he is called an expert witness -- is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection and impression of each juror about the testimony.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial.  After you have

reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

## DEFINITIONS AND INSTRUCTIONS

The Plaintiff, Donald Leslie "Sam" Galbreath, is asserting two separate claims against the Defendant in this case.

The Plaintiff's first claim, under a federal law known as the Jones Act, is that his employer, Promar Inc., Individually and d/b/a Coastal Production Services, was negligent, and that Promar's negligence was a cause of his injuries. The Plaintiff's second claim, under General Maritime Law, is that unseaworthiness of a vessels caused his injuries.

You must consider each of these claims separately. The Plaintiff is not required to prove all of these claims. He may recover if he proves any one of them. However, he may only recover those damages or benefits that the law provides for the claims that he proves; he may not recover for the same damages or benefits more than once.

# JONES ACT – NEGLIGENCE

Under the Jones Act, the Plaintiff Donald Leslie "Sam" Galbreath must prove that his employer was negligent. Negligence is the doing of an act that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the same or similar circumstances. The occurrence of an accident, standing alone, does not mean anyone's negligence caused the accident.

In a Jones Act claim, the word "negligence" is given a liberal interpretation. It includes any breach of duty that an employer owes to his employees who are seamen, including the duty of providing for the safety of the crew.

Under the Jones Act, if the employer's negligent act caused the Plaintiff's injury, in whole or in part, then you must find that the employer is liable under the Jones Act.

Negligence under the Jones Act may consist of a failure to comply with a duty required by law. Employers of seamen have a duty to provide their employees with a reasonably safe place to work. If you find that the Plaintiff was injured because the Defendant failed to furnish him with a reasonably safe place to work, and that the Plaintiff's working conditions could have been made safe through the exercise of reasonable care, then you must find that the Defendant was negligent.

The fact that the Defendant conducted its operations in a manner similar to that of other companies is not conclusive as to whether the Defendant was negligent or not.

You must determine if the operation in question was reasonably safe under the circumstances. The fact that a certain practice has been continued for a long period of time does not necessarily mean that it is reasonably safe under all circumstances. A long accepted practice may be

an unsafe practice.  However, a practice is not necessarily unsafe or unreasonable merely because it injures someone.

A seaman's employer is legally responsible for the negligence of one of its employees while that employee is acting within the course and scope of his employment.

If you find from a preponderance of the evidence that the Defendant assigned the Plaintiff to perform a task that the Plaintiff was not adequately trained to perform, you must find that the Defendant was negligent.

Not every injury that follows an accident necessarily results from it.  The accident must be the cause of the injury.  Under the Jones Act, for both the employer's negligence and the Plaintiff's contributory negligence an injury or damage is considered caused by an act or failure to act if the act or omission brought about or actually caused the injury or damage, in whole or in part.

## GENERAL MARITIME - UNSEAWORTHINESS

The Plaintiff seeks damages for personal injury that he claims was caused by the unseaworthiness of the Defendant's vessels, the M/V F. M. BROWN and the M/V LADY BECKY.

A shipowner owes to every member of the crew employed on its vessel the absolute duty to keep and maintain the ship, and all decks and passageways, appliances, gear, tools, parts and equipment of the vessel in a seaworthy condition at all times.

A seaworthy vessel is one that is reasonably fit for its intended use.  The duty to provide a seaworthy vessel is absolute because the owner may not delegate that duty to anyone.  Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame.  If an owner does not provide a seaworthy vessel -- a vessel that is reasonably fit for its intended use -- no amount of care or prudence excuses the owner.

The duty to provide a seaworthy vessel includes a duty to supply an adequate and competent crew. A vessel may be unseaworthy even though it has a numerically adequate crew, if too few persons are assigned to a given task.

However, the owner of a vessel is not required to furnish an accident free ship. He need only furnish a vessel and its appurtenances that are reasonably fit for their intended use and a crew that is reasonably adequate for their assigned tasks.

The shipowner is not required to provide the best appliances and equipment, or the finest of crews, on his vessel. He is only required to provide gear that is reasonably proper and suitable for its intended use, and a crew that is reasonably adequate.

In summary, if you find that the owner of the vessel did not provide an adequate crew of sufficient manpower to perform the tasks required, or if you find that the vessel was in any manner unfit in accordance with the law as I have just explained it to you and that this was a proximate cause of the injury, a term I will explain to you, then you may find that the vessel was unseaworthy and the shipowner liable, without considering any negligence on the part of the Defendant or any of its employees.

However, if you find that the owner had a capable crew and appliances and gear that were safe and suitable for their intended use, then the vessel was not unseaworthy and the Defendant is not liable to the Plaintiff on the claim of unseaworthiness.

In an unseaworthiness claim, the Plaintiff must show, not merely that the unseaworthy condition was a cause of the injury, but that such condition was a proximate cause of it. This means that the Plaintiff must show that the condition in question was a substantial factor in bringing about or actually causing his injury and that the injury was either a direct result or a reasonably probable consequence of the condition.

## *GENERAL MARITIME – NEGLIGENCE*

*Under General Maritime Law, the Plaintiff, Donald Leslie "Sam" Galbreath, must prove that Promar Inc., Individually and d/b/a Coastal Production Services was negligent. Negligence as defined for Promar Inc., Individually and d/b/a Coastal Production Services is the failure to use reasonable care. Reasonable care is that degree of care which a reasonable careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under the like circumstances.*

*In a general maritime claim, the Plaintiff, Donald Leslie "Sam" Galbreath, must show, not merely that the act or omission was a cause of the injury, but that such act or omission was a proximate cause of it. This means that the Plaintiff, Donald Leslie "Sam" Galbreath, must show that the act or omission in question was a substantial factor in bringing about or actually causing his injury, and that the injury was either a direct or a reasonably probable consequence of the act or omission.*

## CONTRIBUTORY NEGLIGENCE

The Defendant contends that the Plaintiff was negligent, and that the Plaintiff's negligence caused or contributed to causing his injury. This is the defense of contributory negligence. The Defendant has the burden of proving that the Plaintiff was contributorily negligent. If the Plaintiff was guilty of contributory negligence that contributed to his injury, he nevertheless may recover. However, the amount of his recovery will be reduced by the extent of his contributory negligence.

A seaman is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment, but also his own experience, training and education.

In other words, under the Jones Act a seaman has the duty to exercise that degree of care for his own safety that a reasonable seaman would exercise in like circumstances.

If you find that the Defendant was negligent, and that the negligence was a cause, as defined above, of the Plaintiff's injury, but you also find that the accident was due partly to the contributory negligence of the Plaintiff, then you must determine the percentage the Plaintiff's contributory negligence contributed to the accident.

If you find that the vessel was unseaworthy, and that the unseaworthiness was a proximate cause of the plaintiff's injury, but you also find that the accident was due partly to the contributory negligence of the Plaintiff, then you must determine the percentage of the Plaintiff's contributory negligence contributed to the accident. You will provide this information by filling in the appropriate blanks in the special interrogatories. Do not make any reduction in the amount of damages that you award to the Plaintiff. I will reduce the damages that you award by the percentage of contributory negligence that you assign to the Plaintiff.

## DAMAGES

If you find that the Defendant is liable, you must award the amount you find by a preponderance of the evidence as full and just compensation for all of the Plaintiff's damages. Compensatory damages are not allowed as a punishment against a party. Such damages cannot be based on speculation, for it is only actual damages -- what the law calls compensatory damages -- that are recoverable. However, compensatory damages are not restricted to actual loss of time or money; they include both the mental and physical aspects of injury, tangible and intangible. They are an attempt to make the Plaintiff whole, or to restore him to the position he would have been in if the accident had not happened.

You should consider the following elements of damages, to the extent you find that the Plaintiff has established such damages by a preponderance of the evidence: physical pain and suffering including physical disability, impairment, and inconvenience, and the effect of the Plaintiff's injuries and inconvenience on the normal pursuits and pleasures of life; mental anguish and feelings of economic insecurity caused by disability; income loss in the past; impairment of earning capacity or ability in the future, including impairment in the normal progress in the Plaintiff's earning capacity due to his physical condition; post-medical expenses; the reasonable value, not exceeding actual cost to the Plaintiff, of medical care that you find from the evidence will be reasonably certain to be required in the future as a proximate result of the injury in question.

Some of these damages, such as mental or physical pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate the Plaintiff for his injuries.

## MITIGATION OF DAMAGES

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate -- to avoid or minimize those damages.

If you find the Defendant is liable and the Plaintiff has suffered damages, the Plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the Plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the Plaintiff acted reasonably in avoiding or minimizing his damages. An injured Plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable

expenses in mitigating the damages.  The Defendant has the burden of proving the damages which

the Plaintiff could have mitigated.  In deciding whether to reduce the Plaintiff's damages because of

his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the

case, using sound discretion in deciding whether the Defendant has satisfied its burden of proving

that the Plaintiff's conduct was not reasonable.

### AGGRAVATION OR ACTIVATION OF DISEASE OR DEFECT

You may award damages for aggravation of an existing disease or physical defect resulting

from physical injury to the Plaintiff.  If you find that there was such an aggravation, you should

determine, if you can, what portion of the Plaintiff's condition resulted from the aggravation, and

make allowance in your verdict only for the aggravation.

# <u>QUESTION NO. 1</u>

Do you find from a preponderance of the evidence that the Plaintiff Donald Leslie "Sam"

Galbreath suffered an injury in April 1997 ?

Answer "Yes" or "No."

Answer:_____

If you have answered "Yes" to Question No. 1, then answer the following question.

Otherwise, do not answer the following questions.

## QUESTION NO. 2

Do you find from a preponderance of the evidence that the Plaintiff, Donald Leslie "Sam" Galbreath, was negligent on the occasion in question, which negligence was a proximate and/or producing cause of the Plaintiff's injuries, if any?

Answer "Yes" or "No."

Answer:_____

## **QUESTION NO. 3**

Do you find from a preponderance of the evidence that the Defendant, Promar Inc.,

Individually and d/b/a Coastal Production Services, was negligent on the occasion in question,

which negligence was a producing cause of the Plaintiff's injuries, if any?

Answer "Yes" or "No."

Answer:_____

## QUESTION NO. 4

Do you find from a preponderance of the evidence that the M/V F.M. BROWN and M/V LADY BECKY were unseaworthy on the occasion in question in the manner alleged by the Plaintiff and that such unseaworthy condition, if any, was a proximate cause of his injuries, if any?

Answer "Yes" or "No."

Answer:_____

If you have answered "Yes" to Questions 2, 3, 4 and 5 for more than one of those names below, then answer the following question.  Otherwise, do not answer the following question.

## QUESTION NO. 5

What percentage of the negligence and/or unseaworthiness, if any, that caused the occurrence in question do you find from the preponderance of the evidence to be attributable to each of the parties?  The total percentage should equal 100%.  The percentage attributable to a party should be stated, if any, opposite each name.

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | _____ | % |
| PROMAR INC., Individually and  d/b/a<br>COASTAL PRODUCTION SERVICES | _____ | % |
| | Total | __100__ | % |

## QUESTION NO. 6

What sum of money, if any, if now paid in cash would fairly and reasonably compensate the Plaintiff for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Answer in dollars and cents for damages, if any.

(a)  Physical pain and suffering and mental anguish, if any,
     occurring in April of 1997 until today.                           $_____

(b)  Physical pain and suffering and mental anguish, if any,
     in the future.                                                    $_____

(c)  Loss of earnings, if any, from April, 1997 until
     today.                                                            $_____

(d)  Loss of earning capacity, if any, in the future.                 $_____

(e)  Medical expenses, if any, reasonably certain to be incurred
     in the future as a result of the injury in question.             $_____

# **QUESTION NO. 7**

Do you find from a preponderance of the evidence that the Plaintiff has reached "maximum medical cure", from the injuries, if any, sustained in April of 1997?

"Maximum medical cure" means the point in time at which no further improvement of the seaman's condition is to be reasonably expected. Thus, if it appears that a seaman's condition is incurable, or that the treatment will only relieve pain but will not improve the seaman's physical condition, he has reached maximum cure.

Answer "Yes" or "No."

Answer:_____

If, you have answered "Yes" to Question No. 7, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 8

State the date the Plaintiff reached "maximum medical cure", from the injuries, if any, sustained in April of 1997.

Answer:_____

## **CERTIFICATE**

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

_____

Presiding Juror

## CERTIFICATE OF SERVICE

The undersigned attorney, as attorney of record for the Defendant, certifies that a true and correct copy of the attached document has been served upon the following by the method of service indicated on this the **23** day of January, 2002.

RICHARD B. WATERHOUSE, JR.

### VIA HAND DELIVERY

Mr. R. Blake Brunkenhoefer
BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas  78478



# COPY

United States District Court
Southern District of Texas
FILED

JAN 2 4 2002

Michael N. Milby
Clerk of Court

37

| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **SOUTHERN DISTRICT OF TEXAS** |
| | **BROWNSVILLE DIVISION** |

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | |
| | § | **CIVIL ACTION NO. B-00-048** |
| *versus* | § | |
| | § | **ADMIRALTY / JURY DEMANDED** |
| PROMAR INC., *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

## DEFENDANT PROMAR INC., INDIVIDUALLY AND D/B/A COASTAL PRODUCTION SERVICES' PROPOSED VOIR DIRE QUESTION AREAS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Promar Inc., Individually and d/b/a Coastal Production Services, the Defendant with respect to the above-referenced and numbered cause, and respectfully files and submits this its Proposed Voir Dire Question Areas as follows:

1. Familiarity with or knowledge of the parties;

2. Familiarity with or knowledge of counsel;

3. Familiarity with or knowledge of witnesses;

4. Familiarity with or knowledge of the alleged incident made the basis of the litigation;

5. Familiarity with or knowledge of the drilling or offshore drilling industry, supply and/or crewboats procedures;

6. Union or employee group affiliations;

7. Familiarity with and knowledge of physical ailments or disabilities related to hernias, carpal tunnel syndrome, rotator cuff conditions, shoulder problems or neck complaints.

8. Acceptance of the use of recorded statement and deposition transcripts, deposition videos

1

and exhibits;

9.     Consideration of an individual as a prosecuting party;

10.    Consideration of a corporate entity as a defending party;

11.    Assumption that the initiation of litigation and the assertion of allegations by a prosecuting party indicate culpability of the defending party;

12.    The provision of maintenance and cure benefits in complete accordance with requirements does not suggest liability;

13.    Consideration of wrongful acts affecting credibility;

14.    The responsibility of individuals to bear responsibility for their own actions and for their own safety;

15.    The mere fact that an incident has occurred should not suggests liability in the absence of evidence of negligence or unseaworthiness;

16.    Obligations to assess physical capabilities and restrictions determinative of possible occupations;

17.    Responsibility of persons to be honest with a prospective employer;

18.    Responsibility to mitigate damages by pursuing rehabilitation and vocational training;

19.    Obligation to pursue and obtain gainful employment;

20.    Responsibility of an employee not to engage in an activity which the employee knows or should know is beyond his capability; and

21.    It is the responsibility of an employee to get help if he is unable to lift an object or perform his duties unaided.

Respectfully submitted,

PIPITONE, SEGER & WATERHOUSE, P.C.
615 Upper North Broadway
Suite 1770, MT/89
Corpus Christi, Texas 78477
(361) 884-4200
(361) 884-7444 (FAX)


By: _Rick Waterhouse_____
    RICHARD B. WATERHOUSE, JR.
    Federal Bar No. 17995
    State Bar No. 00788624

ATTORNEYS FOR THE DEFENDANT
PROMAR INC., INDIVIDUALLY AND D/B/A
COASTAL PRODUCTION SERVICES

3

## CERTIFICATE OF SERVICE

The undersigned attorney, as attorney of record for the Defendant, certifies that a true and correct copy of the attached document has been served upon the following by the method of service indicated on this the **23** day of January, 2002.

Richard B. Waterhouse, Jr.

**VIA HAND DELIVERY**

Mr. R. Blake Brunkenhoefer
BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas  78478

**UNITED STATES DISTRICT COURT**      **SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | |
| | § | CIVIL ACTION NO. B-00-048 |
| *versus* | § | |
| | § | ADMIRALTY / JURY DEMANDED |
| PROMAR INC., *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

## DEFENDANT PROMAR INC., INDIVIDUALLY AND
## D/B/A COASTAL PRODUCTION SERVICES'
## PROPOSED CHARGE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Promar Inc., Individually and d/b/a Coastal Production Services, the

Defendant with respect to the above-referenced and numbered cause, and respectfully files and

submits this its proposed Charge attached hereto as Exhibit "A".

Respectfully submitted,

PIPITONE, SEGER & WATERHOUSE, P.C.
615 Upper North Broadway
Suite 1770, MT/89
Corpus Christi, Texas 78477
(361) 884-4200
(361) 884-7444 (FAX)

By: _____
     RICHARD B. WATERHOUSE, JR.
     Federal Bar No. 17995
     State Bar No. 00788624

ATTORNEYS FOR THE DEFENDANT
PROMAR INC., INDIVIDUALLY AND D/B/A
COASTAL PRODUCTION SERVICES

**UNITED STATES DISTRICT COURT**      **SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **DONALD LESLIE "SAM" GALBREATH** | § | |
| | § | **CIVIL ACTION NO. B-00-048** |
| *versus* | § | |
| | § | **ADMIRALTY / JURY DEMANDED** |
| **PROMAR INC.,** *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

<u>**CHARGE**</u>

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.   On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have an opinion about the facts of this case.

Statements and arguments for the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of

who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence -- such as testimony of an eyewitness. The other is indirect

or circumstantial evidence -- the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field -- he is called an expert witness -- is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection and impression of each juror about the testimony.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have

reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

## DEFINITIONS AND INSTRUCTIONS

The Plaintiff, Donald Leslie "Sam" Galbreath, is asserting two separate claims against the Defendant in this case.

The Plaintiff's first claim, under a federal law known as the Jones Act, is that his employer, Promar Inc., Individually and d/b/a Coastal Production Services, was negligent, and that Promar's negligence was a cause of his injuries. The Plaintiff's second claim, under General Maritime Law, is that unseaworthiness of a vessels caused his injuries.

You must consider each of these claims separately. The Plaintiff is not required to prove all of these claims. He may recover if he proves any one of them. However, he may only recover those damages or benefits that the law provides for the claims that he proves; he may not recover for the same damages or benefits more than once.

# JONES ACT – NEGLIGENCE

Under the Jones Act, the Plaintiff Donald Leslie "Sam" Galbreath must prove that his employer was negligent. Negligence is the doing of an act that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the same or similar circumstances. The occurrence of an accident, standing alone, does not mean anyone's negligence caused the accident.

In a Jones Act claim, the word "negligence" is given a liberal interpretation. It includes any breach of duty that an employer owes to his employees who are seamen, including the duty of providing for the safety of the crew.

Under the Jones Act, if the employer's negligent act caused the Plaintiff's injury, in whole or in part, then you must find that the employer is liable under the Jones Act.

Negligence under the Jones Act may consist of a failure to comply with a duty required by law. Employers of seamen have a duty to provide their employees with a reasonably safe place to work. If you find that the Plaintiff was injured because the Defendant failed to furnish him with a reasonably safe place to work, and that the Plaintiff's working conditions could have been made safe through the exercise of reasonable care, then you must find that the Defendant was negligent.

The fact that the Defendant conducted its operations in a manner similar to that of other companies is not conclusive as to whether the Defendant was negligent or not.

You must determine if the operation in question was reasonably safe under the circumstances. The fact that a certain practice has been continued for a long period of time does not necessarily mean that it is reasonably safe under all circumstances. A long accepted practice may be

an unsafe practice. However, a practice is not necessarily unsafe or unreasonable merely because it injures someone.

A seaman's employer is legally responsible for the negligence of one of its employees while that employee is acting within the course and scope of his employment.

If you find from a preponderance of the evidence that the Defendant assigned the Plaintiff to perform a task that the Plaintiff was not adequately trained to perform, you must find that the Defendant was negligent.

Not every injury that follows an accident necessarily results from it. The accident must be the cause of the injury. Under the Jones Act, for both the employer's negligence and the Plaintiff's contributory negligence an injury or damage is considered caused by an act or failure to act if the act or omission brought about or actually caused the injury or damage, in whole or in part.

## GENERAL MARITIME - UNSEAWORTHINESS

The Plaintiff seeks damages for personal injury that he claims was caused by the unseaworthiness of the Defendant's vessels, the M/V F. M. BROWN and the M/V LADY BECKY.

A shipowner owes to every member of the crew employed on its vessel the absolute duty to keep and maintain the ship, and all decks and passageways, appliances, gear, tools, parts and equipment of the vessel in a seaworthy condition at all times.

A seaworthy vessel is one that is reasonably fit for its intended use. The duty to provide a seaworthy vessel is absolute because the owner may not delegate that duty to anyone. Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. If an owner does not provide a seaworthy vessel -- a vessel that is reasonably fit for its intended use -- no amount of care or prudence excuses the owner.

The duty to provide a seaworthy vessel includes a duty to supply an adequate and competent crew. A vessel may be unseaworthy even though it has a numerically adequate crew, if too few persons are assigned to a given task.

However, the owner of a vessel is not required to furnish an accident free ship. He need only furnish a vessel and its appurtenances that are reasonably fit for their intended use and a crew that is reasonably adequate for their assigned tasks.

The shipowner is not required to provide the best appliances and equipment, or the finest of crews, on his vessel. He is only required to provide gear that is reasonably proper and suitable for its intended use, and a crew that is reasonably adequate.

In summary, if you find that the owner of the vessel did not provide an adequate crew of sufficient manpower to perform the tasks required, or if you find that the vessel was in any manner unfit in accordance with the law as I have just explained it to you and that this was a proximate cause of the injury, a term I will explain to you, then you may find that the vessel was unseaworthy and the shipowner liable, without considering any negligence on the part of the Defendant or any of its employees.

However, if you find that the owner had a capable crew and appliances and gear that were safe and suitable for their intended use, then the vessel was not unseaworthy and the Defendant is not liable to the Plaintiff on the claim of unseaworthiness.

In an unseaworthiness claim, the Plaintiff must show, not merely that the unseaworthy condition was a cause of the injury, but that such condition was a proximate cause of it. This means that the Plaintiff must show that the condition in question was a substantial factor in bringing about or actually causing his injury and that the injury was either a direct result or a reasonably probable consequence of the condition.

### GENERAL MARITIME – NEGLIGENCE

*Under General Maritime Law, the Plaintiff, Donald Leslie "Sam" Galbreath, must prove that Promar Inc., Individually and d/b/a Coastal Production Services was negligent. Negligence as defined for Promar Inc., Individually and d/b/a Coastal Production Services is the failure to use reasonable care. Reasonable care is that degree of care which a reasonable careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under the like circumstances.*

*In a general maritime claim, the Plaintiff, Donald Leslie "Sam" Galbreath, must show, not merely that the act or omission was a cause of the injury, but that such act or omission was a proximate cause of it. This means that the Plaintiff, Donald Leslie "Sam" Galbreath, must show that the act or omission in question was a substantial factor in bringing about or actually causing his injury, and that the injury was either a direct or a reasonably probable consequence of the act or omission.*

### CONTRIBUTORY NEGLIGENCE

The Defendant contends that the Plaintiff was negligent, and that the Plaintiff's negligence caused or contributed to causing his injury. This is the defense of contributory negligence. The Defendant has the burden of proving that the Plaintiff was contributorily negligent. If the Plaintiff was guilty of contributory negligence that contributed to his injury, he nevertheless may recover. However, the amount of his recovery will be reduced by the extent of his contributory negligence.

A seaman is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment, but also his own experience, training and education.

In other words, under the Jones Act a seaman has the duty to exercise that degree of care for his own safety that a reasonable seaman would exercise in like circumstances.

If you find that the Defendant was negligent, and that the negligence was a cause, as defined above, of the Plaintiff's injury, but you also find that the accident was due partly to the contributory negligence of the Plaintiff, then you must determine the percentage the Plaintiff's contributory negligence contributed to the accident.

If you find that the vessel was unseaworthy, and that the unseaworthiness was a proximate cause of the plaintiff's injury, but you also find that the accident was due partly to the contributory negligence of the Plaintiff, then you must determine the percentage of the Plaintiff's contributory negligence contributed to the accident.   You will provide this information by filling in the appropriate blanks in the special interrogatories.  Do not make any reduction in the amount of damages that you award to the Plaintiff. I will reduce the damages that you award by the percentage of contributory negligence that you assign to the Plaintiff.

## DAMAGES

If you find that the Defendant is liable, you must award the amount you find by a preponderance of the evidence as full and just compensation for all of the Plaintiff's damages. Compensatory damages are not allowed as a punishment against a party.  Such damages cannot be based on speculation, for it is only actual damages -- what the law calls compensatory damages -- that are recoverable.  However, compensatory damages are not restricted to actual loss of time or money; they include both the mental and physical aspects of injury, tangible and intangible.  They are an attempt to make the Plaintiff whole, or to restore him to the position he would have been in if the accident had not happened.

You should consider the following elements of damages, to the extent you find that the Plaintiff has established such damages by a preponderance of the evidence: physical pain and suffering including physical disability, impairment, and inconvenience, and the effect of the Plaintiff's injuries and inconvenience on the normal pursuits and pleasures of life; mental anguish and feelings of economic insecurity caused by disability; income loss in the past; impairment of earning capacity or ability in the future, including impairment in the normal progress in the Plaintiff's earning capacity due to his physical condition; post-medical expenses; the reasonable value, not exceeding actual cost to the Plaintiff, of medical care that you find from the evidence will be reasonably certain to be required in the future as a proximate result of the injury in question.

Some of these damages, such as mental or physical pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate the Plaintiff for his injuries.

## MITIGATION OF DAMAGES

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate -- to avoid or minimize those damages.

If you find the Defendant is liable and the Plaintiff has suffered damages, the Plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the Plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the Plaintiff acted reasonably in avoiding or minimizing his damages. An injured Plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable

expenses in mitigating the damages. The Defendant has the burden of proving the damages which the Plaintiff could have mitigated. In deciding whether to reduce the Plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the Defendant has satisfied its burden of proving that the Plaintiff's conduct was not reasonable.

## AGGRAVATION OR ACTIVATION OF DISEASE OR DEFECT

You may award damages for aggravation of an existing disease or physical defect resulting from physical injury to the Plaintiff. If you find that there was such an aggravation, you should determine, if you can, what portion of the Plaintiff's condition resulted from the aggravation, and make allowance in your verdict only for the aggravation.

# **QUESTION NO. 1**

Do you find from a preponderance of the evidence that the Plaintiff Donald Leslie "Sam" Galbreath suffered an injury in April 1997 ?

Answer "Yes" or "No."

Answer:_____

If you have answered "Yes" to Question No. 1, then answer the following question. Otherwise, do not answer the following questions.

## **QUESTION NO. 2**

Do you find from a preponderance of the evidence that the Plaintiff, Donald Leslie "Sam" Galbreath, was negligent on the occasion in question, which negligence was a proximate and/or producing cause of the Plaintiff's injuries, if any?

Answer "Yes" or "No."

Answer:_____

# **QUESTION NO. 3**

Do you find from a preponderance of the evidence that the Defendant, Promar Inc., Individually and d/b/a Coastal Production Services, was negligent on the occasion in question, which negligence was a producing cause of the Plaintiff's injuries, if any?

Answer "Yes" or "No."

Answer:_____

## **QUESTION NO. 4**

Do you find from a preponderance of the evidence that the M/V F.M. BROWN and M/V LADY BECKY were unseaworthy on the occasion in question in the manner alleged by the Plaintiff and that such unseaworthy condition, if any, was a proximate cause of his injuries, if any?

Answer "Yes" or "No."

Answer:_____

If you have answered "Yes" to Questions 2, 3, 4 and 5 for more than one of those names below, then answer the following question. Otherwise, do not answer the following question.

## **QUESTION NO. 5**

What percentage of the negligence and/or unseaworthiness, if any, that caused the occurrence in question do you find from the preponderance of the evidence to be attributable to each of the parties? The total percentage should equal 100%. The percentage attributable to a party should be stated, if any, opposite each name.

DONALD LESLIE "SAM" GALBREATH         _____ %

PROMAR INC., Individually and d/b/a         _____ %
COASTAL PRODUCTION SERVICES

                                    Total     __100__ %

## QUESTION NO. 6

What sum of money, if any, if now paid in cash would fairly and reasonably compensate the Plaintiff for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Answer in dollars and cents for damages, if any.

(a)  Physical pain and suffering and mental anguish, if any, occurring in April of 1997 until today.                                   $_____

(b)  Physical pain and suffering and mental anguish, if any, in the future.                                                             $_____

(c)  Loss of earnings, if any, from April, 1997 until today.                                                                            $_____

(d)  Loss of earning capacity, if any, in the future.                                   $_____

(e)  Medical expenses, if any, reasonably certain to be incurred in the future as a result of the injury in question.                   $_____

# <u>QUESTION NO. 7</u>

Do you find from a preponderance of the evidence that the Plaintiff has reached "maximum medical cure", from the injuries, if any, sustained in April of 1997?

"Maximum medical cure" means the point in time at which no further improvement of the seaman's condition is to be reasonably expected. Thus, if it appears that a seaman's condition is incurable, or that the treatment will only relieve pain but will not improve the seaman's physical condition, he has reached maximum cure.

Answer "Yes" or "No."

Answer:_____

.

If, you have answered "Yes" to Question No. 7, then answer the following question. Otherwise, do not answer the following question.

## **QUESTION NO. 8**

State the date the Plaintiff reached "maximum medical cure", from the injuries, if any, sustained in April of 1997.

Answer:_____

## **CERTIFICATE**

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

_____
Presiding Juror

## CERTIFICATE OF SERVICE

The undersigned attorney, as attorney of record for the Defendant, certifies that a true and correct copy of the attached document has been served upon the following by the method of service indicated on this the **23** day of January, 2002.

RICHARD B. WATERHOUSE, JR.

**VIA HAND DELIVERY**

Mr. R. Blake Brunkenhoefer
BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas  78478

**UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DONALD LESLIE "SAM" GALBREATH | § | |
| | § | **CIVIL ACTION NO. B-00-048** |
| *versus* | § | |
| | § | **ADMIRALTY / JURY DEMANDED** |
| PROMAR INC., *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

## PLAINTIFF'S PROPOSED QUESTIONS FOR VOIR DIRE

TO THE HONORABLE JUDGE OF SAID DISTRICT COURT:

COMES NOW DONALD LESLIE "SAM" GALBREATH, Plaintiff herein, and respectfully requests that the Court ask the following questions of the jury panel, which questions assume that the Court has completed its qualification of the panel, introduced the Parties and their representatives, and apprised the panel of the nature of the pending claims:

1. Sam Galbreath, the Plaintiff in this case, is and has been a resident of Rockport, Texas. Do any of you know Sam or his wife, Linda Galbreath?

2. Have you, anyone close to you, or any member of your family (including your spouse, children, stepchildren, parents, brothers, sisters, children-in-law, sisters-in-law, or parents-in law) ever worked for or been employed by PROMAR, INC., COASTAL PRODUCTION SERVICES, PRODUCTION SERVICES GROUP, PRODUCTION SYSTEMS, INC., PROSAFE, INC., R.M.C. TECHNOLOGY CORPORATION or any other related parent or subsidiary company?

3. Has any close friend or relative ever been involved as a plaintiff, defendant, or witness in a civil case, or ever attended court for any reason? If yes, is that civil case still pending?

1

Based upon what you have heard about the facts of this case, was the civil action in which your friend or relative was involved similar in any way to this case? Was there anything about the civil case in which your friend or relative was involved that could have an impact on your ability to be a fair and impartial juror of the facts in this case?

4.     Have any of you ever been a defendant in a suit brought for damages? If yes, is the case still pending? Based upon what you have heard about the facts of this case, was the civil action in which you are or were a defendant similar in any way to this case? Is there anything about the civil case in which you are or were a defendant that you believe could have an impact on your ability to be fair an impartial juror of the facts in this case?

5.     Have any of you been a plaintiff in a suit? If yes, is that case still pending? Based upon what you have heard about the facts of this case, is the civil action in which you are or were a plaintiff similar in any way to the case? Is there anything about the civil case in which your are or were a plaintiff that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

6.     Have any of you or any of your family or close friends ever worked in the oil, gas or petrochemical industries, including, but not limited to, the production, transportation, servicing, or refining aspects of these industries? Have any of you or any of your family or close friends ever worked in the offshore drilling industry?

7.     "Commercial vessels" refers to all boats other than pleasure boats. Commercial vessels include shrimp boats, crew boats, supply boats, tugs, tankships, etc.. Have any of you or your family or close friends ever worked on or for tankships, crew boats, supply boats, tugboats, fishing vessels, or any other type of commercial vessel? What was the nature of the work performed?

8.    Have any of you or any of your family or close friends ever worked as a captain or a deckhand on a commercial vessel?

9.    Have any of you or any of your family or close friends ever worked as a repairman, port captain, yard supervisor, or some similar job for a company that owned or operated commercial vessels?

10.   Have any of you or your family or close friends ever worked in the United States Navy or the United States Coast Guard?

11.   Have any of you or your family or close friends ever worked in any military or corporate hierarchy?  Do you understand what it means to follow a "chain of command?"

12.   Have you, a relative, or anyone close to you ever been employed as a claims investigator or adjuster of claims or claims handler?

13.   Have any of you or your family or close friends ever worked for any company that performs marine surveys of vessels and equipment?

14.   Have any of you or your family or close friends ever worked for a government agency, such as the Occupational Health & Safety Administration (OSHA) performing independent inspections of jobsites and equipment?

15.   Have any of you or your family or close friends ever worked for any company that is usually hired to inspect or survey a jobsite or equipment for insurance or any other purposes other than government certification?

16.   Have any of you or your family or close friends ever been hired as or testified as an expert witness?

17.   At the time of the events upon which this lawsuit is based, Sam Galbreath was working as deckhand aboard crewboats owned and operated by the Defendant. Some of the Defendant's

3

past or current employees may be called to testify in this case. Does any member of the panel know the following people who were, on the relevant occasions, performing the following jobs aboard Defendant's vessels:

1.   Robert "Stash" Taylor, *Captain . . . also performed some welding at the yard*

2.   Harold "J. R." Reeves, *Captain*

3.   Ronnie Hale, *Captain*

4.   Tommy Shields, *Captain*

18.   It is expected that some of the Defendant's "home office" or "corporate" employees or representatives may be called to testify in this case. Therefore, do any of you know the following PROMAR employees or representatives, who were or are presently working out of or in conjunction with the Defendant's headquarters in Rockport, Texas:

1.   David Pilgrim, *Owner/President*

2.   Rick Pilgrim, *Former Maintenance Manager/Supervisor*

3.   Dolph Haynes, *General Manager*

4.   Carl Stubbs, *vessel maintenance*

5.   Billy Dwayne Pearson, *vessel maintenance*

19.   Other individuals who may appear in this case are as follows:

1.   Richard L. "Dick" Frenzel (Friendswood, TX)
     *Plaintiff's liability expert*

2.   Donna Johnson (Corpus Christi, Texas)
     *Plaintiff's vocational expert*

3.   Stephen M. Horner (Corpus Christi, TX)
     *Plaintiff's economist*

4.   John Kingston (Spring, TX)
     *Defendants' liability expert*

4

5.      David Waller (Houston, TX)
        *Defendant's other liability expert*

6.      William Quintanilla (Houston, TX)
        *Defendants' vocational expert*

Do any of you know any of these people?

20.    Before Sam Galbreath went to work for Defendant, he received a complete pre-employment
       physical examination from a doctor chosen by the Defendant. Has any member of the jury
       panel heard of or do any of you know about Dr. David G. Williams (SOUTH TEXAS
       OCCUPATIONAL HEALTH CLINIC, Corpus Christi, Texas)? For those of you who know
       about or have heard of Dr. Williams, what do you know or what have you heard about him?

21.    Following the events of April 1997 and April 18, 1998, Sam Galbreath was treated by his
       family doctor in Aransas Pass and some other physicians in the Corpus Christi area. Has any
       member of the jury panel heard of or do any of you know about the following doctors?

       1.      Dr. John Longacre (Aransas Pass, Texas)

       2.      Dr. William Aaron Tucker (ATLAS ORTHOPEDICS & SPINE CENTER, Portland,
               Texas)

       3.      Dr. Charles Breckenridge (ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI)

       4.      Dr. John P. Masciale (ORTHOPEDIC ASSOCIATES OF CORPUS CHRISTI)

       5.      Dr. David A. McFarling (THE NEUROLOGICAL CLINIC, Corpus Christi, Texas)

       6.      Dr. P. J. Marshio (Aransas Pass, Texas)

       7.      Dr. Alberto Belalcazar (Corpus Christi, Texas)

       8.      Dr. Jerome Leesang (Portland, Texas)

       For those of you who know about or have heard of any of these doctors, what do you know
       or what have you heard about them?

5

22.    To assist in the defense of this lawsuit, the Defendant has retained a medical expert to discuss Sam Galbreath's injuries from the Defendant's perspective. Has any member of the jury panel heard of or do any of you know about Dr. Charles S. Clark, Jr. (ORTHOPEDIC SURGERY & SPORTS MEDICINE ASSOCIATES, Corpus Christi, Texas)? For those of you who know about or have heard of Dr. Clark, what do you know or what have you heard about him?

23.    Have any of you or your family or close friends ever sustained an "on-the-job" injury? Have any of you, who have been hurt on the job, been asked or ordered by your employer to see a company doctor or a doctor chosen by the employer? For those of you who have seen a company doctor or a company-chosen doctor, which of you believe the doctor had the company's best interests at heart, instead of yours? Which of you believe the company doctor had your best interests at heart, regardless of how your injury impacted the company?

24.    Have any of you or your family or close friends ever sustained a neck injury or suffered a condition causing pain or discomfort in the neck, regardless of the cause of the back pain or injury? For those of you who have just answered "yes," have any of you or your family or close friends ever had surgery prescribed to treat the injury or condition?

24.    Have any of you or your family or close friends ever sustained a shoulder injury or suffered a condition causing pain or discomfort in the shoulder, regardless of the cause of the shoulder pain or injury? For those of you who have just answered "yes," have any of you or your family or close friends ever had surgery prescribed to treat the injury or condition?

24.    Have any of you or your family or close friends ever sustained a hernia, regardless of the cause of the hernia? For those of you who have just answered "yes," have any of you or your family or close friends ever had surgery prescribed to treat the hernia? For those of you

6

who have had surgery to repair a hernia, did the surgery completely resolve the hernia or did you have to undergo additional treatment or surgery?

26. Have any of you or your family of close friends ever had to continue working, either because the employer insisted on it or because economic necessity required you to, after suffering an "on-the-injury" or some other injury or condition that affected your physical capacity to work or your ability to work without pain? Have any of you or your family or close friends ever continued to do your job or perform your usual activities when you were injured or otherwise suffering pain due to a condition of the body? Do any of you believe that trying to do some work or perform some of your usual activities means you are not hurting?

27. Do any of you have friends or family members that have jobs which you consider to be dangerous or potentially dangerous? For example, do any of you have friends or family members that work as firefighters? Do you believe that these individuals should be provided with as safe working conditions as possible? For example, which of you believe that firefighters should be provided with fireproof clothing before entering a burning building? Now, for those of you who know a firefighter, have any of you known a firefighter who decided, because of the circumstances at the time, to enter a burning building without fireproof clothing? If a firefighter is injured entering a burning building without fireproof clothing, and the reason he does not have fireproof clothing is because his employer has failed to provide him with fireproof clothing, do any of you believe that the injured firefighter is at fault for any injury he sustains while carrying out his duty under conditions that could have been made safer by the employer?

28. How many of you believe that working at sea is much more dangerous than working as a firefighter?

7

29.    Does anyone believe that an employer is not obliged to provide a safe working environment for its employees?  Does anyone believe that an employer should not be held responsible or made to pay for the acts of its employees, even if the law says the employer is liable for the acts of its employees?

30.    How many of you believe that a vessel, as well as its crew, are subject to the control of the captain of the vessel?  Do any of you believe that the crew of a vessel has the "power," in any real sense of the word, to refuse the orders of the captain?  Do any of you believe that, even if the situation poses a risk of injury to a crewmember, that crewmember will be inclined to refuse the orders of his captain?

31.    The law provides that a person is entitled to be fairly and reasonably compensated for injuries caused by the negligence of others.  Is there any member of the jury panel who has any quarrel with the law that provides for monetary damages as compensation for personal injuries caused by the negligence of another party?  Since this case involves a vessel, is there any member of the jury panel who has any quarrel with the law that provides for monetary damages as compensation for personal injuries caused by the unseaworthiness of a vessel or its equipment or crew?  Is there anyone on the jury panel who would not or could not award damages in a substantial sum, even if the evidence supported such an award?

32.    Does any member of the jury panel not understand or have any quarrel with any of the following personal injury damage elements:  physical pain and suffering, mental anguish, physical impairment, loss of earnings and earning capacity, past and future medical expenses, loss of enjoyment of life, or physical disfigurement?

33.    How many of you *cannot* award monetary damages, in any amount, in a case involving personal injury?  Is there anyone on the jury panel who would not or could not award

8

damages in a substantial sum, even if the evidence supported such an award?

34.    Do you understand that the burden of proof in a civil case is different from that in a criminal case?  This is a civil case, and thus, the Plaintiff must prove his case by a preponderance of the evidence, not beyond a reasonable doubt.  In deciding the case by a preponderance of the evidence, do you all understand that it is okay to have doubts and still find in favor of the Plaintiff, as long as he produces the greater weight or degree of credible evidence?  Do you all understand that the number of witnesses or the amount of evidence produced by one side or the other does not determine who wins, but rather, you must find for the side that produces the greater weight or degree of *credible* testimony and evidence?  Can you all follow the law and decide this case by "a preponderance of the evidence," and without imposing any greater burden on the Plaintiff?

35.    Have you read any advertisements, articles, or editorials concerning lawsuits or jury awards? Are any of you or your family or close friends a member of any organization which pertains to the justice system or reform or modification of the justice system? How many have heard about "lawsuit abuse," a "litigation crisis," or "frivolous lawsuits?" How many of you know that there are procedures in place and motions that can be filed to weed out frivolous lawsuits before they get to trial?

36.    Is there anything about what you have heard during the jury-selection process that concerns you about your ability to be a fair and impartial juror of the particular facts of this case?

37.    Is there any matter that anyone would like to discuss privately that bears on their ability to serve as a juror on this case?

Respectfully submitted,

BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
Tel: (361) 888-6655
Fax: (361) 888-5855


R. Blake Brunkenhoefer
State Bar No. 00783739
Southern District of Texas I.D. #15559
Christopher H. Hall
State Bar No. 00793881
Southern District of Texas I.D. #19536

10

## CERTIFICATE OF SERVICE

I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the above

and foregoing PLAINTIFF'S PROPOSED QUESTIONS FOR VOIR DIRE, has been served, in

the manner indicated below, upon:

Richard B. Waterhouse, Jr.                    **VIA HAND DELIVERY**
PIPITONE, SEGER & WATERHOUSE
615 Upper N. Broadway, Suite 1770
Corpus Christi, Texas 78477

in accordance with all applicable provisions of the Texas Rules of Civil Procedure on this the

23rd day of January, 2002.

R. Blake Brunkenhoefer

11

# UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **DONALD LESLIE "SAM" GALBREATH** | § | |
| | § | **CIVIL ACTION NO. B-00-048** |
| *versus* | § | |
| | § | **ADMIRALTY / JURY DEMANDED** |
| **PROMAR INC.,** *Individually & d/b/a* | § | |
| *COASTAL PRODUCTION SERVICES* | § | |

# PLAINTIFF'S PROPOSED CHARGE OF THE COURT

## GENERAL INSTRUCTIONS

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that the plaintiff's claim is more likely true than not true. In determining whether any fact has been proved by a preponderance of

1

the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence--such as testimony of an eyewitness. The other is indirect or circumstantial evidence--the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You should carefully scrutinize all the testimony given, and in weighing the testimony of each witness, consider such witness' relationship to the parties in the case, his or her manner of testifying, candor, fairness and intelligence, and the extent to which the witness has been confirmed or contradicted, if at all, by other credible evidence. You will rely upon your own good judgment, your own common sense and the experience you have gained as you have gone about your everyday affairs in weighing the evidence and determining the weight to be given to it.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence

2

you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field--he is called an expert witness--is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

During the trial of this case, certain testimony has been read or shown to you by way of deposition, such depositions consisting of sworn answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason, cannot be present to testify from the witness stand, may be presented in writing, under oath, in the form of a deposition or summary of a deposition. Such testimony is entitled to the same consideration as if the witness had been present and testified from the witness stand.

Any notes you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

## "JONES ACT" and "UNSEAWORTHINESS"

The Plaintiff, SAM GALBREATH, a seaman, is asserting two separate claims against the Defendant in this case.

The Plaintiff's first claim, under a federal law known as the Jones Act, is that his employer, Defendant herein, was negligent, and that the Defendant's negligence was a cause of his injuries. The Plaintiff's second claim is that unseaworthiness of a vessel or the equipment or crew of the

3

vessel caused his injury.

You must consider each of these claims separately. The plaintiff is not required to prove all of these claims. He may recover if he proves any one of them. However, he may only recover those damages or benefits that the law provides for the claims that he proves; he may not recover the same damages or benefits more than once.

## "JONES ACT"--NEGLIGENCE

I instruct you that, at time of the occurrence in question, Plaintiff was in the course and scope of his employment for Defendant.

Under the Jones Act, the plaintiff, SAM GALBREATH, must prove that his employer was negligent. Negligence is the doing of an act that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the same or similar circumstances. The occurrence of an accident, standing alone, does not mean that anyone's negligence caused the accident.

In a Jones Act claim, the word "negligence" is given a liberal interpretation. It includes any breach of duty that an employer owes to his employees who are seamen, including the duty of providing for the safety of the crew.

Under the Jones Act, if the employer's negligent act or omission played any part, no matter how small, in bringing about or actually causing the plaintiff's injury, then you must find that the employer is liable under the Jones Act.

Negligence under the Jones Act may consist of a failure to comply with a duty required by law. Employers of seamen have a duty to provide their employees with a reasonably safe place to work. If you find that the Plaintiff was injured because the Defendant failed to provide him with a reasonably safe place to work, and that the Plaintiff's working conditions could have been made

4

safe through the exercise of reasonable care, then you must find that the Defendant was negligent.

The fact that the Defendant conducted its operations in a manner similar to that of other companies is not conclusive as to whether the Defendant was negligent or not.

You must determine if the operation in question was reasonably safe under the circumstances. The fact that a certain practice has been continued for a long period of time does not necessarily mean that it is reasonably safe under all circumstances. A long accepted practice may be an unsafe practice. However, a practice is not necessarily unsafe or unreasonable merely because it injures someone.

A seaman's employer is legally responsible for the negligence of one of its employees while that employee is acting within the course and scope of his job. A seaman is considered to be in the course of his employment if he is in the service of the ship or subject to being called to the service of the ship.

I instruct you that Captain Harold "J.R." Reeves, Captain Tommy Shields, Captain Ronnie Hale and Captain Robert Taylor were acting within the course and scope of their employment for Defendant each and every time they served as master of the M/V LADY BECKY and/or the M/V F.M. BROWN.

If you find from a preponderance of the evidence that Plaintiff was injured while acting under orders or directions of one or more of his supervisors, you may not find the Plaintiff negligent.

## "UNSEAWORTHINESS"

I instruct you that, at the time of the occurrence in question, the Defendant was the legal owner and operator of the crewboats in question, the vessels M/V LADY BECKY and/or the M/V F.M. BROWN.

The Plaintiff seeks damages for personal injury that he claims was caused by the

5

unseaworthiness of Defendant's vessels, the M/V LADY BECKY and/or the M/V F.M. BROWN. and their equipment and crew.

"Unseaworthiness" is a claim that the owner of a vessel has not fulfilled its duty to members of the crew to provide a vessel reasonably fit for its intended purpose.

A shipowner owes to every member of the crew employed on its vessel the absolute duty to keep and maintain the ship, and all decks and passageways, appliances, gear, tools, parts and equipment of the vessel in a seaworthy condition at all times.

The owner's duty to provide a seaworthy ship is absolute. The owner may not delegate the duty to anyone. Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. If an owner does not provide a seaworthy vessel, including equipment and a crew reasonably fit for their intended purpose, then no amount of care or prudence excuses the owner.

The duty to provide a seaworthy ship extends not only to the vessel itself, but to all of its parts, equipment, and gear, and also includes the duty to supply an adequate and competent crew.

The owner of a vessel is not required to furnish an accident free ship. He need only furnish a vessel and its appurtenances that are reasonably fit for their intended use and a crew that is reasonably adequate for their assigned tasks.

In summary, if you find that the vessels or their equipment or crew were in any manner unfit in accordance with the law as I have just explained it to you, and this was a proximate cause of the injury, a term I will explain to you, then you must find that the vessels were unseaworthy and the shipowner liable, without considering any negligence on the part of the Defendant or any of its employees.

However, if you find that the owner had a capable crew and appliances and gear that were safe and suitable for their intended use, then the vessels was not unseaworthy and the Defendant is

6

not liable to Plaintiff on the claim of unseaworthiness.

## CAUSATION

You will be required to determine whether and to what extent the negligence of the Defendant, the Plaintiff or the unseaworthiness of the vessels or its equipment or its crew caused Plaintiff's injuries and damages.

In determining "causation," different rules apply to the Jones Act claim and to the unseaworthiness claim.

Under the Jones Act, for both the employer's negligence and the plaintiff's contributory negligence, an injury or damage is considered caused by an act or failure to act if the act or omission played any part, no matter how small, in bringing about or actually causing the injury or damage.

In an unseaworthiness claim, the plaintiff must show, not merely that the unseaworthy condition was a cause of the injury, but that such condition was a proximate cause of it. This means that the plaintiff must show that the condition played a substantial part in bringing about or actually causing his injury, and that the injury was either a direct result or reasonably probable consequence of the condition.

Likewise, with respect to the unseaworthiness claim, the defendant must show not merely that the plaintiff's negligence was a cause of the injury, but that any such negligence was a proximate cause of it. This means that the defendant must show that the condition in question played a substantial part in bringing about or actually causing his injury, and that the injury was either a direct result or a reasonably probable consequence of the condition.

However, if you find from a preponderance of the evidence that, at the time of the incident in question, Plaintiff was acting under the orders of one or more of his supervisors, you may not find Plaintiff contributorily negligent for his injuries and damages.

7

# DAMAGES

If you find that the Defendant is liable to the Plaintiff, you must award the amount you find by a preponderance of the evidence as full and just compensation for all of Plaintiff's damages. Compensatory damages are not allowed as a punishment against a party. Such damages cannot be based on speculation, for it is only actual damages--what the law calls compensatory damages--that are recoverable. However, compensatory damages are not restricted to actual loss of time or money; they include both the mental and physical aspects of injury, tangible and intangible. The purpose of compensatory damages is to make the plaintiff whole, or to restore him to the position he would have been in if the accident had not happened.

You should consider the following elements of damage, to the extent you find that the plaintiff has established such damages by a preponderance of the evidence:

1.   The reasonable value of the lost wages, if any, necessarily lost by plaintiff from the date of accident until the date of this trial, because of being unable to pursue his occupation as a result of his injury. In determining this amount, you should consider evidence of plaintiff's earning capacity, his earnings, and the manner in which he ordinarily occupied his time before the injury, and find what he would have earned during the time so lost, had he not been disabled from his usual occupation; and

2.   Also, such sum as will compensate the plaintiff for any loss of future earning capacity sustained by him caused by the injury in question, and which he in reasonable probability will sustain in the future, including impairment in the normal progress in the plaintiff's earning capacity. In determining this amount, you may consider what plaintiff's health, physical ability and earning power were before the accident and what they are now; the nature and extent of his injuries; whether or not they are in reasonable medical probability to be permanent; or if not permanent, the

8

extent of their duration; all for the purpose of determining, first, the effect, if any, of his injury upon his future earning capacity, and, second, the present value of any loss so sustained;

3.    The reasonable value of the physical impairment he has sustained in the past from the date of the accident to trial.  In determining this amount, you may consider what plaintiff's health and physical ability were before the accident and what they are now, and the nature and extent of his injuries; and

4.    Also, such sums as will compensate the plaintiff for any physical impairment which he in reasonable probability will suffer in the future.  In fixing this amount, you may consider what plaintiff's health and physical ability were before the accident and what they are now, and the nature and extent of his injuries; whether or not they are in reasonable medical probability to be permanent; or, if not permanent, the extent of their duration; all to the end of determining those things apart from earning wages that in reasonable probability plaintiff will be unable to do in the future as a result of his injury;

5.    Such sum as will reasonably and fairly compensate plaintiff for the pain, suffering, disfigurement and inconvenience, and the effect of plaintiff's pain, suffering, disfigurement and inconvenience on the normal pursuits and pleasures of life, sustained by plaintiff from the date of accident until the date of trial and proximately resulting from the injury in question; and

6.    Also, such sums as will reasonably and fairly compensate plaintiff for such pain, suffering, disfigurement and inconvenience, and the effect of plaintiff's pain, suffering, disfigurement and inconvenience on the normal pursuits and pleasures of life, if any, that he in reasonable probability will suffer in the future from the injury in question;

7.    Such sums as will compensate plaintiff for mental anguish and feelings of economic insecurity already suffered by plaintiff and proximately resulting from the injury in question; and

9

8.      Also, such sums as will compensate plaintiff for the mental anguish and feelings of economic insecurity, if any, that he in reasonable probability will suffer in the future from the injury in question;

9.      Such sums as the plaintiff has shown as reasonable and necessary medical, doctor, and hospital expenses incurred from the date of the trial and for the rest of his life--that is the reasonable value, not exceeding actual cost to the plaintiff, of medical care that, based upon reasonable medical probability, will be required in the future as a proximate result of the injury in question.

Some of these damages, such as mental or physical pain and suffering, are intangible things about which no evidence of value is required.  In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate the plaintiff for his injuries.

## LOSS OF FUTURE EARNINGS

If you find that the plaintiff is entitled to an award of damages for loss of future earnings, there are two particular factors you must consider:

1.      You should determine the actual or net income that plaintiff has lost or will lose, taking into consideration that any past or future earnings would be subject to income taxes. Therefore, since any award you make here is not subject to income tax, you must award the plaintiff only his net earnings after tax;  and

2.      An amount to cover future loss of earnings is more valuable to the plaintiff if he received the amount today than if he received the same amount in the future.  Therefore, if you decide to award plaintiff an amount for lost future earnings, you must discount it to present value by considering what return would be realized on a relatively risk-free investment.

## FUTURE MEDICAL

10

If you make any award of future medical expenses, you should adjust or discount the award to present value in the same manner as with loss of future earnings.

## FUTURE PAIN, SUFFERING, MENTAL ANGUISH, ETC.

However, you must not make any adjustment to present value for any damages you may award for future pain, suffering, mental anguish, physical impairment, disfigurement, inconvenience or loss of life's normal pleasures and pursuits.

* * *

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. You will also take a verdict form that has been prepared for you to answer.

[Explain Questions]

You may now retire to the jury room. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

11

This concludes the Court's instructions to the Jury.

DONE at Brownsville, Texas, this the _____ day of _____, 2002.


_____
HILDA G. TAGLE
United States District Court,
Southern District of Texas,
Brownsville Division

## QUESTION NO. 1

Do you find from a preponderance of the credible evidence that Defendant was negligent on or about April 1997 and that such negligence played any part, no matter how small, in causing Plaintiff's injury or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

## QUESTION NO. 2

Do you find from a preponderance of the credible evidence that Plaintiff was negligent on or about April 1997 and that such negligence played any part, no matter how small, in causing his injury or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

14

If you have answered "Yes" to both Questions Nos. 1 & 2 above, then answer Question No. 3. If you answered "No" to either Question No. 1 or 2 above, do not answer Question No. 3 and proceed directly to Question No. 4.

## **QUESTION NO. 3**

Indicate below the percentage by which each of the following contributed to cause Plaintiff's injuries or damages on or about April 1997. Your answer must total 100%.

Negligence of Defendant                                 _____

Negligence of Plaintiff                                     _____

**TOTAL**                                                     **100%**

15

## QUESTION NO. 4

Do you find from a preponderance of the credible evidence that Defendant was negligent on or about April 18, 1998 and that such negligence played any part, no matter how small, in causing Plaintiff's injury or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

16

## QUESTION NO. 5

Do you find from a preponderance of the credible evidence that Plaintiff was negligent on or about April 18, 1998 and that such negligence played any part, no matter how small, in causing his injury or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

17

If you have answered "Yes" to both Questions Nos. 4 & 5 above, then answer Question No. 6.  If you answered "No" to either Question No. 4 or 5 above, do not answer Question No. 6 and proceed directly to Question No. 7.

## QUESTION NO. 6

Indicate below the percentage by which each of the following contributed to cause Plaintiff's injuries or damages on or about April 18, 1998.  Your answer must total 100%.

Negligence of Defendant                                      _____

Negligence of Plaintiff                                         _____

**TOTAL**                                                        **100%**

## <u>QUESTION NO. 7</u>

Do you find from a preponderance of the credible evidence that the vessel M/V LADY BECKY or its equipment or crew were unseaworthy on or about April 1997 and that such unseaworthiness was a proximate cause of Plaintiff's injuries or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

19

## QUESTION NO. 8

Do you find from a preponderance of the credible evidence that the vessel M/V F.M. BROWN or its equipment or crew were unseaworthy on or about April 1997 and that such unseaworthiness was a proximate cause of Plaintiff's injuries or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

## QUESTION NO. 9

Do you find from a preponderance of the credible evidence that the vessel M/V LADY BECKY or its equipment or crew were unseaworthy on or about April 18, 1998 and that such unseaworthiness was a proximate cause of Plaintiff's injuries or damages?

Please answer "Yes" or "No" in the space below.

Answer: _____

21

If you have answered "Yes" to Question No. 1, Question No. 4, Question No. 7, Question No. 8 or Question No. 9 above, then answer Question No. 10. If you answered "No" to all of Question No. 1, Question No. 4, Question No. 7, Question No. 8 and Question No. 9 above, do not answer Question No. 10.

## <u>QUESTION NO. 10</u>

What sum of money, if paid now in cash, do you find from a preponderance of the credible evidence would fairly and reasonably compensate Plaintiff, Sam Galbreath, for his injuries and damages which resulted from the occurrence(s) in question?

> Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you may find.

> Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Sam Galbreath.

Answer separately and in dollars and cents, if any, with respect to each of the following elements:

1. Lost wages in the past.

   Answer: $_____

2. Loss of wage-earning capacity in the future.

   Answer: $_____

3. Physical pain and suffering in the past.

   Answer: $_____

4. Physical pain and suffering in the future.

   Answer: $_____

5. Mental anguish in the past.

   Answer: $_____

6. Mental anguish in the future.

   Answer: $_____

22

7.    Physical impairment in the past.

      Answer: $_____

8.    Physical impairment in the future.

      Answer: $_____

9.    Loss of enjoyment of life in the past.

      Answer: $_____

10.   Loss of enjoyment of life in the future.

      Answer: $_____

11.   Reasonable medical expenses in the past.

      Answer: $_____

12.   Reasonable medical expenses in the future.

      Answer: $_____

13.   Physical disfigurement in the past.

      Answer: $_____

14.   Physical disfigurement in the future.

      Answer: $_____

## QUESTION NO. 11

Do you find from a preponderance of the credible evidence that the Plaintiff suffered a medical condition caused by or aggravated during his service for the Defendant, or which manifested itself while in the service of the M/V LADY BECKY and/or the M/V F.M. BROWN?

Please answer "Yes" or "No" in the space below.

Answer: _____

24

## QUESTION NO. 12

State the date on which the Plaintiff suffered a medical condition caused by or aggravated during his service for the Defendant, or which manifested itself while in the service of the M/V LADY BECKY and/or the M/V F.M. BROWN?

Please answer in the space below.

Answer: _____

25

# QUESTION NO. 13

State the number of days Plaintiff is entitled to receive "maintenance" and "cure," from the date on which the Plaintiff suffered a medical condition caused by or aggravated during his service for the Defendant, or which manifested itself while in the service of the M/V LADY BECKY and/or the M/V F.M. BROWN, through the date of trial.

Please answer in the space below.

Answer: _____

26

# QUESTION NO. 14

State the number of days Plaintiff is entitled to receive "maintenance" and "cure" in the future.

Please answer in the space below.

Answer: _____

## QUESTION NO. 15

Do you find from a preponderance of the credible evidence that the Defendant willfully and/or arbitrarily failed to pay Plaintiff maintenance and cure?

Answer "Yes" or "No" in the space below.

Answer: _____

If you have answered "Yes" to Question No. 15, then answer Question No. 16.  If you have answered "No" to Question No. 15, do not answer Question No. 16.

## QUESTION NO. 16

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff for the attorney's fees and litigation costs incurred in prosecuting his claim for maintenance and cure?

Please answer in dollars and cents.

Answer: _____

## CERTIFICATE OF SERVICE

I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the above and

foregoing PLAINTIFF'S PROPOSED CHARGE OF THE COURT, has been served, in the manner

indicated below, upon:

<div style="padding-left: 2em;">

Richard B. Waterhouse, Jr.          **VIA HAND DELIVERY**
PIPITONE, SEGER & WATERHOUSE
615 Upper N. Broadway, Suite 1770
Corpus Christi, Texas 78477

</div>

in accordance with all applicable provisions of the Texas Rules of Civil Procedure on this the 23rd

day of January, 2002.

R. Blake Brunkenhoefer

31

Respectfully submitted,

BRUNKENHOEFER & HALL, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
Tel: (361) 888-6655
Fax: (361) 888-5855

K. Blake Brunkenhoefer
State Bar No. 00783739
Southern District of Texas I.D. #15559
Christopher H. Hall
State Bar No. 00793881
Southern District of Texas I.D. #19536

30